160

CROF

FILED

DEC 3 1 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1  SALMA AGHA-KHAN, M.D.
2  10001 Venice Boulevard # 402
   Los Angeles, California  90034
3  Telephone:  (949) 332-0330
   email:  salmahagha@aol.com
4  Plaintiff-Debtor in Pro Se

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT, BAKERSFIELD DIVISION

Re:
SALMA H. AGHA
an individual,

**Debtor,**

**Case No. 10-16183**
**Chapter 7**

**EXHIBITS 1- 14 RE PLAINTIFF-DEBTOR'S MOTION TO DISQUALIFY KLEIN DENATALE GOLDNER LAW FIRM FROM REPRESENTING DEFENDANT TRUSTEE VETTER DUE TO**
**1.     CONFLICT OF INTEREST AS PLAINTIFF-DEBTOR WAS THEIR FORMER EMPLOYER AND**
**2.     THIS CURRENT EMPLOYMENT WAS FRAUDULENTLY ALLOWED BY DEFENDANT JUDGE CLEMENT;**

**Judge: HON RICHARD LEE**
**Hearing Date: February  5, 2015**
**Time: 9:00 am**
**Place:  US Bankruptcy Court**
**          1300 18th Street, Ste A**
**          Bakersfield, CA**

**PLEASE NOTE:** The **DUTY TO REPORT MISCONDUCT** to the appropriate governing authorities is an ethical duty imposed on Judges, Attorneys etc in the United States by the rules governing professional responsibility. Acts constituting misconduct include tampering with evidence, suborning perjury and committing criminal acts of violence or dishonesty. Failure to report such crimes can result in disbarment, sanctions, impeachment etc.

I declare that I am a resident of the County of Los Angeles, State of California. I am over 18 years of age and a party to the entitled action.

# EXHIBIT: I

## Doc #77: Order Authorizing Trustee To Employ Attorneys Effective September 13, 2013 (BACK DATED)
Date Filed: November 21, 2012 - 9 Days later

**LIES & TECHNICALITIES:**

1. **Defendant Judge Clement is a colluding party** in this conspiracy against Plaintiff-Debtor is confirmed as
   - i) **Order issued 9 days after filing of Motion,** knowing this is illegal
   - ii) **Gave no chance of opposition to Debtor** – confirms Defendant Judge Clement to be a colluding party in this conspiracy against Plaintiff-Debtor
2. **Defendant Judge Clement knew about conflict of interest** between Defendant KDG and Plaintiff-Debtor
3. **Defendant Judge Clement lied** that Defendants KDG and Holder were a "disinterested person having no disqualifying connection with debtor, her creditors or any other party in interest"......and their "employment is in the best interest of the estate" (Pg1Lns22-27)

2

1   LISA HOLDER, CSB NO. 217752
    KLEIN, DENATALE, GOLDNER,
2     COOPER, ROSENLIEB & KIMBALL, LLP
    4550 California Avenue, Second Floor
3   Bakersfield, California 93309
    Telephone: (661) 395-1000
4   E-mail: lholder@kleinlaw.com

5   Proposed Attorneys for Jeffrey M. Vetter, Chapter 7 Trustee

6

7              UNITED STATES BANKRUPTCY COURT

8              EASTERN DISTRICT OF CALIFORNIA

9   In re:                          Case No. 10-16183-A-7

10  SALMA H. AGHA,                   Chapter 7

11         Debtor.                   DC No. KDG-1

12                                   **ORDER AUTHORIZING TRUSTEE TO**
                                     **EMPLOY ATTORNEYS EFFECTIVE**
13                                   **SEPTEMBER 13, 2012**

14                                   Date:    N/A
                                     Time:    N/A
15                                   Place:   U.S. Bankruptcy Court
                                              1300 18th Street, Ste. A
16                                            Bakersfield, California
                                     Judge:   Hon. Fredrick A. Clement
17

18

19        The *Application for Order Authorizing Employment of Attorneys Effective September

20  13, 2012*, filed by Trustee Jeffrey M. Vetter, came before the Court for approval.

21        The Court having considered the Application, it appearing that Klein, DeNatale,

22  Goldner, Cooper, Rosenlieb & Kimball, LLP is a disinterested person having no

23  disqualifying connections with Debtor, her creditors, or any other party in interest, their

24  respective attorneys, and accountants, the Judge appointed to Debtor's case, the United States

25  Trustee or any person employed in the Office of the United States Trustee, as set forth in the

26  Declaration of Lisa Holder, and that the employment is in the best interest of the estate, and

27  the economical administration thereof:

28                                   ///

RECEIVED
November 08, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004525132

1

38Q6741.DOC

KLEIN, DeNATALE, GOLDNER, Cooper, Rosenlieb & Kimball, LLP   4550 CALIFORNIA AVENUE, SECOND FLOOR   BAKERSFIELD, CALIFORNIA 93309

IT IS ORDERED that:

1. Trustee is authorized to employ KLEIN, DeNATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL, LLP ("Klein, DeNatale") as his attorneys, effective September 13, 2012, subject to the following terms and conditions:

    a.    The employment of Klein, DeNatale is subject to the applicable terms and conditions of 11 U.S.C. Section 327 and Sections 329-331.

    b.    No compensation is permitted except upon court order following application pursuant to 11 U.S.C. Section 330(a).

    c.    Compensation will be at the "lodestar rate" applicable at the time that services are rendered in accordance with the Ninth Circuit decision in *In re Manoa Fin. Co.*, 853 F.2d 687 (9th Cir. 1988). No hourly rate referred to in the motion is approved unless unambiguously so stated in this order or in a subsequent order of this Court.

Dated: Nov 21, 2012

Fredrick E. Clement
United States Bankruptcy Judge

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

38Q6741.DOC

2

# EXHIBIT: 2

## DEFENDANT KDG LAW FIRMS PREVIOUS RELATIONSHIP WITH PLAINTIFF-DEBTOR

**Letter from KDG Law Firm proving that Plaintiff was their Client**

Dated: June 29, 2004



Anthony J. Klein
Thomas V. DeNatale, Jr.
Barry L. Goldner
Jay L. Rosenlieb
David J. Cooper
Claude P. Kimball, LLM
William A. Bruce
Ned E. Dunphy
Leonard K. Welsh
Suellen H. Anderson
T. Scott Belden
Catherine E. Bennett
Dawn Bittleston
Craig O. Braun
James M. Duncan
Thomas C. Fallgatter
Kevin C. Findley, LLM
Kenneth A. Holland
Krystyna L. Jamieson
Paul Lafranchise, LLM
Nancy L. Oehler, LLM
Timothy G. Scanlon

**KLEIN DeNATALE GOLDNER**
**COOPER ROSENLIEB & KIMBALL, LLP**

ATTORNEYS AT LAW

Jennifer A. Adams
Mark H. Atkins
David D. Blaine
Teniele E. Cooper
David P. Eron
Darron Flagg
Kelly A. Griffin-Lazerson
José A. Guerrero
Andrew M. Hensler
Lisa A. Holder
Steven J. Lee
Meredith Mahan
Laura Olivier
Jean M. Pledger
Heather J. C. Stanley
Matthew Wilson

Of Counsel
Bruce F. Bunker
Mel Ehrlich

June 29, 2004

Dr. Salma Khan
10400 Claridge Court
Bakersfield, CA 93311

Re:   *Khan v. Froehlich Construction Co., Inc.*
      Kern County Superior Court Case No. 250113-SPC
      Mandatory Settlement Conference

Dear Dr. Khan:

The Court has ordered the parties to attend a Mandatory Settlement Conference. The Settlement Conference is scheduled as follows:

July 16, 2004 at 9:00 a.m.
Kern County Superior Court, Dept. 14
1415 Truxtun Avenue
Bakersfield, California

California Rule of Court 222 requires the parties and trial counsel to attend this Settlement Conference. As a result, you will need to be in attendance at the conference. The conference can take anywhere from two to five hours to complete, although I have been in conferences that have lasted all day. However, I do not anticipate that this conference will take more than two to three hours to complete.

00276184.000.DOC

KLEIN, DeNATALE, GOLDNER
COOPER, ROSENLIEB & KIMBALL, LLP

Dr. Salma Khan
June 29, 2004
Page 2

     Prior to attending the conference, you and I will need to discuss the issues I outlined in my letter to you dated June 25, 2004. If you have any questions or comments regarding the Settlement Conference, please do not hesitate to contact me at your earliest convenience.

     Sincerely,

     STEVEN J. LEE

SJL/nkb

00276184.000.DOC

# EXHIBIT: 3

## DEFENDANT KDG LAW FIRMS PREVIOUS RELATIONSHIP WITH PLAINTIFF-DEBTOR

**Letter from Plaintiff  to KDG Law Firm outlining CAUSES OF MALPRACTICE COMMITTED BY THEM AGAINST THEIR CLIENT – Privately settled in Law Firms Office for about $30,000.00 by now Defendant Barry Goldner**

Dated: April 4, 2006

To:   Klein Denatale Goldner
       4550 California Ave
       Bakersfield, CA 93309

From:  Salma H. Khan, MD.
       11622 Harrington Street
       Bakersfiled, CA 93311

Date:  4th April 2006

Re:    Lawsuit between Khan and Froehlich Construction Company

The above mentioned law suit was filed by myself with your company representing me. The main reasons for filing the lawsuit were
1. Kitchen cabinets failing to accommodate a built in refrigerator as promised
2. Stair case not conforming to building standards
3. Outside barbeque station not built according to specifications

I was assigned to Mr. Steven Lee from your firm (Mr. Goldner) who was going to represent me in this case. Mr. Lee ordered extensive inquiry by ordering professional home inspection. He visited the property and personally reviewed the problems specified and discussed them in great detail with me.

A settlement was proposed prior to trial which I agreed to. At the time of settlement I realized that the main reasons listed above which caused me to file this lawsuit were not part of the settlement. I was constantly led to believe by Mr. Lee that the items listed in this proposed settlement were in addition to the main reasons listed above. At the time of settlement when I asked Mr. Lee in front of the judge about where were the three main reasons listed in this settlement he admitted they were not part of the settlement. At this point I realized they were not even mentioned in the settlement. Things mentioned in the settlement were useless things like paint missing on a door, etc which I was led to believe were additional things realized by the home inspection that will be fixed by the builder.

I was shocked by this realization. I refused to settle the case in this manner. I then met with the judge myself and the main reasons for this law suit were brought up once again and matters renegotiated as directed by myself.

This course of action taken by Mr. Lee raises several questions
1. Was it deliberate on Mr. Lee's part to forget my main reasons for filing this law suit? Especially when it was studied in such extensive detail and reviewed on multiple occasions.
2. Why was I not notified by Mr. Lee of his omitting my main reasons for filing this law suit prior to going for the settlement?
3. Why did I have to discover this omission myself at the time of settlement when I had a lawyer that was being paid by myself and who was supposed to have been working for me and not for the defendant?

I came to the conclusion that Mr. Lee even though representing me was actually not working for me. The defendants' interests were more important to him and this was the reason why my issues were brushed aside without notifying me of this change till I realized what was happening and took matters into my own hands.

I was extremely shocked by Mr. Lee's behavior and felt betrayed. I wanted to discuss his actions with senior member of the firm that had assigned him to my case. I left several messages for Mr. Barry Goldner to please contact me which he failed to do. I have sufficiently overcome my anger and disappointment to write this letter now.

I feel the firm owes me an apology and is totally unjustified in asking me to pay extensive lawyers fee for this case. They assigned an incompetent person to handle my case whose sympathies were with the defendant and not the person he was supposed to be representing causing me more harm than good. I was forced to defend my own case and dictate my settlement terms after being placed in a compromising situation by Mr. Lee. I do not see any justification for his billing high fees. The only cost I should be expected to pay should be paralegal cost of preparing the documents and nothing more. His unprofessional behavior deserves reprimand and may even need to be reported to appropriate authorities.

# EXHIBIT: 4

## Doc #72: Application For Order Authorizing Trustee To Employ Attorneys Effective September 13, 2013 (BACK DATED, RETROACTIVE)
Date Filed: November 8, 2012

Attorneys employment is **BACK DATED** to date of filing Ex Parte to reopen Bankruptcy even **BEFORE Trustee himself was appointed** –September 19, 2012

**FACTS REGARDING THEIR SCHEME TO STEAL:**

1. Defendant "Breitmans **Attorneys had contacted Defendant KDG** and offered a settlement to KDG" BEFORE THE BANKRUPTCY WAS REOPENED (Pg2Lns1-2) regarding "claims held by Debtor or Estate"

2. Defendant **KDG "contacted the US Trustee** and requested that the Chapter 7 case filed by Debtor be reopened in order to administer the assets of the estate not disclosed" (Pg2Lns3-5) when Defendant KDG had no Bankruptcy filings supporting documents to review

3. This backward scheme of **Attorneys arriving before Trustee** is against US Department of Justice Bankruptcy rules where the

Trustee justifies the need cost etc before even asking to hire Attorneys

## LIES:

1. Intentionally **hiding the existing conflict of interest** between these instigating "attorneys" and Plaintiff-Debtor
2. Its was ATTORNEYS THAT HIRED THE TRUSTEE against Bankruptcy Rules
3. Hiding the fact that Defendant KDG, Holder, Trustee Vetter, Breitman, BBG Ltd and Zouras had been **"working" colluding UNDISCLOSED for about TWO MOTHS** on Plaintiff-Debtors case
4. Need for Defendant KDG was "to advise and consult" (Pg2Lns12-13&15-16) which KDG had been doing even BEFORE Trustee himself was appointed. Also KDG was not "advising" in initial Bankruptcy
5. they were **"necessary"** to perform legal work on this case and will be in the **"best interest of the estate"** when the Defendant Trustee had not hired them in initial Bankruptcy (Pg2Ln19: Pg3Ln4-5)
6. "they do not hold or represent an interest adverse to the estate" and **"is a disinterested person"** (Pg3Lns7-9) and **"has no disqualifying connection with Debtor, or Creditors"** (Pg3Lns10-11)

## TECHNICALITIES:

1. No heads-up notice given to Debtor
2. No mention of even an attempt being made to contact Debtor to give heads-up notice

4

LISA HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 395-1000
E-mail: lholder@kleinlaw.com

Proposed Attorneys for Jeffrey M. Vetter, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SALMA H. AGHA,<br><br>Debtor. | Case No. 10-16183-A-7<br><br>Chapter 7<br><br>DC No. KDG-1<br><br>**APPLICATION FOR ORDER AUTHORIZING TRUSTEE TO EMPLOY ATTORNEYS EFFECTIVE SEPTEMBER 13, 2012**<br><br>Date:     N/A<br>Time:     N/A<br>Place:    U.S. Bankruptcy Court<br>          1300 18th Street, Ste. A<br>          Bakersfield, California<br>Judge:    Hon. Fredrick A. Clement |

TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:

Applicant, Jeffrey M. Vetter represents as follows:

1.     Salma H. Agha ("Debtor") filed for relief under Chapter 7 on May 30, 2010. Jeffrey M. Vetter ("Applicant") was appointed trustee in the case.

2.     After the Meeting of Creditors, Debtor's case was administered as a no asset case. Debtor received a Discharge of Debtor on September 23, 2010, and the Court entered a Final Decree closing the case on January 7, 2011.

3.     In or about September 2012, Applicant was informed that Debtor and an LLC controlled by Debtor had filed a lawsuit against Breitman/BBG LTD., in the San Francisco County Superior Court. The claims asserted in the lawsuit were not disclosed in Debtor's case.

KLEIN, DENATALE, GOLDNER,
Cooper, Rosenlieb & Kimball, llp
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

4. The attorneys for Breitman/BBG LTD., contacted Applicant regarding a proposed settlement of the claims held by Debtor or the estate.

5. Applicant contacted the United States Trustee and requested that the Chapter 7 case filed by Debtor be reopened in order to administer the assets of the estate not disclosed or administered before the case was closed. The UST filed a motion and an order reopening the case was entered on September 18, 2012 and Applicant was re-appointed as the trustee in Debtor's case.

6. Applicant wishes to employ Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP ("Klein, DeNatale"), 4550 California Avenue, 2nd Floor, Bakersfield, California as his attorneys of record during the bankruptcy proceeding herein for the following purposes:

    a. To advise and consult with Applicant concerning questions arising during the administration of the estate and concerning the rights and remedies of Applicant with regard to the assets of the estate and the claims of secured and unsecured creditors;

    b. To advise and consult with Applicant concerning the administration of Debtor's interest in the assets, if any; and

    b. To assist in preparing such pleadings, motions, notices, and orders as are required for the orderly administration of the case.

7. The United States Trustee has requested that Applicant state a particular reason why it is necessary for Applicant to employ an attorney. In this case, it is necessary for Applicant to employ an attorney to (1) prepare, file and serve the necessary pleadings to obtain approval of the settlement or sale of the assets, and (2) object to Debtor's claims of exemption and/or revoke Debtor's discharge, if necessary. Additionally, Applicant will need to review the claims filed in Debtor's case and determine if any objections need to be filed by his attorneys.

8. Applicant wishes to employ Klein, DeNatale as counsel for Applicant for the foregoing and all other necessary and proper purposes. Applicant selected Klein, DeNatale because:

    a. Klein, DeNatale is familiar with bankruptcy practice and debtor-creditor law;

KLEIN, DeNATALE,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

b.  Klein, DeNatale is experienced in representing trustees in proceedings filed under Chapter 7 of the United States Bankruptcy Code; and

c.  Applicant believes that Klein, DeNatale is qualified to act as his attorneys of record.

9.  Applicant believes that the employment of Klein, DeNatale will be in the best interest of the estate.

10.  Based upon the Declaration of Lisa Holder filed concurrently with this application, Applicant believes that Klein, DeNatale, its members and/or associates do not hold or represent an interest adverse to that of Applicant or the estate.  Based upon the Declaration, Applicant believes that Klein, DeNatale is a disinterested person within the meaning of 11 U.S.C. Section 101(14) and has no disqualifying connection with Debtor, her creditors, parties in interest, their attorneys and/or accountants, the Judge appointed in Debtor's case, the United States Trustee, or any person employed by the Office of the United States Trustee, has not served as an examiner in the case, and is not related to the bankruptcy judge.  Connections between Klein, DeNatale and such persons or entities, if any, are set forth in the Declaration of Lisa Holder filed concurrently with this application

11.  Compensation paid to Klein, DeNatale will be based on its normal hourly billing rates as described below plus reimbursement for costs incurred by it.  Any compensation paid to Klein, DeNatale will be paid after application and approval by the Court.  Applicant is informed that the normal billing rates for persons who will provide legal services to Applicant are:

| | |
|---|---|
| Senior Attorneys | $265.00 to $425.00 per hour |
| Associate Attorneys | $155.00 to $295.00 per hour |
| Legal Assistants | $85.00 to $175.00 per hour |

Klein, DeNatale will seek interim compensation during the course of this case as permitted by 11 U.S.C. Section 331 if substantial fees are incurred.

12.  Applicant requests that the Court approve Klein, DeNatale's employment effective as of September 13, 2012 because Klein, DeNatale undertook significant review of the San Francisco Superior Court case, as well as the papers filed in the bankruptcy case, to

KLEIN, DeNATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

assist Applicant to determine whether there were any assets that could be liquidated in the reopened case. Applicant believes that Klein, DeNatale should be compensated for its work analyzing the San Francisco case and advising Applicant, if the Court should find that work to be compensable upon Klein, DeNatale's fee application. Applicant believes the Court should not disapprove otherwise compensable work simply because the application to employ was not filed until after Applicant determined that there are assets to liquidate.

WHEREFORE, Applicant requests that he be authorized to employ Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP as his attorneys of record, effective as of September 13, 2012, to render services in the areas described above, with compensation to be paid as an administrative expense for such amounts as the Court may hereinafter allow.

Date: November 8, 2012

/s/ Jeffrey M. Vetter
JEFFREY M. VETTER

## II. Verification

The above statements are within my personal knowledge, or as described above I am informed regarding the facts stated and I believe them to be true, and I can testify competently regarding these statements if called as a witness.

I declare under the penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 8 day of November, 2012, at Bakersfield, California.

JEFFREY VETTER

ORIGINAL

38Q6723.DOC

4

Klein, DeNatale, Goldner,
Cooper, Rosenlieb & Kimball, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

# EXHIBIT: 5

# Doc #109: CIVIL MINUTES: Motion/Application Order To Employ Attorneys Effective September 13, 2013 (BACK DATED) by Trustee
Date Filed: January 13, 2013

LIES IN THE FORM OF CIVIL MINUTES ON MTION & ORDER STATED BY DEFENDANT JUDGE ACTING UNDER COLOR OF PROFESSIONAL RIGHT :

1. **"Notice: LBR 9014-1(f)(2); no written opposition required"**
2. **"No responding party is required to file written opposition to the motion"** (Pg1Paras1&2)
3. Failed to include REQUEST **FOR RETROACTIVE EMPLOYMENT with starting date of September 13, 2012 BEFORE Trustees appointment** to this illegally reopened case

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Case Title :** | Salma H. Agha | **Case No :** | 10–16183 – A – 7 |
| | | **Date :** | 1/23/13 |
| | | **Time :** | 1:00 |

| | | |
|---|---|---|
| **Matter :** | [72] – Motion/Application to Employ Lisa Holder as Attorney(s) [KDG–1] Filed by Trustee Jeffrey M. Vetter (morf) | UNOPPOSED |

**Judge :** Fredrick E. Clement
**Courtroom Deputy :** Gay Parker
**Reporter :** Linda Gorman
**Department :** A

**APPEARANCES for :**
**Movant(s) :**
   Trustee's Attorney – Lisa Holder
**Respondent(s) :**
(by phone)   Debtor(s) Attorney – William R. Cumming
   Debtor – Salma H. Agha

MOTION was :
Granted

Final Ruling

Motion: Employ Klein DeNatale
Notice: LBR 9014–1(f)(2); no written opposition required
Disposition: Granted
Order: Prepared by moving party

No responding party is required to file written opposition to the motion; opposition may be presented at the hearing. LBR 9014–1(f)(2)(C). If opposition is presented at the hearing, the court may rule on the merits or set a briefing schedule. Absent such opposition, the court adopts this tentative ruling.

The court treats this as a motion under Rule 60(b) and grants the motion to reconsider the issue of Klein DeNatale's employment. But having considered the Supplement Declaration of Lisa Holder, January 2, 2013, ECF No. 97, the court approves the employment of Klein DeNatale. The firms prior representation of debtor Salma Agha, concluding in 2005, does not present grounds for disqualification. 11 U.S.C. § 327(a), 101(14).

# EXHIBIT: 6

## Doc #73: Declaration of Lisa Holder in Support of Application For Order Authorizing Trustee To Employ Attorneys Effective September 13, 2013 (BACK DATED)
## Date Filed: November 8, 2012

Attorneys **RETROACTIVE** employment is **BACK DATED** to date of filing Ex Parte to reopen Bankruptcy even **BEFORE Trustee himself was appointed** –September 19, 2012

**LIES:** All declared "under the penalty of perjury"……. "within my personal knowledge" and "that the foregoing is true and correct" including

1.  "Trustee seeks to employ" (pg1Ln24-25) when it was ATTORNEYS THAT HIRED THE TRUSTEE against Bankruptcy Rules

    i)  Defendant "Breitmans **Attorneys had contacted Defendant KDG** and offered a settlement to KDG" BEFORE THE BANKRUPTCY WAS REOPENED (Doc 72: Pg2Lns1-2) regarding "claims held by Debtor or Estate"

    ii) Defendant **KDG "contacted the US Trustee** and requested that the Chapter 7 case filed by Debtor be reopened in order to administer the assets of the estate not disclosed" (Doc 72:

Pg2Lns3-5) when Defendant KDG had no Bankruptcy filings supporting documents to review

2. Intentionally **hiding her firms previous malpractice settling relationship/history with Plaintiff-Debtor**

    i) "preparing a conflict of interest report on this case" (Pg2Ln7)

    ii) KDG "does not hold or represent any interest adverse to the bankruptcy estate"..........."disinterested person" (Pg2Lns9-10)

3. Hiding the fact that Defendant KDG, Holder, Trustee Vetter, Breitman, BBG Ltd and Zouras had been **"working" colluding UNDISCLOSED for about TWO MOTHS** on Plaintiff-Debtors case (Pg2Ln17) **before** Defendant Trustee Vetters appointment to this case on September 19, 2012. "I first consulted with Jeffery Vetter regarding this case on September 13, 2012".

4. Lying regarding "there have been no connections with the trustee or Debtor" ......"a review of the list of creditors does not show any connection with any of the creditors listed by the Debtor"..........."unrelated to the debtor" then listing **"CITIBANK" as their client** (Pg3Lns4-9) which

    i) happens to be **Plaintiff-Debtors primary residence mortgage holder** that later **illegally evicted her and stole all her belongings**!!

    ii) Is listed as a Creditor in Plaintiff-Debtors Creditor Matrix

**3**

1    LISA HOLDER, CSB NO. 217752
     KLEIN, DENATALE, GOLDNER,
2       COOPER, ROSENLIEB & KIMBALL, LLP
     4550 California Avenue, Second Floor
3    Bakersfield, California 93309
     Telephone: (661) 395-1000
4    E-mail:  lholder@kleinlaw.com

5    Proposed Attorneys for Jeffrey M. Vetter, Chapter 7 Trustee

6

7                    UNITED STATES BANKRUPTCY COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   In re:                              Case No.  10-16183-A-7

11   SALMA H. AGHA,                      Chapter  7

12            Debtor.                    DC No. KDG-1

13                                       **DECLARATION OF LISA HOLDER IN**
                                         **SUPPORT OF APPLICATION FOR**
14                                       **ORDER AUTHORIZING TRUSTEE TO**
                                         **EMPLOY ATTORNEYS EFFECTIVE**
15                                       **SEPTEMBER 13, 2012**

16                                       Date:    N/A
                                         Time:    N/A
17                                       Place:   U.S. Bankruptcy Court
                                                  1300 18th Street, Ste. A
18                                                Bakersfield, California
                                         Judge:   Hon. Fredrick A. Clement
19

20        I, Lisa Holder, declare:

21        1.      I am an attorney duly admitted to practice law before the courts of the State of

22   California and the United States District Court for the Eastern District of California.

23        2.      I am a partner in the law firm of Klein, DeNatale, Goldner, Cooper, Rosenlieb &

24   Kimball, LLP ("Klein, DeNatale"). Jeffrey Vetter, Chapter 7 Trustee, seeks to employ Klein,

25   DeNatale in the case filed by Salma H. Agha ("Debtor") by the *Application of Trustee for Order*

26   *Authorizing Employment of Attorneys Effective September 13, 2012* ("Application").

27        3.      This declaration is the verified statement required by Bankruptcy Rule 2014(a).

28        4.      Klein, DeNatale has not served as an examiner in Debtor's case.

Klein, DeNatale, Goldner,
Cooper, Rosenlieb & Kimball, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

5.     Under Bankruptcy Rule 5002, neither I, nor any attorney at Klein, DeNatale to the best of my knowledge, is a relative of the bankruptcy judge considering approval of Klein, DeNatale's employment.

6.     I am one of the custodians of the books, records, and files of Klein, DeNatale that pertain to the identity of current and former clients of Klein, DeNatale. I know that Klein, DeNatale maintains a system to discover potential conflicts of interest between clients and others, and prepared a conflict of interest report regarding this case.

7.     I reviewed the conflict of interest report prepared by Klein, DeNatale, and determined that Klein, DeNatale does not hold or represent any interest adverse to the bankruptcy estate, and Klein, DeNatale is a disinterested person as defined in 11 U.S.C. Section 101(14). Any connections that Klein, DeNatale has with Debtor, her creditors, parties in interest, their attorneys and/or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee are disclosed in Exhibit "A," attached.

8.     Klein, DeNatale has extensive experience in bankruptcy, insolvency, corporate reorganization, and Debtor/Creditor law. Klein, DeNatale is qualified to represent the Trustee and is willing to accept employment on the basis set forth in the Application.

9.     I first consulted with Jeffrey Vetter regarding the case on September 13, 2012. I analyzed many documents, including deposition transcripts and bankruptcy court records, to assist Mr. Vetter to determine if there was an asset that should be liquidated for the benefit of creditors. Mr. Vetter has determined there is an asset to liquidate. Klein, DeNatale is seeking to be employed effective the date we began working on the case, so that Klein, DeNatale can be compensated for its work, if the court finds it is appropriate, upon further application.

10.    The above statements are within my personal knowledge and I can testify competently regarding these statements if called as a witness.

I declare under the penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 6th day of November, 2012 at Bakersfield, California.

LISA HOLDER

Klein, DeNatale, Goldner,
Cooper, Rosenlieb & Kimball, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309

**EXHIBIT A TO DECLARATION OF LISA HOLDER IN SUPPORT OF
APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF ATTORNEYS
FILED BY JEFFREY VETTER, CHAPTER 7 TRUSTEE**

## Connections

    a.    **Connections with Parties-in-Interest:** Other than working with the Trustee in connection with this proceeding and other matters unrelated to Debtor, there have been no connections with the Trustee or Debtor.

    b.    **Connections with Creditors:** A review of the list of creditors does not show any connection with any of the creditors listed by Debtor, except that Klein, DeNatale previously represented the following entities in general business and/or litigation matters unrelated to Debtor.   However, Klein, DeNatale does not and has not represented the below entities in any matters associated with Debtor.

        i.    Citibank; and
        ii.    Commercial Trade Bureau.

    c.    **Attorneys:** There are no known connections to attorneys presently involved in the case.

    d.    **Accountants:** There are no known connections to accountants presently involved in the case.

    e.    **United States Trustee:** Other than working with the United States Trustee and person employed by the Office of the United States Trustee in connection with this proceeding and other matters unrelated to Debtor, and socializing with the United States Trustee and person employed by the Office of the United States Trustee at court- and bankruptcy-association-sponsored functions, there are no known connections to the United States Trustee, or any person employed by the Office of the United States Trustee.

    f.    **Bankruptcy Judge:** Other than appearing before the judge, and working with persons employed by the court, in connection with this proceeding and other matters unrelated to Debtor, and socializing with the judge and person employed by the court at court- and bankruptcy-association-sponsored functions, there are no known connections to the bankruptcy judge, or any person employed by the court.

    g.    Except as set forth in this Exhibit "A", there are no other known connections with Debtor, her creditors or any other party in interest, their respective attorneys and accountants, the Judge appointed to Debtor's case, the United States Trustee, or any person employed by the Office of the United States Trustee or the court.

Klein, DeNatale, Goldner,
Cooper, Rosenlieb & Kimball, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309

# EXHIBIT: 7

## Doc #97: *Supplemental* Declaration of Lisa Holder Regarding Order Authorizing Trustee To Employ Attorneys Effective September 13, 2012 (BACK DATED)
## Date Filed: January 2, 2013

Attorneys **RETROACTIVE** employment is **BACK DATED** to date of filing Ex Parte to reopen Bankruptcy even **BEFORE Trustee himself was appointed** –September 19, 2012

**FACTS:** Plaintiff-Debtors Attorney being forbidden to file a written objection in emails complains to Trustee regarding this conflict of interest employment being

i) unethical in view of malpractice claim settling history between KDG and Plaintiff-Debtor

ii) against California Rules of Professional Conduct, Rule 3-310€ as Defendant KDG has obtained no written informed consent from Plaintiff-Debtor regarding this employment TO THIS DAY

**LIES:** All lies declared "under the penalty of perjury"......created within "my personal knowledge" and "that the foregoing is true and correct" knowing

1. Knowing that Plaintiff-Debtors name on all forty nine pages of Bankruptcy Schedules is SALMA HAIDER AGHA-KHAN, lies to state

    i) "my conflict check had not picked up prior representation of Dr. Agha" (pg1Lns27-28)

    ii) "Dr. Aghas petition did not disclose that she had used any other names during the eight years before the petition date" (Pg2Lns7-9)

2. Defendant Holder continues to lie "I ran a search in my conflicts system under the name 'Salma Khan' which returned a result indicating that Klein DeNatale represented Salma Khan in 2003-2004 in construction defect litigation" (Pg2Lns1-3)

    i) **forgetting to include the years 2005 and 2006 when my malpractice claim against them was settled in their office by their firms Principal Defendant Goldner (returned about $30,000.00 of money paid to them)**

    ii) contradicts her own declaration in this same paragraph **now stating the date of conclusion to be "2005"** (Pg2Ln5)

3. Defendant Holder further states the reason for their prior association "Dr. Agha sued the builder of her personal residence and Klein DeNatale represented her" but again fails to mention

    i) Settling of malpractice claim of about $30,000.00

    ii) This same "personal residence" is Plaintiff-Debtors primary residence with **CitiBank holding the lien** which is **the ONLY BANK this Defendant law firm has "declared" ties with** (Doc 73: Pg3Lns4-9) that she saw listed as a Creditor in Plaintiff-

Debtors Creditor Matrix later **illegally evicted her and stole all her belongings**!!

iii)   This same "personal residence" was **illegally foreclosed by CitiMortgage** after agreeing to a loan modification and stating this foreclosure to be a mistake but instead of reversing the foreclosure **bypassed the Bankruptcy court** and obtained **"Unlawful Detainer" in City Court then fraudulent and illegally evicted the Plaintiff-Debtor and her two children from their primary residence of ten plus years** also **stealing all their belongings** without notice immediately following this illegal lock out fraudulently stating that it was an **abandoned property** even though there was a Les Pendens on file against this property and Adversary Proceedings were filed in Bankruptcy Court.

4.   Defendant Holder continues to cover up her deceitful employment (Pg2Lns2-24) obtained in an attempt to seek revenge which is in fact what she accomplished.

5.   Defendant Holder states that "the firm and I do not have confidential information regarding Dr. Agha arising from the firms prior representation of Dr. Agha" (Pg3Lns5-6) and that it "concluded some eight years ago" and that "the firm does not hold or represent an interest adverse to the estate".......'The firm is disinterested" (Pg3Lns8-10)

3

LISA HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 395-1000
E-mail: lholder@kleinlaw.com

Attorneys for Jeffrey M. Vetter, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SALMA H. AGHA,<br><br>Debtor. | Case No. 10-16183-A-7<br><br>Chapter 7<br><br>DC No. KDG-1<br><br>*SUPPLEMENTAL DECLARATION OF LISA HOLDER REGARDING ORDER AUTHORIZING TRUSTEE TO EMPLOY ATTORNEYS EFFECTIVE SEPTEMBER 13, 2012*<br><br>Date:     N/A<br>Time:     N/A<br>Place:    U.S. Bankruptcy Court<br>          1300 18th Street, Ste. A<br>          Bakersfield, California<br>Judge:    Hon. Fredrick A. Clement |

I, Lisa Holder, declare:

    1.    This supplements my declaration filed on November 8, 2012, document number 73 on the docket. The Court entered an order authorizing Klein, DeNatale's employment as attorneys for the trustee on November 21, 2012, document number 77 on the docket.

    2.    On or about December 17, 2012, I received emails from Salma Agha's bankruptcy attorney, William Cummings, forwarded from Jeffrey Vetter, trustee, stating that Klein, DeNatale represented Salma Agha several years ago and that Klein, DeNatale has a conflict of interest in representing the trustee. My conflict check had not picked up prior representation of Dr. Agha.

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

3.    I ran a search in my conflicts system under the name "Salma Khan," which returned a result indicating that Klein, DeNatale represented Salma Khan in 2003-2004 in construction defect litigation.  Dr. Agha sued the builder of her personal residence, and Klein, DeNatale represented her.  Based on the information in the firm's system, Klein, DeNatale completed its representation of Dr. Agha in or about January 2005, so Dr. Agha is a former client.  The specific attorney who represented Dr. Agha left the firm in or about May 2010.

4.    Dr. Agha's petition did not disclose that she had used any other names during the eight years before the petition date.  *See* page one of document number 1 on the Court's docket.

5.    Under the California Rules of Professional Conduct, Rule 3-310(E), "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, **by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.**"  *See* Rule 3-310(E), emphasis added.

6.    Bankruptcy Rule 2014 requires an applicant to be employed by the trustee to provide a verified statement showing "all of the person's connections with the debtor ...."

7.    11 U.S.C. § 327 provides that the trustee may employ an attorney that does not hold or represent and interest adverse to the estate, and that is disinterested, to represent the trustee in carrying out his duties.

8.    Here, the firm represented Dr. Agha against the builder of her personal residence regarding construction defects at the residence. This representation began in 2003 and concluded eight or so years ago. I do not believe the firm obtained confidential information regarding Dr. Agha in her construction defects case material to the firm's employment by the trustee in her bankruptcy case almost eight years later.

9.    I personally knew nothing regarding Dr. Agha other than the information I have obtained as attorney for the trustee, until alerted to the prior representation by Attorney Cummings.  Then I briefly reviewed the firm's electronic record of its representation of Dr. Agha to determine the nature of the former representation. I reviewed the final settlement

KLEIN, DeN    &, GOLDDEN,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1   agreement related to the prior representation, a transmittal letter to Dr. Agha requesting that

2   she sign the agreement, and the dates the representation commenced and concluded, and the

3   firm's record of billings and payments received. In this review, I saw no confidential

4   information relative to my representation of the trustee in this matter.

5          10.    For those reasons, I believe that the firm and I do not have confidential

6   information regarding Dr. Agha arising from the firm's prior representation of Dr. Agha

7   related to the firm's and my representation of the trustee in this case.

8          11.    Because the firm's representation of Dr. Agha concluded some eight years

9   ago, the firm does not "hold or represent an interest adverse to the estate." The firm is

10  disinterested because it is not a creditor of Debtor and has no other relationship with Debtor.

11         12.    My knowledge regarding Dr. Agha's file with the firm is based on my review

12  of her file as described above. The firm's file is its business record made at or near the time

13  of the events recorded by someone with personal knowledge of the events, was kept in the

14  course of the firm's regularly conducted business, and making the records is a regular

15  practice of the firm. For those reasons, this testimony is admissible under FRE 803(6).

16         13.    The above statements are within my personal knowledge and I can testify

17  competently regarding these statements if called as a witness.

18         I declare under the penalty of perjury under the laws of the State of California and of

19  the United States that the foregoing is true and correct.

20  Executed this 2nd day of January, 2013 at Bakersfield, California.

21

22                                              LISA HOLDER

23

24

25

26

27

28

39C2022.DOC                              3

# EXHIBIT: 8

## SUMMERY OF BANKRUPTCY DATES

**Bankruptcy Filed: May 30, 2010**

**Debtor Discharged: September 23, 2010**

**Bankruptcy Reopened: September 18, 2012**

**ISSUE: Lacks jurisdiction.** US Department of Justice Chapter 7 Trustee Handbook Chapter 8: Administration of a Case: 8-12 Section 546." 1. **Limitations.** Stature of limitations, the later of two years after the entry of the order for relief, or one year after the appointment or election of the first trustee, or the time the case is closed dismissed, whichever occurs first"

CM/ECF LIVE - U.S. Bankruptcy Court-cab

**10-16183** Salma H. Agha

Case type: bk Chapter: 7 Asset: Yes Vol: v Hon: Fredrick E. Clement

Date filed: 05/30/2010 Date of last filing: 02/19/2013

Debtor discharged: 09/23/2010

# Case Summary

Office: Fresno
County: KERN-CA
Fee: Paid
Origin: 1
Previous term: 01/07/2011

Joint: n
Current chapter: 7

Debtor disposition: Standard Discharge

Nature of debt: consumer
Pending status: Awaiting Trustee's Report ,Case Reopened
Flags: MEANSNO, BAKERSFIELD, DISCHARGED, REOPENED

Filed: 05/30/2010
Terminated:
Debtor discharged: 09/23/2010
Reopened: 09/18/2012
Converted:
Debtor dismissed:
Confirmation hearing:

Trustee: August B. Landis    City:    Phone:
Trustee: Jeffrey M. Vetter    City: Bakersfield    Phone: (661) 809-6806

Party 1: Agha, Salma H.    (Debtor)
        SSN / ITIN: xxx-xx-9600

Atty: William R. Cumming    Represents party 1: Debtor    Phone: 714-432-6494
Location of case files:
   Volume:  CS1
The case file may be available.

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 02/28/2013 09:18:09 | | |
| PACER Login: | is0898 | Client Code: | |
| Description: | Case Summary | Search Criteria: | 10-16183 |
| Billable Pages: | 1 | Cost: | 0.10 |

2/28/13

# EXHIBIT: 9

# US DEPARTMENT OF JUSTICE CHAPTER 7 TRUSTEE HANDBOOK

Chapter 8: Administration of a Case: 8-12 Section 546."
1. **Limitations.** Stature of limitations, the later of two years after the entry of the order for relief, or one year after the appointment or election of the first trustee, or the time the case is closed dismissed, whichever occurs first"

U.S. Department of Justice
Executive Office for United States Trustees

# Handbook for
# Chapter 7 Trustees

## *July 1, 2002*
*(includes technical amendments effective January 1, 2005)*
*(includes updated 341 meeting questions effective March 1, 2006)*
*(includes Domestic Support Obligations, effective October 1, 2008)*
*(includes protection of personally identifiable information, effective*
 *May 1, 2010)*



8-12

## Section 544 – General Power

This section vests the trustee with the powers of a hypothetical judicial lien creditor or bona fide purchaser of real property under state law. The effect is to empower the trustee to avoid unperfected and secret liens, even if the debtor or trustee has knowledge of these liens. This section also allows a trustee to exercise the rights of actual unsecured creditors to avoid liens under state fraudulent and preferential conveyance laws, to avoid defective bulk transfers, and to employ state equitable remedies such as the marshaling of assets.

## Section 545 – Statutory Liens

This section empowers the trustee to avoid certain statutory liens, such as landlord liens, against the debtor's property within the terms and conditions set out in the section. Note that "statutory lien" is defined in § 101(53).

## Section 546 – Limitations

This section places limitations on the trustee's power. Limits are specified as to:

   

1. statute of limitations, the later of two years after the entry of the order for relief or one year after the appointment or election of the first trustee, or the time the case is closed or dismissed, whichever occurs first;

2. post-petition perfection authorized by non-bankruptcy law;

3. reclamation – statutory or common law;

4. producers of grain or fishermen; and

5. payments regarding settlement or margin accounts, repurchase agreements or swap agreements.

## Section 547 – Preferences

This section deals with preferential transfers. It is probably the most important and most frequently used avoiding power of the trustee. The trustee may avoid any transfer of an interest of the debtor in property:

1. to or for the benefit of a creditor;

2. for or on account of an antecedent debt owed by the debtor before the transfer was made;

3. made while the debtor was insolvent;

# EXHIBIT: 10

## EMAIL FROM US TRUSTEES OFFICE TO DEFENDANT ZOURAS STATING US TRUSTEE OFFICE POLICY OF DESTRUCTION OF CREDITORS MEETING RECORDINGS IN TWO YEARS FROM THEIR DATE OF OCCURRENCE

**Date of Email: August 1, 2012**

**Attachment: Second Creditors Meeting Recording, August 27, 2012**

| From: | "Lee, Bev (USTP)" <Bev.Lee@usdoj.gov> |
|-------|----------------------------------------|
| Date: | Wednesday, August 01, 2012 3:23 PM |
| To: | <Peterzou@pacbell.net> |
| Cc: | <bbgltd@gmail.com> |
| Attach: | 10-16183 August 27, 2010.MP3 |
| Subject: | 10-16183 |

The court docket reflects four meeting of creditors held for the above-referenced bankruptcy case. They are as follows:

July 12, 2010 – No appearance by debtor or debtor's counsel
July 16, 2010 – appearance by debtor and debtor's counsel
August 13, 2010 – No appearance by debtor or debtor's counsel
August 27, 2010 – appearance by debtor and debtor's counsel

Unfortunately, I cannot locate the recording for July 16, 2010, but I have attached the recording for August 27, 2010.

We house the recordings in our office on CD's for two years. The July 16, 2010 CD would have been ready for destruction on July 16, 2012.

## Beverly Lee
Secretary
Office of the United States Trustee
2500 Tulare Street, Suite 1401
Fresno, CA 93721
Bev.lee@usdoj.gov
Phone: (559) 487-5002 ext. 232
Fax: (559) 487-5030

9/3/2012

# EXHIBIT: ||

## JUDICIAL MISCONDUCT COMPLAINT FILED AGAINST DEFENDANT JUDGE FREDRICK CLEMENT

Date Filed: September 19, 2013

**Complaint of Judicial Misconduct**

**Case No: 13-90160**

OFFICE OF THE CIRCUIT EXECUTIVE

## UNITED STATES COURTS FOR THE NINTH CIRCUIT

JAMES R. BROWNING UNITED STATES COURTHOUSE
95 SEVENTH STREET
POST OFFICE BOX 193939
SAN FRANCISCO, CA 94119-3939

CATHY A. CATTERSON,
CIRCUIT & COURT OF APPEALS EXECUTIVE
PHONE: (415) 355-8000

October 09, 2013

Aalma H. Agha-Khan, MD
10001 Venice Blvd. #402
Los Angeles, CA 90043

Re:  Complaint of Judicial Misconduct No. 13-90160

Dear Ms. Agha-Khan:

We have received the complaint of judicial misconduct filed pursuant to 28 U.S.C. § 351(a) against Bankruptcy Judge Clement.  Docket Number 13-90160 has been assigned to this matter.

Pursuant to the Rules for Judicial-Conduct and Judicial-Disability Proceedings, a copy of the complaint has been forwarded to Chief Judge Kozinski, Chief District Judge England, Chief Bankruptcy Judge Klein and Bankruptcy Judge Clement.

Very truly yours,

Cathy A. Catterson

CAC/gb

Date: 3rd September, 2013

To:   Clerk, US District Court
       2500 Tulare Street
       Fresno, CA 93721

From: Salma Agha-Khan, MD.
       11622 Harrington St
       Bakersfield, CA 93311

Re:   Judicial Review - Misconduct of Judge Frederick Clement

I am a minority female physician practicing Medicine since 1986. I have been a target of sexual discrimination, harassment based on ethnicity, emotional and financial abuse arising from combined actions of the Trustee, Judge Clement and KDG law firm employed by the Trustee for his representation. This law firm had previously represented myself, the Debtor in a separate law suit *(Ex 3)*.

Kindly investigate my request for judicial Review pertaining to Judge Frederick Clements Judicial Misconduct and resultant Disability to remain neutral and unbiased towards the parties involved in cases he is judging. Due to Judge Clements clear favoritism of the Bidder/Defendant Bruce Breitman/BBG Ltd, he has not only caused both the Debtor and the Creditors extreme financial losses but also resulted in a reverse judgment against the Petitioner in excess of $100,000.00 *(Ex 2 - iii)*.

I can be reached at 949-332-0330 by phone or salmahagha@aol.com by email. I will be happy to provide any additional documents that you may need with regard to this Judicial Review. I will also appreciate any feedback or notification regarding actions arising or taken as a result of this Judicial Review. I am hoping that all parties conducting this review will realize the bias and take appropriate measures to ensure that damage done to the Debtor and the Creditors from Judge Fredrick Clements discriminating, damaging, ruthless behavior is repaired and it does not repeat itself in future.

Thanking You,

Salma Khan

Salma Agha-Khan, MD.

# DETAILS OF MISCONDUCT

## A) Judge Clement knew about KDGs prior conflict arising from their representation of the Debtor. He deliberately ignored serious issue of Conflict of Interest in Trustee being represented by this same KDG law firm against the Debtor that had previously represented the Debtor

### BACKGROUND FOR CONFLICT OF INTEREST:

KDG law firm had been hired by myself in the past (*Ex 3*). KDG lawfirms unethical conduct/actions placed me in a compromising situation against the defendant. I pointed this out to the Firms Principal, Barry Goldner, who personally apologized to me for the actions of his associate and returned a significant sum of fees (around $30,000.00) paid to them by me.

*Khan v. Froehlich Construction Co. Inc*
*Kern County Superior Court Case # 250113-SPC*

### BASIS FOR BIAS – OLD SCORE TO SETTLE:

1. Ms. Lisa Holder from KDG law firm at first tries to get the lawsuit/asset simply assigned to the Defendant in the same lawsuit *(Ex 1 i)*.

2. Ms. Lisa Holder from KDG increased the scope of sale in violation of State Courts ruling - adding my LLC interest to the sale of my personal interest *(Ex 7)*.

3. Ms. Lisa Holder from KDG law firm attempts slander by insinuating that I was using different names at different times on an as needed basis instead of a legal name change from divorce in 2003. KDG Law Firm when retained in 2004, chose to use Khan due to their professional familiarity with this name. Judge Clement allowed KDG firm to represent the Trustee despite admission from the Law firm that they did a conflict of interest search for previous Clients *(Ex 1 iv: Pg 14* Ln 20-22) and *(Ex 3)*. We know that in any people/name search all prior names used by the person are flagged.

4. Ms. Lisa Holder from KDG continued even with potential threat of non-payment for their services. Judge Clement when notified of this serious Conflict of Interest flippantly commented that in case a conflict of interest existed then this Law Firms will not be paid for their services *(Ex1 iv: Pg 14 Ln 22-25, Pg 15 Ln 20-25. Pg 11 Ln 1-2)*.

## B) Judge Clement refused to allow the argument that Debtor had disclosed the said assets/lawsuits and interest in LLC both in bankruptcy filings and in Creditors Meetings *(Ex 1 iii)*

1. Judge Clement ignores Mr. Vetters statement in 1st Creditors Meeting that he "does not want to get caught up in a lawsuit that's going to drag on for ages" *(Ex 6 ii: Pg 35 Ln 17 – 25 & Pg 36 Ln 1)*.

2. Judge Clement also ignores the lengthy discussions between the Debtor and the Trustee during course of 2 Creditors Meetings regarding Debtors interest in this LLC and potential culprits for the lawsuits related to this business *(Ex 6 i: Statement of Financial Affairs), (Ex 6 ii: Pg 14 – 19, Pg 35 Ln 17 – 25 & Pg 36 Ln 1)* and *(Ex 6 iii: Pg 5, 7 – 9)*

## C) Judge Clement preferentially selects and focuses on selling 1 asset/lawsuit out of 2 related to the same business outlined in Debtors bankruptcy documents – intentionally ignores the 2nd

The assets/lawsuits in dispute were TWO lawsuits related to the same business

1. Superior Court of San Francisco. Case # CGC-11-515095 *(Ex 4 ii)* Vodka From Around the World, LLC and Salma Agha-Khan v. BBG Ltd, Bruce Brietman
2. Superior Court of Orange, Santa Ana. Case # 30-2011-00515117 *(Ex 4 iii)* Vodka From Around the World, LLC & Salma Agha-Khan v. Saghir & Davis

Judge Clement despite reading the filings multiple times and despite the 2nd lawsuit being mentioned over and over again during the proceedings, deliberately ignores the 2nd law suit. Judge Clement paid all his attention and concentrated on selling just the 1 lawsuit against Bruce Breitman/BBG Ltd. He intentionally ignored the 2nd lawsuit failing to include it in the assets up for sale. *(Ex 1 iv: Pg 9 Ln 5-6, Pg 11 Ln 20-21)*

## D) Judge Clement refused to allow the Debtor to defend herself & forcefully prevented her from dismissing her attorney during these proceedings – human rights infringement

1. Judge Clement on multiple occasions announced that if a Party is being represented by their attorney then the attorney will speak for them unless the attorney is discharged *(Ex 1 iv: Pg 3 Ln 23-25, Pg 10 Ln 1-6). (Ex 2 i: Pg 4 Ln 9-10)*

2. Judge Fredrick Clement refused to allow me to dismiss my attorney so I can better represent myself (Ex 2 i: Pg 21 Ln 1-12)

## E) Judge Clement asks biased Mr. Chandler to testify in the same court case from which his Client will be benefiting directly – once again disregards Conflict of Interest

Judge Clement asks Mr. Chandlers opinion on the current legal hearing when Mr. Chandler was representing the Defendant, Bruce Breitman/BBG Ltd, sole buyer for the Debtors lawsuit/asset which may potentially be sold at this hearing. Mr. Chandler thus stood to directly benefit from the outcome. (Ex 2 i: Pg 16 Ln 20-25). Mr. Chandler being biased, disregards his conflict of interest and gives a 3 page opinion on this case (Ex 2 i: Pg 17-19).

1. Judge Clement knew that Mr. Chandler was not legal Counsel representing either the Debtor or the Trustee and thus had no official knowledge of the intricacies of this case. His sole interest was to purchase Debtors asset/lawsuit interest for his Defendant client, Bruce Breitman/BBG Ltd – conflict of interest.

2. Judge Clement knew Mr. Chandler was neither a Bankruptcy specialist nor an Expert Witness and yet allowed his opinion on how the Trustee should have handled this matter (Ex 2 i: Pg 18 Ln 20-23)

3. Judge Clement while ruling on this matter had full knowledge that Mr. Chandler stated the Trustee could not "imaginatively determine the defendants without further investigation" (Ex 2 i: Pg 16 Ln 14-15). Judge Clement knew this was a course the Trustee had decided not to pursue initially.

4. Judge Clement thanked heavily biased Mr. Chandler who had his clients best interest at heart, for giving his 3 page opinion on the legal proceedings for which he was never legally consulted in any way and had no business commenting on (Ex 2 i: Pg 19 Ln 8).

5. Judge Clement ridiculed the seriousness of the ongoing hearing by asking Mr. Chandler to comment on the case as if this was not a legal hearing taking place in a Court Room but a social discussion taking place in his living room where all present can give their opinion on a random topic as they pleased.

## F) Judge Clement endorsed and shared Mr. Chandlers bias and derogatory comments regarding female minority Debtors legal name change following divorce

1. Mr. Chandler had issues with female Debtor assuming her maiden name given to her at birth, following a divorce inferring that the Debtor went through different names at different times on an as needed basis (*Ex 2 i: Pg 17 Ln17-22*)

2. Mr. Chandler without studying the case states how the Debtor was trying to run everyone sideways and hide the "real facts" (*Ex 2 i: Pg 18 Ln 10-19*)

3. Mr. Chandler proceeds to give his judgment on actions of the Debtor and her Legal Counsel without legally being involved in the case (*Ex 2 i: Pg 19 Ln 1-7*)

## G) Judge Clement shares his ruling with Defendants attorney on the case BEFORE actually passing it

Judge Clement shared his ruling with Mr. Chandler prior to the hearing as Mr. Chandler agrees with the Courts analysis even before the analysis is given by the Court (*Ex 2 i: Pg 17 Ln 23-24*)

## H) Judge Clement deliberately ignores Trustees selective notification of sale preferentially given to Defendant in this same asset/lawsuit and not to the original defendants/parties named in bankruptcy documents, mentioned repeatedly in these hearings

The original bankruptcy documents named 2 potential assets/lawsuits relating to the same business (*Ex 1 iv: Pg 10 Ln 5-16*)

    i)    SF Nitelife and its Principles (Grossman Brothers)
    ii)    Syed Saghir and Candice Davis

1. Judge Clement selected just 1 asset/lawsuit out of the 2 for sale (*Ex 4 ii & iii*).

2. Prior to the bidding Judge Clement was specifically asked to note that besides the Creditors the above mentioned potential Defendants/interested parties in this lawsuit and related lawsuit were not notified. The main person notified was BBG Ltd/Bruce Breitman and his attorney Peter Zouras, Defendant in this asset/lawsuit (*Ex 2 i: Pg 25 Ln 11-13, Pg 26 Ln 17-18, Pg 27 Ln 11-15, Pg 28 Ln1-25, Pg 29 Ln 17-22, Pg 30 Ln 17-25*)

3. Judge Clement confirms facts on selective notification but considers it sufficient notice (*Ex 2 i: Pg 30 Ln 21-25*). Selective notification was designed to keep other potential interested parties away. Thus myself - the Debtor, was the only other bidder besides the Defendant in this lawsuit/assset.

4. The Defendant in this lawsuit/asset after receiving preferential notification of the sale placed a bid for $15,000.00 – higher than the starting bid of $1,500.00.

## I) Judge Clement refuses on behalf of Trustees attorney a much more lucrative offer benefiting the Creditors. He made sure the asset/lawsuit is sold to the Defendant in the same lawsuit. He cheats Creditors of over $170,000.00

1. Judge Clement himself refused the much more lucrative offer benefiting the Creditors on behalf of Trustees attorney (*Ex 2 i: Pg 33 Ln 4-11*)

2. An offer of $15,000.00 + 10% of total collected winnings from this asset/lawsuit was offered to the Trustee by the Debtor. (*Ex 2 i: Pg 32 Ln 19-25*). Judge Clement was told that $700,000.00 was the judgment in a recent prior Precedent lawsuit related to this matter (*Ex 2 i: Pg 33 Ln 17-20*). Thus sample amount of benefit to the Creditors would have been at least $85,000.00 = $15,000.00 + $70,000.00. *Cheats Creditors of 2 lawsuit = $170,000.00 +*

## J) Judge Clement reduced the sale price from final bid of $17,000.00 to $15,000.00, favoring the Buyer/Defendant in the same lawsuit/asset while cheating the Creditors

1. The bidding started at $15,000.00 and my first offer of $15,000.00 + 10% of money from lawsuit was personally rejected by Judge Clement on behalf of the Trustees attorney. (*Ex 2 i: Pg 33 Ln 4-11*). I then counter the bid a few times till the Defendants attorney, Mr. Chandler, put in a bid for $17,000.00. At this point I withdrew from the bidding process realizing this was a setup.

2. Judge Clement at the conclusion of bidding instead of selling the asset/lawsuit to the Defendant for final bid price of $17,000.00 reduces the sale price to $15,000.00. Thus once again favoring the Defendant and cheating the Creditors (*Ex 2 i: Pg 36 Ln 19-20*)

# GROUNDS FOR DISABILITY

Judge Fredrick Clement showed a lack of comprehension, disregard for legal proceedings, violation of Human Rights, ignorance of his surroundings and poor judgment resulting in enormous financial losses to the Debtor and the Creditors. Due to the aforementioned reasons, Judge Fredick Clement lacks the competency to fairly and justly complete his duties as a federal judge and must be considered disabled.

Judicial Council of the Ninth Circuit

## COMPLAINT OF JUDICIAL MISCONDUCT OR DISABILITY

To begin the complaint process, complete this form and prepare the brief statement of facts described in item 5 (below). The RULES FOR JUDICIAL-CONDUCT AND JUDICIAL-DISABILITY PROCEEDINGS, adopted by the Judicial Conference of the United States, contain information on what to include in a complaint (Rule 6), where to file a complaint (Rule 7), and other important matters. The Ninth Circuit Judicial Council also adopted local misconduct rules. The rules are available in federal court clerks' offices, on individual federal courts' Web sites, and on www.uscourts.gov, and www.ce9.uscourts.gov/misconduct/judicial_misconduct.html.

Your complaint (this form and the statement of facts) should be typewritten and must be legible. Under the Ninth Circuit's local misconduct rules, you are required to file five copies of your misconduct complaint and exhibits, plus one copy for each additional judge if more than one subject judge is named in your complaint. Enclose your complaint in an envelope marked "COMPLAINT OF MISCONDUCT" or "COMPLAINT OF DISABILITY" and submit it to the appropriate clerk of court. **Do not put the name of any judge on the envelope.**

1.   Name of Complainant:    Salma H. Agha-Khan, MD

     Contact Address:    10001 Venice Blvd, #402

                         Los Angeles, CA 90043

     Daytime telephone:    (949) 332-0330

2.   Name(s) of Judge(s):    Fredrick Clemenet

     Court:    Bakersfield, CA

3.   Does this complaint concern the behavior of the judge(s) in a particular lawsuit or lawsuits?

     [ x ] Yes          [ ] No

     If "yes," give the following information about each lawsuit:

     Court:    Eastern District, Bakersfield, CA

     Case Number:    10-16183-A-7

     Docket number of any appeal to the _____ Circuit: _____

     Are (were) you a party or lawyer in the lawsuit?

     [ x ] Party          [ ] Lawyer          [ ] Neither

Page 1 of 3

If you are (were) a party and have (had) a lawyer, give the lawyer's name, address, and telephone number:

William Cumming    #714-432-6494 & 949-533-0388

3080 Bristol St. #630

Costa Mesa, CA 92626

4. Have you filed any lawsuits against the judge?

      [   ] Yes          [ x ] No (not yet)

If "yes," give the following information about each such lawsuit:

Court: _____

Case Number: _____

Present status of lawsuit: _____

Name, address, and telephone number of your lawyer for the lawsuit against the judge:

_____

_____

_____

Court to which any appeal has been taken in the lawsuit against the judge:

_____

Docket number of the appeal: _____

Present status of the appeal: _____

5. **Brief Statement of Facts.** Attach a brief statement of the specific facts on which the claim of judicial misconduct or disability is based. Include what happened, when and where it happened, and any information that would help an investigator check the facts. If the complaint alleges judicial disability, also include any additional facts that form the basis of that allegation. Local Rule 6.1(b) provides that your statement of facts must not be longer than five pages (five sides), or 1,200 words, whichever is less.

**You must provide objectively verifiable proof such as the names of witnesses or recorded documents or transcripts to support your allegations.** Adverse rulings do not support misconduct allegations, as the appropriate forum for an argument that a judge erred is the appellate court. Thus, you need not include copies of your filings in the underlying case or the judge's orders because even if a review of those documents is necessary, the documents are accessible via PACER. Excess or irrelevant documentation will be returned to the complainant.

6.    Acknowledgment, declaration and signature:

In the space provided below, please write the following statement: "I understand that even if I successfully prove that the judge engaged in misconduct or is disabled, this procedure cannot change the outcome of my underlying case." (If this statement is not written, your complaint will not be processed and will be returned to you.)

I understand that even if I successfully prove that the judge engaged in misconduct and is disabled, this procedure cannot change the outcome of my underlying case..

I declare under penalty of perjury that the statements made in this complaint are true and correct to the best of my knowledge.

(Signature) _____    (Date)    6th September 2013

# EXHIBIT: 12

## MISCONDUCT COMPLAINT FILED AGAINST DEFENDANT TRUSTEE JEFFREY M. VETTER

Date Filed: September 30, 2013

## Complaint of Judicial Misconduct

## Case No: 13-100

Date: 30th September, 2013

To:    Mr. August Landis
       Acting U.S. Trustee
       Office of the US Trustee
       235 Pine Street, Suite 700
       San Francisco, CA 94104

From: Salma Agha-Khan, MD.
       10001 Venice Blvd, # 402
       Los Angeles, CA 90043

Re:    US Trustee acting against the financial interests of Debtor and Creditors

I am a minority female physician of Asian ethnicity practicing Medicine since 1986. I have been a target of sexual discrimination and harassment based on ethnicity with added financial abuse arising from biased actions of the US Trustee – Jeffrey Vetter.

US Trustee, Mr. Vetters, in this carefully staged saga shows extreme malicious intent and complete lack regard for the duties he owed as Trustee to the Debtor and the Creditors. It seems the whole Bankruptcy reopening 2 years after discharge was to benefit the Defendant, Mr. Bruce Breitman, in this 1 out of 2 lawsuit/asset US Trustee, Mr. Vetter picks out related to the same business is evidenced by the following

1. engagement of KDG law firm for his representation against me, the Debtor, knowing this same law firm had previously represented myself, the Debtor, in a separate law suit. *(Background & Ex 3)*.

2. re-opening of my Bankruptcy 2 years after discharge at behest of Defendant, Mr. Bruce Breitmans attorney Mr. Peter Zouras, in a lawsuit which US Trustee is now declaring as an asset. This same "asset" and another 2nd lawsuit arising from the same venture, during 2 Creditors meetings were considered not worth going after at that time by the US Trustee, Mr. Vetter as he "does not want to get caught up in a lawsuit that's going to drag on for ages" *(Ex 6 ii: Pg 35 Ln 17 – 25 & Pg 36 Ln 1)*.

3. Mr. Vetter claiming he had no knowledge of my interest in this Vodka From Around The World LLC. *(Ex 6 i: Statement of Financial Affairs), (Ex 6 ii: Pg 14 – 19, Pg 35 Ln 17 – 25 & Pg 36 Ln 1) and (Ex 6 iii: Pg 5, 7 - 9)*.

4. staking his claim on this specially picked 1 out of 2 lawsuits/assets originally discussed and now filed *(Ex 5 I, ii & iii))*. US Trustee, Mr. Vetter, claiming this was "intentionally hidden" in original Bankruptcy documents when he had extensive lengthy detailed discussions regarding these with me, the Debtor, on

occasions in the Creditors Meetings. *(Ex 6 i: Statement of Financial Affairs), (Ex 6 ii: Pg 14 – 19, Pg 35 Ln 17 – 25 & Pg 36 Ln 1) and (Ex 6 iii: Pg 5, 7 - 9).*

5. attempting to directly assign this special interest asset/lawsuit to the Defndant, Mr. Breitman, in the same lawsuit/asset *(Ex 1 i)*

6. selective notification of asset/lawsuit sale to the Defendant in same lawsuit while failing to notify other potential buyers *(Ex 2 i: Pg 25 Ln 11-13. Pg 26 Ln 17-18, Pg 27 Ln 11-15, Pg 28 Ln1-25, Pg 29 Ln 17-22, Pg 30 Ln 17-25)*

7. discarding of a much more lucrative bid which would have greatly benefited the Creditors - collecting  in excess of $85,000.00 per lawsuit/asset (for 2 lawsuits over $170,000.00) - *(Ex 2 i: Pg 33 Ln 4-11)*

8. reducing the final sale price to $15,000.00 from final bid price of $17,000.00 *(Ex 2 i: Pg 36 Ln 19-20)*

It is unknown what ties US Trustee, Mr. Vetter, had with the Defendant, Mr. Brietman that not only did he stage the above drama to solely benefit Mr. Brietman but my  mention of the word "safe" in my Deposition against Mr. Brietman caused Mr. Vetter to place a hold on a safe I owned. This safe was paid for by a company I had opened after discharge of Bankruptcy.

Kindly investigate the actions of US Trustee, Mr. Jeffrey Vetter, arising from his favoritism of Defendant, Mr. Breitman, which demonstrate his extreme bias against the Debtor and the Creditors both of which he had a duty to serve. He caused both the Debtor and Creditors extreme financial losses resulting in a reverse judgment against Debtor/Petitioner in excess of $100,000.00 *(Ex 2 - iii).*

I will be happy to provide any additional documents needed and I can be reached at 949-332-0330 by phone or salmahagha@aol.com by email. I will also appreciate any feedback or notification regarding actions arising or taken as a result of this investigation.

I am hoping that all parties conducting this investigation will realize the extreme unethical behavior of the US Trustee, Mr. Jerrfrey Vetter, and take appropriate measures to ensure that all damage done to the Debtor and the Creditors from his discriminating, damaging, ruthless behavior is repaired and it does not repeat itself in future.

Thanking You,

Salma Agha-Khan, MD.

# US TRUSTEES MISCONUCT DETAILS:

US Trustee, Mr. Jeffrey Vetter due to his unknown ties to Mr. Bruce Brietman, Defendant in lawsuit now claimed to be an asset, forgets the duties he owed to the Debtor and the Creditors. Mr. Vetter while wearing the cloak of US Trustee aims to solely benefit Mr. Bruce Brietman and in this process he makes a mockery of our Federal Judicial System by ignoring every rule and every law founded to protect the Consumer.

US Trustees actions are divided into 2 categories

      I)      Most Obvious Acts and

      II)     Less Obvious Acts

# I) MOST OBVIOUS ACTS

## A) US TRUSTEE REOPENS THE BANKRUPTCY 2 YEARS AFTER DISCHARGE

In 1st lawsuit Defendant Mr. Bruce Breitmans attorney, Peter Zouras, petitioned to the State Court that my interest in this LLC was not adequately disclosed in my BK filings and thus my personal interest and my interest in the LLC related to this lawsuit should be assigned to the Defendant. The State Court ruled that only my personal interest in this lawsuit is questioned and depending on Trustees approval I can continue in this lawsuit *(Ex 7)*. Based on Defendant's attorney, Peter Zouras persuasion, the US Trustee, Mr. Vetter, reopened my Bankruptcy on 18th September 2012 *(Ex 5 i, ii & iii)* claiming that my interest in Vodka From Around The World LLC was kept a secret and thus this 1 special lawsuit he picked out of 2 was his to take over.

## B) US TRUSTEE IGNORES SERIOUS CONFLICT OF INTEREST & PICKS A LAWFIRM THAT HAD PREVIOUSLY REPRESENTED THE DEBTOR

In this Bankruptcy reopening to take over the 1 chosen lawsuit out of 2 the US Trustee, Mr. Vetter, picked Klein DeNatale Goldner Law firm to represent himself against myself, the Debtor, knowing that KDG law firm had previously represented myself, the Debtor in a separate lawsuit *(Ex 3)*.

*Khan v. Froehlich Construction Co. Inc*
*Kern County Superior Court Case # 250113-SPC*

KDG law firm in the above mentioned lawsuit exhibited unethical conduct/actions which placed me in a compromising situation against the defendant. I pointed this out to the Firms Principal, Mr. Barry Goldner, who personally apologized to me for the actions of his associate and returned a significant sum of fees (around $30,000.00) paid to them by me.

BASIS FOR BIAS – OLD SCORE TO SETTLE:

1. Ms. Lisa Holder from KDG law firm at first tries to get the lawsuit/asset simply assigned to the Defendant in the same lawsuit *(Ex 1 i)*.

2. Ms. Lisa Holder from KDG increased the scope of sale in violation of State Courts ruling - adding my LLC interest to the sale of my personal interest *(Ex 7)*.

3. Ms. Lisa Holder from KDG law firm attempts slander by insinuating that I was using different names at different times on an as needed basis instead of a legal name change from divorce in 2003. KDG Law Firm when retained in 2004, chose to use Khan due to their professional familiarity with this name. Judge Clement allowed KDG firm to represent the Trustee despite admission from the Law firm that they did a conflict of interest search for previous Clients *(Ex 1 iv: Pg 14* Ln 20-22) and *(Ex 3)*. We know that in any people/name search all prior names used by the person are flagged.

4. Ms. Lisa Holder from KDG continued even with potential threat of non-payment for their services. Judge Clement when notified of this serious Conflict of Interest flippantly commented that in case a conflict of interest existed then this Law Firms will not be paid for their services *(Ex1 iv: Pg 14 Ln 22-25, Pg 15 Ln 20-25. Pg 11 Ln 1-2)*.

## C) US TRUSTEE CLAIMS HE HAD NO KNOWLEDGE OF DEBTORS INTEREST IN VODKA FROM AROUND THE WORLD LLC

US Trustee, Mr. Jeffrey Vetter, ignored the fact that my interest in this LLC and 2 potential related lawsuits were discussed over and over again in Creditors meetings *(Ex 6 ii & iii)*. Mr. Vetter had decided not to pursue these assets at that time *(Ex 6 ii & iii)* & *(Ex 1 iii)*. Now, 2 years later, Mr. Vetter selectively picks the 1 lawsuit/asset out of 2 against Mr. Zouras client, Bruce Breitman/BBG Ltd *(Ex 4 ii)*. Irregularities worth noting in Mr. Vetters behavior are

## D) US TRUSTEE SELECTIVELY PICKS 1 LAWSUIT OUT OF 2 RELATED TO THE ABOVE LLC AND STAKES HIS CLAIM ON IT

The assets/lawsuits in dispute were TWO lawsuits related to the same business

1. Superior Court of San Francisco. Case # CGC-11-515095 *(Ex 4 ii)*
   Vodka From Around the World, LLC and Salma Agha-Khan v. BBG Ltd, Bruce Brietman
2. Superior Court of Orange, Santa Ana. Case # 30-2011-00515117 *(Ex 4 iii)*
   Vodka From Around the World, LLC & Salma Agha-Khan v. Saghir & Davis

Mr. Vetter despite the 2nd lawsuit being discussed and mentioned over and over again during the Creditors Meetings, proceedings, deliberately ignores the 2nd law suit. Mr. Vetter pays all his attention to the one involving Mr. Bruce Breitman and selectively concentrates on selling just this 1 lawsuit/asset involving his favorite Mr. Bruce Breitman/BBG Ltd. *(Ex 1 iv: Pg 9 Ln 5-6, Pg 11 Ln 20-21)*

## E) US TRUSTEE TRIES TO DIRECTLY ASSIGN DEBTORS INTEREST TO THE DEFENDANT IN THE SAME LAWSUIT

US Trustee, Mr. Vetter, at first tries to directly assign his special interest asset/lawsuit to the Defendant, Mr. Breitman, in the same lawsuit/asset *(Ex 1 i)*

## F) US TRUSTEE ADOPTS SELECTIVE NOTIFICATION TO KEEP THE DEFENDANT AS THE ONLY BIDDER OTHER THAN THE DEBTOR

1. Prior to start of bidding on his 1 selected lawsuit/asset out of 2, US Trustees representative was specifically asked about the parties notified regarding the sale of this lawsuit/asset. US Trustees attorney, Ms. Holder, was specifically asked if besides the Creditors other potential Defendants/interested parties in this lawsuit and related lawsuits were notified. Ms Holder took special care mainly notify Mr. Bruce Breitman and his attorney Peter Zouras, Defendant in this asset/lawsuit thus keeping the number of bidder to a bare minimum by keeping out competing bidders *(Ex 2 i: Pg 25 Ln 11-13, Pg 26 Ln 17-18, Pg 27 Ln 11-15, Pg 28 Ln1-25, Pg 29 Ln 17-22, Pg 30 Ln 17-25)*

## G) US TRUSTEE IGNORES A MUCH MORE LUCRATIVE OFFER

1. US Trustee, Mr. Vetter and his attorney Ms. Holder, allow Judge Clement himself to refuse the much more lucrative offer benefiting the Creditors on their behalf without any objections *(Ex 2 i: Pg 33 Ln 4-11)*

2. An offer of $15,000.00 + 10% of total collected winnings from this asset/lawsuit was offered to the US Trustee by the Debtor. (*Ex 2 i: Pg 32 Ln 19-25*). Judge Clement was told that $700,000.00 was the judgment in a recent prior Precedent lawsuit related to this matter (*Ex 2 i: Pg 33 Ln 17-20*). Thus sample amount of benefit to the Creditors would have been at least $85,000.00 = $15,000.00 + $70,000.00. From 2 lawsuit $170,000.00

## H) US TRUSTEE REDUCES THE SELLING PRICE TO $15,000.00 FROM FINAL BID OF $17,000.00

1. The bidding started at $15,000.00 and my first offer of $15,000.00 + 10% of money from lawsuit was personally rejected by Judge Clement on behalf of the Trustees attorney. (*Ex 2 i: Pg 33 Ln 4-11*). I then counter the bid a few times till the Defendants attorney, Mr. Chandler, put in a bid for $17,000.00. At this point I withdrew from the bidding process realizing this was a setup.

2. US Trustee, Mr. Vetter allowed Judge Clement at the conclusion of bidding instead of selling the asset/lawsuit to the Defendant, Mr. Breitman, for final bid price of $17,000.00 to reduce the sale price to $15,000.00. Thus once again favoring the Defendant, Mr. Breitman and cheating the Creditors (*Ex 2 i: Pg 36 Ln 19-20*)

# II) LESS OBVIOUS ACTS

## A) US TRUSTEE ALLOWED JUDGE CLEMENT TO STOP THE DEBTOR FROM TESTIFYING

1. Judge Clement on multiple occasions announced that if a Party is being represented by their attorney then the attorney will speak for them unless the attorney is discharged (*Ex 1 iv: Pg 3 Ln 23-25, Pg 10 Ln 1-6*). (*Ex 2 i: Pg 4 Ln 9-10*)

2. US Trustee allowed Judge Fredrick Clement to refuse to let the Debtor dismiss her attorney so she may better represent herself (*Ex 2 i: Pg 21 Ln 1-12*)

## B) US TRUSTEE ALLOWED JUDGE CLEMENT TO ASK BIASED MR. CHANDLER TO TO TESTIFY IN THE SAME COURT CASE FROM WHICH HIS CLIENT, MR. BREITMAN WILL BE DIRECTLY BENEFITING – IGNORING CONFLICT OF INTEREST

US Trustee allows Judge Clement to ask Mr. Chandler his opinion on the current legal hearing when Mr. Chandler was representing the Defendant, Bruce Breitman/BBG Ltd, sole buyer for the Debtors lawsuit/asset which may potentially be sold at this hearing. Mr. Chandler thus stood to directly benefit from the outcome. (Ex 2 i: Pg 16 Ln 20-25). Mr. Chandler being biased, disregards his conflict of interest and gives a 3 page opinion on this case (Ex 2 i: Pg 17 -19).

1. Mr. Vetter knew that Mr. Chandler was not legal Counsel representing either the Debtor or the Trustee and thus had no official knowledge of the intricacies of this case. His sole interest was to purchase Debtors asset/lawsuit interest for his Defendant client, Bruce Breitman/BBG Ltd - conflict of interest.

2. Mr. Vetter knew Mr. Chandler was neither a Bankruptcy specialist nor an Expert Witness and yet allowed his opinion on how the Trustee should have handled this matter (Ex 2 i: Pg 18 Ln 20-23)

3. Mr. Vetter fully comprehended Mr. Chandlers statement that the Trustee could not "imaginatively determine the defendants without further investigation" (Ex 2 i: Pg 16 Ln 14-15). Mr. Vetter knew this was a course he had decided not to pursue initially when "does not want to get caught up in a lawsuit that's going to drag on for ages" (Ex 6 ii: Pg 35 Ln 17 – 25 & Pg 36 Ln 1).

4. Mr. Vetter allowed Judge Clement to thank the heavily biased Mr. Chandler who had his clients best interest at heart, for giving his 3 page opinion on the legal proceedings for which he was never legally consulted in any way and had no business commenting on (Ex 2 i: Pg 19 Ln 8).

5. Mr. Vetter allowed Judge Clement to ridicule the seriousness of the ongoing legal hearing by asking Mr. Chandler to comment on the case as if this was not a legal hearing taking place in a Court Room but a social discussion taking place in Judge Clement or Mr. Vetters living room where all present can give their opinion on a random topic as they pleased.

## C) US TRUSTEE ALLOWED JUDGE CLEMENT TO ENDOSE AND SHARE MR. CHANDLERS BIAS AND ENTERTAIN DEROGATORY COMMENTS REGARDING MINORITY FEMALE DEBTORS LEGAL NAME CHANGE FOLLOWING DIVORCE

1. Mr. Chandler had issues with female Debtor assuming her maiden name given to her at birth, following a divorce inferring that the Debtor went through different names at different times on an as needed basis (*Ex 2 i: Pg 17 Ln17-22*)

2. Mr. Chandler without studying the case states how the Debtor was trying to run everyone sideways and hide the "real facts" (*Ex 2 i: Pg 18 Ln 10-19*)

3. Mr. Chandler proceeds to give his judgment on actions of the Debtor and her Legal Counsel without legally being involved in the case (*Ex 2 i: Pg 19 Ln 1-7*)

## D) US TRUSTEE KNEW THAT JUDGE CLEMENT HAD SHARED HIS RULING WITH DEFENDANTS/BUYERS ATTORNEY, MR. CHANDLER, BEFORE ACTUALLY PASSING IT

1. US Trustee realized that Judge Clement shared his ruling with Mr. Chandler prior to the hearing as Mr. Chandler agrees with the Courts analysis even before the analysis is given by the Court (*Ex 2 i: Pg 17 Ln 23-24*)

## E) US TRUSTEE BASED ON HIS TIES TO DEFENDANT MR. BREITMAN PLACED A HOLD ON A SAFE OWNED BY MYSELF, PAID FOR BY A COMPANY OPENED BY MYSELF FOLLOWING DISCHARGE OF BANKRUPTCY, AT THE MENTION OF WORD SAFE IN MY DEPOSITION TAKEN BY DEFENDANTS ATTORNEY

1. US Trustee was notified by Defendant, Mr. Breitmans attorney that I had mentioned a bank safe in my deposition. Mr. Vetter then places a hold on this bank safe paid for by a business that I had opened following discharge of my bankruptcy (*Ex 8 i*).

# EXHIBIT: | 3

## FOURTY-NINE PAGES OF SCHEDULES
## NAME WRITTEN AS
## "SALMA HAIDER AGHA-KHAN"

Date Filed: July 13, 2010

**LIES TOLD BY ALL DEFENDANTS DURING ALL PROCEEDING AND IN ALL THEIR SUBMISSIONS UNDER OATH**

1. **LIE:** Debtor lied regarding her name "AGHA" and "KHAN"

    **TRUTH:** ALL FORTY NINE PAGES the name is SALMA HAIDER AGHA-KHAN (Pg1-49 top left corner)

2. **LIE:** "Debtors interest in said LLC was not disclosed"

    **TRUTH:** Vodka From Around The World LLC is listed in Statement of Financial Affairs because it had no sellable, tangible assets at the time of original filing – its placement was APPROVED by both DEFENDANTS Vetter and Clement acting as Trustee and Judge (Pgs 24&29)

3. **LIE:** "LLC ended on 01/2010 listed date"

    **TRUTH:** Both business and LLC cannot end on same day

4. **LIE:** "Potential, Future, Thought Processes were not listed as ASSETS in Schedules"

    **TRUTH:** There is no place in all FORTY NINE PAGES OF SCHEDULES to list unsellable, nontangible, possible, future, potential thought processes (Pgs 1-49)

B6 Summary (Official Form 6 - Summary) (12/07)

FILED

July 13, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002775203

# United States Bankruptcy Court
## Eastern District of California

In re:    Salma Haider Agha-Khan

Debtor

Case No.    10-16183

Chapter    7

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 2,618,513.00 | | |
| B - Personal Property | Yes | 4 | 79,285.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 3 | | 4,300,959.49 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 115,802.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 4 | | 183,224.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 15,400.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 34,386.00 |
| Total Number of Sheets of ALL Schedules | | 20 | | | |
| Total Assets | | | 2,697,798.00 | | |
| Total Liabilities | | | | 4,599,985.49 | |

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## Eastern District of California

In re    Salma Haider Agha-Khan

Debtor

Case No.    10-16183

Chapter    7

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, (1 or 13) you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

This information is for statistical purposes only under 28 U.S.C. § 159.

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 115,802.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 115,802.00 |

State the following:

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 15,400.00 |
| Average Expenses (from Schedule J, Line 18) | 34,386.00 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 15,500.00 |

State the following:

| | |
|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | 1,660,461.49 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 115,802.00 |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | |
| 4. Total from Schedule F | 0.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | 183,224.00 |
| | 1,843,685.49 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6A (Official Form 6A) (12/07)

In re    Salma Halder Agha-Khan                                    Case No.    10-16183
                                    Debtor

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Debtor's Residence Location: 11622 Harrington St Bakersfield, CA | Fee Simple | - | 765,937.00 | 933,108.00 |
| Rental Property Location: 2448 Granada Bluff Las Vegas, NV | Fee Simple | - | 272,090.00 | 728,083.00 |
| Investment Property Location: 1967 Cherry Creek Cir Las Vegas, NV | Fee Simple | - | 629,321.00 | 764,869.49 |
| Investment Property Location: 11539 Cantina Terlano Pl Las Vegas, NV | Fee Simple | - | 476,969.00 | 921,186.00 |
| Investment Property Location: 11545 Cantina Terlano Pl Las Vegas, NV | Fee Simple | - | 474,196.00 | 918,629.00 |

| | | |
|---|---|---|
| Sub-Total > | 2,618,513.00 | (Total of this page) |
| Total > | 2,618,513.00 | |

0    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6B (Official Form 6B) (12/07)

In re  Salma Haider Agha-Khan
_____
Debtor

Case No.  10-16183

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Checking Account Location: Bank of America<br><br>Checking Account Location: Union Bank | | 3,000.00<br><br><br>1,000.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | Furnishings, Household Goods, Appliances, Computers, Etc. Location: Debtor's Residence | | 1,000.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | Personal and Family Clothing Location: Debtor's Residence | | 300.00 |
| 7.  Furs and jewelry. | | Personal and Family Jewelry Location: Debtor's Residence | | 2,000.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >       7,300.00
(Total of this page)

__3__ continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re: __Salma Haider Agha-Khan__                              Case No. ___10-16183___
                           Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | 100% in Aris, Inc | | Unknown |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Sub-Total >          0.00
(Total of this page)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                        Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re:    Salma Haider Agha-Khan                                          Case No.    10-16183
                                                                                    Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Potential Claim against Tenet Health Corp<br><br>Potential Lawsuit vs. SS Nite Life located at 13 Norfolk, San Francisco, CA 94103 | - | Unknown<br><br>50,000.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2008 Mercedes E350<br>Mileage: 75,000<br>Location:<br>Debtor's Residence<br>(Vehicle is leased) | | 21,985.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| | | | Sub-Total ><br>(Total of this page) | 71,985.00 |

Sheet  2  of  3   continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                     Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    Salma Haider Agha-Khan                                    Case No.    10-16183
_____
            Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

| | |
|---|---|
| Sub-Total > (Total of this page) | 0.00 |
| Total > | 79,285.00 |

(Report also on Summary of Schedules)

Best Case Bankruptcy

B6C (Official Form 6C) (4/10)

In re: __Salma Haider Agha-Khan_____,          Case No.    10-16183
                              Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under
(Check one box)
☐ 11 U.S.C. § 522(b)(2)
☒ 11 U.S.C. § 522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds
$146,450. *(Amount subject to adjustment on 4/1/13, and every three years thereafter
with respect to cases commenced on or after the date of adjustment.)*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Checking Account<br>Location:<br>Bank of America | C.C.P. § 703.140(b)(5) | 3,000.00 | 3,000.00 |
| Checking Account<br>Location:<br>Union Bank | C.C.P. § 703.140(b)(5) | 1,000.00 | 1,000.00 |
| **Household Goods and Furnishings** | | | |
| Furnishings, Household Goods, Appliances,<br>Computers, Etc.<br>Location:<br>Debtor's Residence | C.C.P. § 703.140(b)(3) | 1,000.00 | 1,000.00 |
| **Wearing Apparel** | | | |
| Personal and Family Clothing<br>Location:<br>Debtor's Residence | C.C.P. § 703.140(b)(3) | 300.00 | 300.00 |
| **Furs and Jewelry** | | | |
| Personal and Family Jewelry<br>Location:<br>Debtor's Residence | C.C.P. § 703.140(b)(4)<br>C.C.P. § 703.140(b)(5) | 1,425.00<br>575.00 | 2,000.00 |
| **Other Contingent and Unliquidated Claims of Every Nature** | | | |
| Potential Lawsuit vs. SS Nite Life located at 13<br>Norfolk, San Francisco, CA 94103 | C.C.P. § 703.140(b)(5) | 18,675.00 | 50,000.00 |
| | Total: | 25,975.00 | 57,300.00 |

___0___ continuation sheets attached to Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re    Salma Halder Agha-Khan                                    Case No.    10-16183
                        Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. 3753 | | | Security Agreement | | | | | |
| American Honda Finance PO Box 1027 Alpharetta, GA 30009 | | | 2009 Honda Accord | | | | | |
| | | | Value $        0.00 | | | | 4,884.00 | 4,884.00 |
| Account No. 0270 | | | 2004 | | | | | |
| Aurora Loan Services 10350 Prk Meadows Dr Littleton, CO 80124 | | | 1st Deed of Trust Investment Property Location: 1987 Cherry Creek Cir Las Vegas, NV | | | | | |
| | | | Value $    629,321.00 | | | | 565,164.00 | 0.00 |
| Account No. 5194 | | | Deed of Trust | | | | | |
| BAC Home Loans Servicing 450 American St Simi Valley, CA 93065 | | | Investment Property Location: 11539 Cantina Terlano Pl Las Vegas, NV | | | | | |
| | | | Value $    476,969.00 | | | | 921,186.00 | 444,217.00 |
| Account No. 5018 | | | 2005 | | | | | |
| BAC Home Loans Servicing PO Box 10287 Van Nuys, CA 91410 | | | Deed of Trust Investment Property Location: 11545 Cantina Terlano Pl Las Vegas, NV | | | | | |
| | | | Value $    474,196.00 | | | | 918,829.00 | 444,633.00 |
| 2   continuation sheets attached | | | Subtotal (Total of this page) | | | | 2,411,063.00 | 893,734.00 |

B6D (Official Form 6D) (12/07) - Cont.

In re   Salma Haider Agha-Khan                                                    Case No.   10-16183
                                          Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. 3774 | | | | | 03/2006 2nd Deed of Trust | | | | | |
| Bank of America 201 N Tryon St Charlotte, NC 28202 | | | | | Rental Property Location: 2448 Granada Bluff Las Vegas, NV | | | | | |
| | | | | | Value $          272,090.00 | | | | 144,304.00 | 144,304.00 |
| Account No. 6772 | | | | | 10/2006 2nd Deed of Trust | | | | | |
| Bank of America PO Box 15027 Wilmington, DE 19850 | | | | | Investment Property Location: 1967 Cherry Creek Cir Las Vegas, NV | | | | | |
| | | | | | Value $          629,321.00 | | | | 198,705.49 | 135,548.49 |
| Account No. 6414 | | | | | 1st Deed of Trust | | | | | |
| Citi Mortgage PO Box 9438 Dept 0251 Gaithersburg, MD 20898 | | | | | Debtor's Residence Location: 11622 Harrington St Bakersfield, CA | | | | | |
| | | | | | Value $          755,937.00 | | | | 589,991.00 | 0.00 |
| Account No. | | | | | 1st Deed of Trust | | | | | |
| GMAC Mortgage Dept 1100 Virginia Dr Fort Washington, PA 19034 | | | | | Rental Property Location: 2448 Granada Bluff Las Vegas, NV | | | | | |
| | | | | | Value $          272,090.00 | | | | 583,779.00 | 311,689.00 |
| Account No. | | | | | Security Agreement | | | | | |
| Mercedes Benz Financial PO Box 9001680 Louisville, KY 40290 | | | | | 2008 Mercedes E350 Mileage: 75,000 Location: Debtor's Residence (Vehicle is leased) | | | | | |
| | | | | | Value $          21,985.00 | | | | 30,000.00 | 8,015.00 |

Sheet _1_ of _2_ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

|  | Subtotal | 1,546,779.49 | 599,556.49 |
|---|---|---|---|
| | (Total of this page) | | |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re  Salma Haider Agha-Khan                                              Case No.  10-16183
                                              Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. 6180 | | | | | 2005 | | | | | |
| Union Bank 8155 Mercury Ct San Diego, CA 92111 | | | | | 2nd Deed of Trust Debtor's Residence Location: 11522 Harrington St Bakersfield, CA | | | | | |
| Account No. | | | | | Value $          765,937.00 | | | | 343,117.00 | 167,171.00 |
| | | | | | | | | | | |
| Account No. | | | | | Value $ | | | | | |
| | | | | | | | | | | |
| Account No. | | | | | Value $ | | | | | |
| | | | | | | | | | | |
| | | | | | Value $ | | | | | |

| | | |
|---|---|---|
| Sheet  2  of  2   continuation sheets attached to Schedule of Creditors Holding Secured Claims | Subtotal (Total of this page) | 343,117.00 |   167,171.00 |
| | Total (Report on Summary of Schedules) | 4,300,959.49 | 1,660,461.49 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                Best Case Bankruptcy

B6E (Official Form 6E) (4/10)

In re: __Salma Haider Agha-Khan__                              Case No. ___10-16183___
_____
Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☒ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____3_____ continuation sheets attached

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6E (Official Form 6E) (4/10) - Cont.

In re    Salima Haider Agha-Khan

        Debtor      Case No.    10-16183

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | HUSBAND, WIFE, JOINT, or COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | | Unknown |
| Franchise Tax Board PO Box 1468 Sacramento, CA 95812 | | | | | | | | | |
| Account No. | | | Unpaid Taxes from 2005-2007 | | | | 0.00 | Unknown | |
| Internal Revenue Service PO Box 21126 Philadelphia, PA 19114 | | | | | | | | 0.00 | |
| Account No. | | | | | | | 115,802.00 | 115,802.00 | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |

Sheet 1 of 1 continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | Subtotal (Total of this page) | 0.00 | |
|---|---|---|---|
| | | 115,802.00 | 115,802.00 |
| | Total (Report on Summary of Schedules) | 0.00 | |
| | | 115,802.00 | 115,802.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re  Salma Haider Agha-Khan _____     Case No. ____10-16183____
                          Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 4143 | | | Misc. Purchases, Cash Advances, Transfers | | | | |
| American Express c/o Becket and Lee PO Box 3001 Malvern, PA 19355 | | | | | | | 6,459.00 |
| Account No. 6142 | | | Misc. Purchases, Cash Advances, Transfers | | | | |
| Citi PO Box 6241 Sioux Falls, SD 57117 | | | | | | | 26,397.00 |
| Account No. 8742 | | | Misc. Purchases, Cash Advances, Transfers | | | | |
| Commercial Trade Bureau PO Box 10389 Bakersfield, CA 93389 | | | | | | | 153.00 |
| Account No. 1267 | | | Collections Account for Cox | | | | |
| Credit Control Corp 11821 Rock Landing Dr Newport News, VA 23606 | | | | | | | 493.00 |

_3_ continuation sheets attached

Subtotal (Total of this page)   33,502.00

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com     S/N:38020-100510   Best Case Bankruptcy

B4F (Official Form 6F) (1/07) - Cont.

In re   Salma Haider Agha-Khan                                    Case No.   10-16183
_____
                        Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| Account No. 1258  Credit Control Corp 11821 Rock Landing Dr Newport News, VA 23606 | | Collections Account for Cox | | | | 378.00 |
| Account No.  Equifax Credit Information, Inc. PO Box 740241 Atlanta, GA 30374 | C | Notice Only | | | | 0.00 |
| Account No.  Experian 701 Experian Wy Allen, TX 75013 | C | Notice Only | | | | 0.00 |
| Account No.  Michael St Denis Professional Corp 25550 Hawthorne Blvd, Ste 118 Torrance, CA 90505 | | Collections Account for Staff Care, Inc | | | | 146,004.00 |
| Account No. 2872  Nationwide Recovery Systems 3000 Kellway Dr Carrollton, TX 75006 | | Collections Account for AT&T | | | | 367.00 |

Sheet no. _1_ of _3_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)   146,749.00

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B4F (Official Form 6F) (12/07) - Cont.

In re    Salma Haider Agha-Khan                                          Case No.    10-16183
                                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Collections Account for Mercy Southwest | | | | |
| Progressive Management System 1521 W Cameron Ave FL 1 West Covina, CA 91790 | | | | | | | 1,425.00 |
| Account No. | | | Collections Account for Waste Management | | | | |
| Receivable Management 240 Emery St Bethlehem, PA 18015 | | | | | | | 105.00 |
| Account No. | | C | Notice Only | | | | |
| Transunion Consumer Solutions PO Box 2000 Chester, PA 19022 | | | | | | | 0.00 |
| Account No. 5736 | | | Misc. Purchases, Cash Advances, Transfers | | | | |
| Union Bank 8155 Mercury Ct San Diego, CA 92111 | | | | | | | 78.00 |
| Account No. 6691 | | | Misc. Purchases, Cash Advances, Transfers | | | | |
| Universal Accounts Inc 690 E Green St, Ste 300 Pasadena, CA 91101 | | | | | | | 1,365.00 |

Sheet no. _2_ of _3_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                2,973.00

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com          Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re Selma Haider Agha-Khan                                    Case No. 10-16183
_____
Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | |
| Account No. | | | | Wembleton Enterprises vs. Aris inc case no 30-2009-00331617 filed in OC Superior Court Unlawful Detainer | | | | |
| Wembleton Enterprises c/o Bauer and Associates PO Box 11748 Newport Beach, CA 92658 | | | | | | | | Unknown |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. _3_ of _3_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | 0.00 |
|---|---|---|
|  | Total (Report on Summary of Schedules) | 183,224.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6G (Official Form 6G) (12/07)

In re    Salma Haider Agha-Khan                                        Case No.    10-16183
_____
                            Debtor

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☒ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| | |

B6H (Official Form 6H) (12/07)

In re    Salma Haider Agha-Khan        Case No.    10-16183

                      Debtor

## SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☒   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

0    continuation sheets attached to Schedule of Codebtors

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com             Best Case Bankruptcy

B6I (Official Form 6I) (12/07)

In re  Salma Haider Agha-Khan _____    Case No. ___10-16183___
                              Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| Married | RELATIONSHIP(S):  Son  Son | AGE(S):  16  18 |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Physician | Unemployed |
| Name of Employer | Self Employed | Unemployed |
| How long employed | 23 Years | |
| Address of Employer | | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | DEBTOR | SPOUSE |
|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ 0.00 | $ 0.00 |
| 2. Estimate monthly overtime | $ 0.00 | $ 0.00 |
| 3. SUBTOTAL | $ 0.00 | $ 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | | |
|     a. Payroll taxes and social security | $ 0.00 | $ 0.00 |
|     b. Insurance | $ 0.00 | $ 0.00 |
|     c. Union dues | $ 0.00 | $ 0.00 |
|     d. Other (Specify): _____ | $ 0.00 | $ 0.00 |
| | $ 0.00 | $ 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ 0.00 | $ 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ 0.00 | $ 0.00 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ 5,000.00 | $ 0.00 |
| 8. Income from real property | $ 10,400.00 | $ 0.00 |
| 9. Interest and dividends | $ 0.00 | $ 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ 0.00 | $ 0.00 |
| 11. Social security or government assistance  (Specify): _____ | $ 0.00 | $ 0.00 |
| | $ 0.00 | $ 0.00 |
| 12. Pension or retirement income | $ 0.00 | $ 0.00 |
| 13. Other monthly income  (Specify): _____ | $ 0.00 | $ 0.00 |
| | $ 0.00 | $ 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ 15,400.00 | $ 0.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ 15,400.00 | $ 0.00 |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | $ 15,400.00 |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

B6J (Official Form 6J) (12/07)

In re: Salma Haider Agha-Khan _____    Case No. _10-16183_
                                    Debtor(s)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | | |
|---|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ | 5,060.00 |
| a. Are real estate taxes included? | Yes ___  No _X_ | | |
| b. Is property insurance included? | Yes ___  No _X_ | | |
| 2. Utilities:  a. Electricity and heating fuel | | $ | 600.00 |
| b. Water and sewer | | $ | 120.00 |
| c. Telephone | | $ | 0.00 |
| d. Other  See Detailed Expense Attachment | | $ | 400.00 |
| 3. Home maintenance (repairs and upkeep) | | $ | 300.00 |
| 4. Food | | $ | 800.00 |
| 5. Clothing | | $ | 50.00 |
| 6. Laundry and dry cleaning | | $ | 75.00 |
| 7. Medical and dental expenses | | $ | 0.00 |
| 8. Transportation (not including car payments) | | $ | 500.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ | 0.00 |
| 10. Charitable contributions | | $ | 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | | |
| a. Homeowner's or renter's | | $ | 125.00 |
| b. Life | | $ | 0.00 |
| c. Health | | $ | 0.00 |
| d. Auto | | $ | 150.00 |
| e. Other | | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | $ | 1,200.00 |
| (Specify)  See Detailed Expense Attachment | | | |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | | |
| a. Auto | | $ | 810.00 |
| b. Other  See Detailed Expense Attachment | | $ | 20,863.00 |
| 14. Alimony, maintenance, and support paid to others | | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ | 0.00 |
| 17. Other  Son's Boarding School | | $ | 3,333.00 |
| Other | | $ | 0.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | $ | 34,386.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---|
| a. Average monthly income from Line 15 of Schedule I | $ | 15,400.00 |
| b. Average monthly expenses from Line 18 above | $ | 34,386.00 |
| c. Monthly net income (a. minus b.) | $ | -18,986.00 |

B6J (Official Form 6J) (12/07)

In re   Salma Haider Agha-Khan                                    Case No.   10-16183
_____
Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

**Other Utility Expenditures:**

| | | |
|---|---|---|
| Cell Phone | $ | 200.00 |
| Cable | $ | 200.00 |
| Total Other Utility Expenditures | $ | 400.00 |

**Specific Tax Expenditures:**

| | | |
|---|---|---|
| Property Taxes | $ | 900.00 |
| HOA | $ | 175.00 |
| Harrington Property HOA | $ | 125.00 |
| Total Tax Expenditures | $ | 1,200.00 |

**Other Installment Payments:**

| | | |
|---|---|---|
| 2nd Mortgage on Harrington Property | $ | 2,300.00 |
| Gmac Mortgage Payment (2448 Granada Bluff) | $ | 3,920.00 |
| Bank of America Mortgage Payment (2448 Granada Bluff) | $ | 727.00 |
| Aurora Mortgage Payment (1967 Cherry Creek Cir) | $ | 3,814.00 |
| Bank of America Mortgage Payment (1967 Cherry Creek Cir) | $ | 932.00 |
| Bank of America Mortgage Payment (11539 Caritina Teriano Pl) | $ | 4,585.00 |
| Bank of America Mortgage Payment (11545 Caritina Teriano Pl) | $ | 4,585.00 |
| Total Other Installment Payments | $ | 20,863.00 |

B6 Declaration (Official Form 6 - Declaration) (12/07)

# United States Bankruptcy Court
## Eastern District of California

In re   Salma Haider Agha-Khan    Case No.    10-16183

Debtor(s)    Chapter    7

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___22___ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date   July 13, 2010                    Signature   /s/ Salma Haider Agha-Khan

Salma Haider Agha-Khan

Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
## Eastern District of California

In re: ___Salma Haider Agha-Khan_____      Case No. ___10-16183_____

                                             Debtor(s)                                Chapter ___7___

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $25,000.00 | 2010 YTD Income from Operation of Business |

---

**2. Income other than from employment or operation of business**

None ☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $72,800.00 | 2010 YTD Income from Rental Properties |
| $115,377.29 | 2009 Income from Rental Properties |

|  |  |
|---|---|
| AMOUNT | SOURCE |
| $166,326.53 | 2008 Income from Rental Properties |

---

**3. Payments to creditors**

None ☒   *Complete a. or b., as appropriate, and c.*

    a.   *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ☒   b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None ☒   c.   *All debtors:* List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐   a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Staff Care, Inc vs. Salma Haider Khan, MD Case No 30-2010-00382980 | Breach of Contract | Superior Court of CA, County of Orange | Filed |

None ☒   b. Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

3

**5. Repossessions, foreclosures and returns**

None ☒

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ☒

a. Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ☒

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ☒

List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ☒

List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Cumming & Associates, APC 575 Anton Boulevard, Suite 300 Costa Mesa, CA 92626 | 01/14/2010 | $3000 |

4

**10. Other transfers**

None ☒    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ☒    b. List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ☒    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None ☒    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ☒    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ☐    List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|
| Mohsin Ashfaque<br>Unknown | 2009 Honda Accord<br>Debtor financed vehicle for Mohsin who makes all monthly payments and maintains vehicle. | Mohsin Ashfaque's Possession |

5

**15. Prior address of debtor**

None ☒    If the debtor has moved within three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---------|-----------|--------------------|

**16. Spouses and Former Spouses**

None ☒    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ☒    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|-----------------------|---------------------------------------|----------------|-------------------|

None ☒    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|-----------------------|---------------------------------------|----------------|-------------------|

None ☒    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---------------------------------------|---------------|------------------------|

18. Nature, location and name of business

None
☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within six years immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Aris Inc | 26-2649261 | 4950 Barranca Pkwy, Ste 201 Irvine, CA 92604 | Medical Practice | 2008 - Present |
| Vodka from Around the World | 27-0765658 | 4950 Barranca Pkwy, Ste 201 Irvine, CA 92604 | Night Club | 08/2009 - 01/2010 |

None
☒

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                    ADDRESS

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

19. Books, records and financial statements

None
☒

a. List all bookkeepers and accountants who within two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                    DATES SERVICES RENDERED

None
☒

b. List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                ADDRESS                    DATES SERVICES RENDERED

None
☒

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                    ADDRESS

None
☒

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within two years immediately preceding the commencement of this case.

| NAME AND ADDRESS | | DATE ISSUED |
|---|---|---|

**20. Inventories**

None ☒   a. List the dates of the last two inventories taken of your property; the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

None ☒   b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

**21. Current Partners, Officers, Directors and Shareholders**

None ☒   a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

None ☒   b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

**22 . Former partners, officers, directors and shareholders**

None ☒   a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None ☒   b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23 . Withdrawals from a partnership or distributions by a corporation**

None ☒   If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group .**

None ☒   If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within six years immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

**25. Pension Funds.**

None ☒ If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within six years immediately preceding the commencement of the case.

NAME OF PENSION FUND                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

**DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR**

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date   July 13, 2010                           Signature   /s/ Salma Haider Agha-Khan
                                                            Salma Haider Agha-Khan
                                                            Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

B8 (Form 8) (12/08)

# United States Bankruptcy Court
## Eastern District of California

In re  Salma Haider Agha-Khan
                                              Debtor(s)

Case No.  10-16183
Chapter  7

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A - Debts secured by property of the estate.** (Part A must be fully completed for EACH debt which is secured by property of the estate. Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>American Honda Finance | **Describe Property Securing Debt:**<br>2009 Honda Accord |

Property will be (check one):
- ☐ Surrendered
- ☒ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ☒ Reaffirm the debt
- ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ☒ Claimed as Exempt
- ☐ Not claimed as exempt

| Property No. 2 | |
|---|---|
| **Creditor's Name:**<br>Aurora Loan Services | **Describe Property Securing Debt:**<br>Investment Property<br>Location:<br>1967 Cherry Creek Cir<br>Las Vegas, NV |

Property will be (check one):
- ☐ Surrendered
- ☒ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ☐ Reaffirm the debt
- ☒ Other. Explain  Debtor will retain collateral and continue to make regular payments.  (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ☒ Claimed as Exempt
- ☐ Not claimed as exempt

B8 (Form 8) (12/08)

Page 2

**Property No. 3**

| Creditor's Name: | Describe Property Securing Debt: |
|---|---|
| BAC Home Loans Servicing | Investment Property |
| | Location: |
| | 11539 Cantina Teriano Pl |
| | Las Vegas, NV |

Property will be (check one):

☐ Surrendered            ■ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
■ Other. Explain   Debtor will retain collateral and continue to make regular payments.   (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
■ Claimed as Exempt                    ☐ Not claimed as exempt

**Property No. 4**

| Creditor's Name: | Describe Property Securing Debt: |
|---|---|
| BAC Home Loans Servicing | Investment Property |
| | Location: |
| | 11545 Cantina Teriano Pl |
| | Las Vegas, NV |

Property will be (check one):

☐ Surrendered            ■ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
■ Other. Explain   Debtor will retain collateral and continue to make regular payments.   (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
☐ Claimed as Exempt                    ☐ Not claimed as exempt

B8 (Form 8) (12/08)                                                                                                          Page 3

**Property No. 5**

| | |
|---|---|
| *Creditor's Name:*<br>Bank of America | Describe Property Securing Debt:<br>Rental Property<br>Location:<br>2448 Granada Bluff<br>Las Vegas, NV |

Property will be (check one):

☐ Surrendered                    ☒ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☒ Other. Explain   Debtor will retain collateral and continue to make regular payments.   (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
☒ Claimed as Exempt                    ☐ Not claimed as exempt

**Property No. 6**

| | |
|---|---|
| *Creditor's Name:*<br>Bank of America | Describe Property Securing Debt:<br>Investment Property<br>Location:<br>1967 Cherry Creek Cir<br>Las Vegas, NV |

Property will be (check one):

☐ Surrendered                    ☒ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☒ Other. Explain   Debtor will retain collateral and continue to make regular payments.   (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
☒ Claimed as Exempt                    ☐ Not claimed as exempt

B6 (Form 6) (12/08)

**Property No. 7**

Page 4

Creditor's Name:
Citi Mortgage

Describe Property Securing Debt:
Debtor's Residence
Location:
11622 Harrington St
Bakersfield, CA

Property will be (check one):
☐ Surrendered                    ☒ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☒ Other.  Explain  Debtor will retain collateral and continue to make regular payments.  (for example, avoid lien using 11
U.S.C. § 522(f)).

Property is (check one):
☒ Claimed as Exempt                    ☐ Not claimed as exempt

**Property No. 8**

Creditor's Name:
GMAC Mortgage

Describe Property Securing Debt:
Rental Property
Location:
2448 Granada Bluff
Las Vegas, NV

Property will be (check one):
☐ Surrendered                    ☒ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☒ Other.  Explain  Debtor will retain collateral and continue to make regular payments.  (for example, avoid lien using 11
U.S.C. § 522(f)).

Property is (check one):
☒ Claimed as Exempt                    ☐ Not claimed as exempt

B6 (Form 8) (1208)

Page 5

| Property No. 9 | |
|---|---|
| **Creditor's Name:**<br>Mercedes Benz Financial | **Describe Property Securing Debt:**<br>2008 Mercedes E350<br>Mileage: 75,000<br>Location:<br>Debtor's Residence<br>(Vehicle is leased) |

Property will be (check one):
- ☐ Surrendered                    ■ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ■ Reaffirm the debt
- ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ■ Claimed as Exempt                    ☐ Not claimed as exempt

| Property No. 10 | |
|---|---|
| **Creditor's Name:**<br>Union Bank | **Describe Property Securing Debt:**<br>Debtor's Residence<br>Location:<br>11622 Harrington St<br>Bakersfield, CA |

Property will be (check one):
- ☐ Surrendered                    ■ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ☐ Reaffirm the debt
- ■ Other. Explain  Debtor will retain collateral and continue to make regular payments.  (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ■ Claimed as Exempt                    ☐ Not claimed as exempt

**PART B - Personal property subject to unexpired leases.** (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>-NONE- | **Describe Leased Property:** | **Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):**<br>☐ YES          ☐ NO |

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

B8 (Form 8) (12/08)

Page 6

I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.

Date: July 13, 2010

Signature   /s/ Salma Haider Agha-Khan
            Salma Haider Agha-Khan
            Debtor

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

## United States Bankruptcy Court
### Eastern District of California

In re   Saima Haider Agha-Khan

Debtor(s)

Case No.   10-16183

Chapter   7

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 3,000.00 |
| Prior to the filing of this statement I have received | $ | 3,000.00 |
| Balance Due | $ | 0.00 |

2. The source of the compensation paid to me was:

   ☒ Debtor   ☐ Other (specify):

3. The source of compensation to be paid to me is:

   ☒ Debtor   ☐ Other (specify):

4. ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]
      Review and analyze finances, receive creditor calls after retention and prior to discharge, draft all court documents necessary to initiate a complete case, review documents with client and file same with the court, file personal financial management certificate post petition, advice regarding reaffirmation agreement.

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   Representation of the debtors in any dischargeability actions, judicial lien avoidances, post petition amendments, continued 341(a) Meetings, relief from stay actions or any other adversary proceeding.

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:   July 13, 2010

/s/ William R. Cumming
William R. Cumming 200966
Cumming & Associates, APC
575 Anton Boulevard, Suite 300
Costa Mesa, CA 92626
714-432-644   Fax: 714-432-6533
cumming@cummingandassociateslaw.com

B 201A (Form 201A) (12/09)

WARNING: Effective December 1, 2009, the 15-day deadline to file schedules and certain other documents under Bankruptcy Rule 1007(c) is shortened to 14 days. For further information, see note at bottom of page 2.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

## NOTICE TO CONSUMER DEBTOR(S) UNDER § 342(b)
## OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a joint case (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

## 1. Services Available from Credit Counseling Agencies

With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis. The briefing must be given within 180 days before the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge. The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)
Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, the United States trustee (or bankruptcy administrator), the trustee, or creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

Form B 201A, Notice to Consumer Debtor(s)                                                                                    Page 2

Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

WARNING: Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court. The documents and the deadlines for filing them are listed on Form B200, which is posted at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

Many filing deadlines change on December 1, 2009. Of special note, 12 rules that set 15 days to act are amended to require action within 14 days, including Rule 1007(c), filing the initial case papers; Rule 3015(b), filing a chapter 13 plan; Rule 8009(a), filing appellate briefs; and Rules 1019, 1020, 2015, 2015.1, 2016, 4001, 4002, 6004, and 6007.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

B 201B (Form 201B) (12/09)

## United States Bankruptcy Court
### Eastern District of California

In re: Salma Haider Agha-Khan

Debtor(s)

Case No. 10-16183

Chapter 7

## CERTIFICATION OF NOTICE TO CONSUMER DEBTOR(S) UNDER § 342(b) OF THE BANKRUPTCY CODE

### Certification of Debtor

I (We), the debtor(s), affirm that I (we) have received and read the attached notice, as required by § 342(b) of the Bankruptcy Code.

Salma Haider Agha-Khan
Printed Name(s) of Debtor(s)

Case No. (if known) 10-16183

X /s/ Salma Haider Agha-Khan        July 13, 2010
Signature of Debtor                 Date

X
Signature of Joint Debtor (if any)        Date

Instructions: Attach a copy of Form B 201A, Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code.

Use this form to certify that the debtor has received the notice required by 11 U.S.C. § 342(b) only if the certification has NOT been made on the Voluntary Petition, Official Form B1. Exhibit B on page 2 of Form B1 contains a certification by the debtor's attorney that the attorney has given the notice to the debtor. The Declarations made by debtors and bankruptcy petition preparers on page 3 of Form B1 also include this certification.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

B22A (Official Form 22A) (Chapter 7) (04/10)

In re: __Saima Haider Agha-Khan__
　　　　　　　　Debtor(s)

Case Number: __10-16183__
　　　　　　　　(If known)

<table>
<tr><td colspan="2">According to the information required to be entered on this statement<br>(check one box as directed in Part I, III, or VI of this statement):</td></tr>
<tr><td>☐</td><td>The presumption arises.</td></tr>
<tr><td>☒</td><td>The presumption does not arise.</td></tr>
<tr><td>☐</td><td>The presumption is temporarily inapplicable.</td></tr>
</table>

## CHAPTER 7 STATEMENT OF CURRENT MONTHLY INCOME AND MEANS-TEST CALCULATION

In addition to Schedules I and J, this statement must be completed by every individual chapter 7 debtor, whether or not filing jointly. Unless the exclusion in Line 1C applies, joint debtors may complete a single statement. If the exclusion in Line 1C applies, each joint filer must complete a separate statement.

| | Part I. MILITARY AND NON-CONSUMER DEBTORS | |
|---|---|---|
| 1A | **Disabled Veterans.** If you are a disabled veteran described in the Declaration in this Part 1A, (1) check the box at the beginning of the Declaration, (2) check the box for "The presumption does not arise" at the top of this statement, and (3) complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of Disabled Veteran.** By checking this box, I declare under penalty of perjury that I am a disabled veteran (as defined in 38 U.S.C. § 3741(1)) whose indebtedness occurred primarily during a period in which I was on active duty (as defined in 10 U.S.C. § 101(d)(1)) or while I was performing a homeland defense activity (as defined in 32 U.S.C. §901(1)). | |
| 1B | **Non-consumer Debtors.** If your debts are not primarily consumer debts, check the box below and complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of non-consumer debts.** By checking this box, I declare that my debts are not primarily consumer debts. | |
| 1C | **Reservists and National Guard Members; active duty or homeland defense activity.** Members of a reserve component of the Armed Forces and members of the National Guard who were called to active duty (as defined in 10 U.S.C. § 101(d)(1)) after September 11, 2001, for a period of at least 90 days, or who have performed homeland defense activity (as defined in 32 U.S.C. § 901(1)) for a period of at least 90 days, are excluded from all forms of means testing during the time of active duty or homeland defense activity and for 540 days thereafter (the "exclusion period"). If you qualify for this temporary exclusion, (1) check the appropriate boxes and complete any required information in the Declaration of Reservists and National Guard Members below; (2) check the box for "The presumption is temporarily inapplicable" at the top of this statement, and (3) complete the verification in Part VIII. During your exclusion period you are not required to complete the balance of this form, but you must complete the form no later than 14 days after the date on which your exclusion period ends, unless the time for filing a motion raising the means test presumption expires in your case before your exclusion period ends.<br><br>☐ **Declaration of Reservists and National Guard Members.** By checking this box and making the appropriate entries below, I declare that I am eligible for a temporary exclusion from means testing because, as a member of a reserve component of the Armed Forces or the National Guard.<br><br>　　　a. ☐ I was called to active duty after September 11, 2001, for a period of at least 90 days and<br>　　　　　☐ I remain on active duty /or/<br>　　　　　☐ I was released from active duty on _____, which is less than 540 days before this bankruptcy case was filed;<br><br>　　　　　OR<br><br>　　　b. ☐ I am performing homeland defense activity for a period of at least 90 days /or/<br>　　　　　☐ I performed homeland defense activity for a period of at least 90 days, terminating on _____, which is less than 540 days before this bankruptcy case was filed. | |

B22A (Official Form 22A) (Chapter 7) (04/10)                                                                  2

| | Part II. CALCULATION OF MONTHLY INCOME FOR § 707(b)(7) EXCLUSION | | |
|---|---|---|---|
| 2 | Marital/filing status. Check the box that applies and complete the balance of this part of this statement as directed.<br>a. ☐ Unmarried. Complete only Column A ("Debtor's Income") for Lines 3-11.<br>b. ☐ Married, not filing jointly, with declaration of separate households. By checking this box, debtor declares under penalty of perjury: "My spouse and I are legally separated under applicable non-bankruptcy law or my spouse and I are living apart other than for the purpose of evading the requirements of § 707(b)(2)(A) of the Bankruptcy Code." Complete only column A ("Debtor's Income") for Lines 3-11.<br>c. ☒ Married, not filing jointly, without the declaration of separate households set out in Line 2.b above. Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.<br>d. ☐ Married, filing jointly. Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11. | | |
| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | Column A<br>Debtor's<br>Income | Column B<br>Spouse's<br>Income |
| 3 | Gross wages, salary, tips, bonuses, overtime, commissions. | $          0.00 | $          0.00 |
| 4 | Income from the operation of a business, profession or farm. Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. If you operate more than one business, profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. Do not include any part of the business expenses entered on Line b as a deduction in Part V.<br><br>a. Gross receipts $ 5,000.00 / $ 0.00<br>b. Ordinary and necessary business expenses $ 0.00 / $ 0.00<br>c. Business income  Subtract Line b from Line a | $      5,000.00 | $          0.00 |
| 5 | Rents and other real property income. Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 5. Do not enter a number less than zero. Do not include any part of the operating expenses entered on Line b as a deduction in Part V.<br><br>a. Gross receipts $ 10,500.00 / $ 0.00<br>b. Ordinary and necessary operating expenses $ 0.00 / $ 0.00<br>c. Rent and other real property income  Subtract Line b from Line a | $     10,500.00 | $          0.00 |
| 6 | Interest, dividends, and royalties. | $          0.00 | $          0.00 |
| 7 | Pension and retirement income. | $          0.00 | $          0.00 |
| 8 | Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose. Do not include alimony or separate maintenance payments or amounts paid by your spouse if Column B is completed. | $          0.00 | $          0.00 |
| 9 | Unemployment compensation. Enter the amount in the appropriate column(s) of Line 9. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below:<br><br>Unemployment compensation claimed to be a benefit under the Social Security Act  Debtor $ 0.00  Spouse $ 0.00 | $          0.00 | $          0.00 |
| 10 | Income from all other sources. Specify source and amount. If necessary, list additional sources on a separate page. Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism.<br><br>a. $ / $<br>b. $ / $<br>Total and enter on Line 10. | $          0.00 | $          0.00 |
| 11 | Subtotal of Current Monthly Income for § 707(b)(7). Add Lines 3 thru 10 in Column A, and, if Column B is completed, add Lines 3 through 10 in Column B. Enter the total(s). | $     15,500.00 | $          0.00 |

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com                                    Best Case Bankruptcy

B22A (Official Form 22A) (Chapter 7) (04/10)                                                                3

| 12 | Total Current Monthly Income for § 707(b)(7). If Column B has been completed, add Line 11, Column A to Line 11, Column B, and enter the total. If Column B has not been completed, enter the amount from Line 11, Column A. | $ | 15,500.00 |

### Part III. APPLICATION OF § 707(b)(7) EXCLUSION

| 13 | Annualized Current Monthly Income for § 707(b)(7). Multiply the amount from Line 12 by the number 12 and enter the result. | $ | 186,000.00 |
| 14 | Applicable median family income. Enter the median family income for the applicable state and household size. (This information is available by family size at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | $ | 79,194.00 |
|    | a. Enter debtor's state of residence.  CA        b. Enter debtor's household size:  4 | | |
| 15 | Application of Section 707(b)(7). Check the applicable box and proceed as directed.<br>☐ The amount on Line 13 is less than or equal to the amount on Line 14. Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete Part VIII; do not complete Parts IV, V, VI or VII.<br>☒ The amount on Line 13 is more than the amount on Line 14. Complete the remaining parts of this statement. | | |

Complete Parts IV, V, VI, and VII of this statement only if required. (See Line 15.)

### Part IV. CALCULATION OF CURRENT MONTHLY INCOME FOR § 707(b)(2)

| 16 | Enter the amount from Line 12. | | | $ | 15,500.00 |
| 17 | Marital adjustment. If you checked the box at Line 2.c, enter on Line 17 the total of any income listed in Line 11, Column B that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents. Specify in the lines below the basis for excluding the Column B income (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page. If you did not check box at Line 2.c, enter zero. | | | | |
|    | a. | $ | | | |
|    | b. | $ | | | |
|    | c. | $ | | | |
|    | d. | $ | | | |
|    | Total and enter on Line 17 | | | $ | 0.00 |
| 18 | Current monthly income for § 707(b)(2). Subtract Line 17 from Line 16 and enter the result. | | | $ | 15,500.00 |

### Part V. CALCULATION OF DEDUCTIONS FROM INCOME

**Subpart A: Deductions under Standards of the Internal Revenue Service (IRS)**

| 19A | National Standards: food, clothing and other items. Enter in Line 19A the "Total" amount from IRS National Standards for Food, Clothing and Other Items for the applicable household size. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | | | $ | 1,371.00 |
| 19B | National Standards: health care. Enter in Line a1 below the amount from IRS National Standards for Out-of-Pocket Health Care for persons under 65 years of age, and in Line a2 the IRS National Standards for Out-of-Pocket Health Care for persons 65 years of age or older. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) Enter in Line b1 the number of members of your household who are under 65 years of age, and enter in Line b2 the number of members of your household who are 65 years of age or older. (The total number of household members must be the same as the number stated in Line 14b.) Multiply Line a1 by Line b1 to obtain a total amount for household members under 65, and enter the result in Line c1. Multiply Line a2 by Line b2 to obtain a total amount for household members 65 and older, and enter the result in Line c2. Add Lines c1 and c2 to obtain a total health care amount, and enter the result in Line 19B. | | | $ | 240.00 |

|     | Household members under 65 years of age | | Household members 65 years of age or older | |
| a1. | Allowance per member | 60 | a2. Allowance per member | 144 |
| b1. | Number of members | 4 | b2. Number of members | 0 |
| c1. | Subtotal | 240.00 | c2. Subtotal | 0.00 |

| 20A | Local Standards: housing and utilities; non-mortgage expenses. Enter the amount of the IRS Housing and Utilities Standards; non-mortgage expenses for the applicable county and household size. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | | | $ | 496.00 |

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B22A (Official Form 22A) (Chapter 7) (04/10)                                                                                          5

| | | | | |
|---|---|---|---|---|
| 27 | Other Necessary Expenses: life insurance. Enter total average monthly premiums that you actually pay for term life insurance for yourself. Do not include premiums for insurance on your dependents, for whole life or for any other form of insurance. | | $ | 0.00 |
| 28 | Other Necessary Expenses: court-ordered payments. Enter the total monthly amount that you are required to pay pursuant to the order of a court or administrative agency, such as spousal or child support payments. Do not include payments on past due obligations included in Line 44. | | $ | 0.00 |
| 29 | Other Necessary Expenses: education for employment or for a physically or mentally challenged child. Enter the total average monthly amount that you actually expend for education that is a condition of employment and for education that is required for a physically or mentally challenged dependent child for whom no public education providing similar services is available. | | $ | 0.00 |
| 30 | Other Necessary Expenses: childcare. Enter the total average monthly amount that you actually expend on childcare - such as baby-sitting, day care, nursery and preschool. Do not include other educational payments. | | $ | 0.00 |
| 31 | Other Necessary Expenses: health care. Enter the total average monthly amount that you actually expend on health care that is required for the health and welfare of yourself or your dependents, that is not reimbursed by insurance or paid by a health savings account, and that is in excess of the amount entered in Line 19B. Do not include payments for health insurance or health savings accounts listed in Line 34. | | $ | 0.00 |
| 32 | Other Necessary Expenses: telecommunication services. Enter the total average monthly amount that you actually pay for telecommunication services other than your basic home telephone and cell phone service - such as pagers, call waiting, caller id, special long distance, or internet service - to the extent necessary for your health and welfare or that of your dependents. Do not include any amount previously deducted. | | $ | 0.00 |
| 33 | Total Expenses Allowed under IRS Standards. Enter the total of Lines 19 through 32. | | $ | 2,343.00 |

**Subpart B: Additional Living Expense Deductions**
Note: Do not include any expenses that you have listed in Lines 19-32

| | | | | | |
|---|---|---|---|---|---|
| 34 | Health Insurance, Disability Insurance, and Health Savings Account Expenses. List the monthly expenses in the categories set out in lines a-c below that are reasonably necessary for yourself, your spouse, or your dependents. | | | | |
| | a. | Health Insurance | $ | 0.00 | |
| | b. | Disability Insurance | $ | 0.00 | |
| | c. | Health Savings Account | $ | 0.00 | $ | 0.00 |
| | Total and enter on Line 34. | | | | |
| | If you do not actually expend this total amount, state your actual total average monthly expenditures in the space below: $ | | | | |
| 35 | Continued contributions to the care of household or family members. Enter the total average actual monthly expenses that you will continue to pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of your household or member of your immediate family who is unable to pay for such expenses. | | | $ | 0.00 |
| 36 | Protection against family violence. Enter the total average reasonably necessary monthly expenses that you actually incurred to maintain the safety of your family under the Family Violence Prevention and Services Act or other applicable federal law. The nature of these expenses is required to be kept confidential by the court. | | | $ | 0.00 |
| 37 | Home energy costs. Enter the total average monthly amount, in excess of the allowance specified by IRS Local Standards for Housing and Utilities, that you actually expend for home energy costs. You must provide your case trustee with documentation of your actual expenses, and you must demonstrate that the additional amount claimed is reasonable and necessary. | | | $ | 0.00 |
| 38 | Education expenses for dependent children less than 18. Enter the total average monthly expenses that you actually incur, not to exceed $147.92* per child, for attendance at a private or public elementary or secondary school by your dependent children less than 18 years of age. You must provide your case trustee with documentation of your actual expenses, and you must explain why the amount claimed is reasonable and necessary and not already accounted for in the IRS Standards. | | | $ | 0.00 |

\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com                                                Best Case Bankruptcy

B22A (Official Form 22A) (Chapter 7) (04/10)

6

| | | | | | |
|---|---|---|---|---|---|
| 39 | Additional food and clothing expense. Enter the total average monthly amount by which your food and clothing expenses exceed the combined allowances for food and clothing (apparel and services) in the IRS National Standards, not to exceed 5% of those combined allowances. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) You must demonstrate that the additional amount claimed is reasonable and necessary. | | | $ | 0.00 |
| 40 | Continued charitable contributions. Enter the amount that you will continue to contribute in the form of cash or financial instruments to a charitable organization as defined in 26 U.S.C. § 170(c)(1)-(2). | | | $ | 0.00 |
| 41 | Total Additional Expense Deductions under § 707(b). Enter the total of Lines 34 through 40. | | | $ | 0.00 |

**Subpart C: Deductions for Debt Payment**

| 42 | Future payments on secured claims. For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, and state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. If necessary, list additional entries on a separate page. Enter the total of the Average Monthly Payments on Line 42. | | | | |
|---|---|---|---|---|---|

| | Name of Creditor | Property Securing the Debt | | Average Monthly Payment | Does payment include taxes or insurance? |
|---|---|---|---|---|---|
| a. | Aurora Loan Services | Investment Property Location: 1967 Cherry Creek Cir Las Vegas, NV | $ | 3,814.27 | ☑yes ☐no |
| b. | BAC Home Loans Servicing | Investment Property Location: 11539 Cantina Terlano Pl Las Vegas, NV | $ | 4,585.00 | ☑yes ☐no |
| c. | BAC Home Loans Servicing | Investment Property Location: 11545 Cantina Terlano Pl Las Vegas, NV | $ | 4,585.00 | ☑yes ☐no |
| d. | Bank of America | Rental Property Location: 2448 Granada Bluff Las Vegas, NV | $ | 727.00 | ☐yes ☑no |
| e. | Bank of America | Investment Property Location: 1967 Cherry Creek Cir Las Vegas, NV | $ | 932.00 | ☑yes ☐no |
| f. | Citi Mortgage | Debtor's Residence Location: 11622 Harrington St Bakersfield, CA | $ | 5,060.00 | ☐yes ☑no |
| g. | GMAC Mortgage | Rental Property Location: 2448 Granada Bluff Las Vegas, NV | $ | 2,938.00 | ☑yes ☐no |
| h. | Mercedes Benz Financial | 2008 Mercedes E350 Mileage: 75,000 Location: Debtor's Residence (Vehicle is leased) | $ | 810.00 | ☐yes ☑no |
| i. | Union Bank | Debtor's Residence Location: 11622 Harrington St Bakersfield, CA | $ | 2,300.00 | ☐yes ☑no |
| | | Total: Add Lines | $ | 25,751.27 | |

B22A (Official Form 22A) (Chapter 7) (04/10)

7

| | | | |
|---|---|---|---|
| 43 | Other payments on secured claims. If any of debt listed in Line 42 are secured by your primary residence, a motor vehicle, or other property necessary for your support or the support of your dependents, you may include in your deduction 1/60th of any amount (the "cure amount") that you must pay the creditor in addition to the payments listed in Line 42, in order to maintain possession of the property. The cure amount would include any sums in default that must be paid in order to avoid repossession or foreclosure. List and total any such amounts in the following chart. If necessary, list additional entries on a separate page. | | |

| | Name of Creditor | Property Securing the Debt | 1/60th of the Cure Amount |
|---|---|---|---|
| a. | Aurora Loan Services | Investment Property Location: 1967 Cherry Creek Cir Las Vegas, NV | $ 503.77 |
| b. | BAC Home Loans Servicing | Investment Property Location: 11539 Cantina Terlano Pl Las Vegas, NV | $ 714.98 |
| c. | BAC Home Loans Servicing | Investment Property Location: 11545 Cantina Terlano Pl Las Vegas, NV | $ 718.90 |
| d. | Bank of America | Rental Property Location: 2448 Granada Bluff Las Vegas, NV | $ 81.73 |
| e. | Bank of America | Investment Property Location: 1967 Cherry Creek Cir Las Vegas, NV | $ 106.08 |
| f. | Citi Mortgage | Debtor's Residence Location: 11622 Harrington St Bakersfield, CA | $ 506.00 |
| g. | GMAC Mortgage | Rental Property Location: 2448 Granada Bluff Las Vegas, NV | $ 416.70 |
| h. | Union Bank | Debtor's Residence Location: 11622 Harrington St Bakersfield, CA | 272.87 |
| | | Total: Add Lines | $ 3,321.03 |

| | | | |
|---|---|---|---|
| 44 | Payments on prepetition priority claims. Enter the total amount, divided by 60, of all priority claims, such as priority tax, child support and alimony claims, for which you were liable at the time of your bankruptcy filing. Do not include current obligations, such as those set out in Line 28. | | $ 1,930.03 |

| | | | | |
|---|---|---|---|---|
| 45 | Chapter 13 administrative expenses. If you are eligible to file a case under Chapter 13, complete the following chart, multiply the amount in line a by the amount in line b, and enter the resulting administrative expense. | | | |
| | a. | Projected average monthly Chapter 13 plan payment. | $ | |
| | b. | Current multiplier for your district as determined under schedules issued by the Executive Office for United States Trustees. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | 0.00 | |
| | c. | Average monthly administrative expense of Chapter 13 case | x 9.60 | |
| | | | Total: Multiply Lines a and b | $ 0.00 |

| | | |
|---|---|---|
| 46 | Total Deductions for Debt Payment. Enter the total of Lines 42 through 45. | $ 31,002.33 |

### Subpart D: Total Deductions from Income

| | | |
|---|---|---|
| 47 | Total of all deductions allowed under § 707(b)(2). Enter the total of Lines 33, 41, and 46. | $ 33,345.33 |

### Part VI. DETERMINATION OF § 707(b)(2) PRESUMPTION

| | | |
|---|---|---|
| 48 | Enter the amount from Line 18 (Current monthly income for § 707(b)(2)) | $ 15,500.00 |
| 49 | Enter the amount from Line 47 (Total of all deductions allowed under § 707(b)(2)) | $ 33,345.33 |

B22A (Official Form 22A) (Chapter 7) (04/10)

8

| 50 | Monthly disposable income under § 707(b)(2). Subtract Line 49 from Line 48 and enter the result. | | |
|----|----|----|----|
| 51 | 60-month disposable income under § 707(b)(2). Multiply the amount in Line 50 by the number 60 and enter the result. | $ | -17,845.33 |
| 52 | Initial presumption determination. Check the applicable box and proceed as directed. | $ | -1,070,719.80 |

52 ☒ The amount on Line 51 is less than $7,025*. Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII. Do not complete the remainder of Part VI.

☐ The amount set forth on Line 51 is more than $11,725* Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. Do not complete the remainder of Part VI.

☐ The amount on Line 51 is at least $7,025*, but not more than $11,725*. Complete the remainder of Part VI (Lines 53 through 55).

| 53 | Enter the amount of your total non-priority unsecured debt | | |
|----|----|----|----|
| 54 | Threshold debt payment amount. Multiply the amount in Line 53 by the number 0.25 and enter the result. | $ | |

55 Secondary presumption determination. Check the applicable box and proceed as directed.

☐ The amount on Line 51 is less than the amount on Line 54. Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII.

☐ The amount on Line 51 is equal to or greater than the amount on Line 54. Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII.

### Part VII. ADDITIONAL EXPENSE CLAIMS

56 Other Expenses. List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses.

| | Expense Description | Monthly Amount |
|----|----|----|
| a. | | $ |
| b. | | $ |
| c. | | $ |
| d. | | $ |
| | Total: Add Lines a, b, c, and d | $ |

### Part VIII. VERIFICATION

57 I declare under penalty of perjury that the information provided in this statement is true and correct. (If this is a joint case, both debtors must sign.)

Date:    July 13, 2010                    Signature: /s/ Salma Haider Agha-Khan

                                                Salma Haider Agha-Khan
                                                        (Debtor)

*Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

# EXHIBIT: 14

# TRANSCRIPT OF COURT PROCEEDING IN on January 23, 2013 in LIEU OF

## DOC #92 PROOF OF SERVICE

i) SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER AUTHORIZING SALE AND ASSIGNMENT OF STATE COURT LITIGATION CLAIM AND LLC INTEREST TO BBG LTD

ii) SUPPLEMENTALDECLARATION OF JEFFREY M. VETTER IN SUPPORT OF MOTION FOR ORDER AUTHORIZING SALE AND ASSIGNMENT OF STATE COURT LITIGATION CLAIM AND LLC

## DOC #98 PROOF OF SERVICE

i) SUPPLEMENTAL DECLARATION OF LISA HOLDER REGARDING ORDER AUTHORIZING TRUSTEE TO EMPLOY ATTORNEYS EFFECTIVE SEPTEMBER 13, 2012

ii) NOTICE OF HEARING REGARDING ORDER AUTHORIZING TRUSTEE TO EMPLOY ATTORNEYS EFFECTIVE SEPTEMBER 13, 2012

## IMPORTANT TO NOTE:

1. NO NOTICE REGARING SALE OF "ASSETS" TAKING PLACE ON JANUARY 23, 2013 WAS GIVEN TO ANYONE

2. NO CREDITOR MATRIX WAS ATTACHED TO THIS PROOF OF SERVICE.

3. SPECIAL NOTIFICATIONS WERE GIVEN TO DEFENDANTS BREITMAN, ZOURAS AND CHANDLER WHO WERE NOT CREDITORS

Defendants Judge Clement and Trustee Vetter **steal Plaintiff_Debtors PRPOERTIES acting under color of official right,** threatening her **repeatedly in the process** – Properties stolen included

    i)  Her San Francisco Lawsuit and

    ii)  Her Vodka From Around The World LLC (not sure why not the interest of Plaintiffs LLC in lawsuit rather than LLC entire LLC with other peoples interest in it?)

1. Defendants Judge Clement **threatens the Plaintiff multiple times**

    i)    "COURT:......I'll have the bailiffs remove you" (Pg24Lns24-25)

    ii)    "COURT: ......And I told you this and I am not telling you this again. I'm just going to ask the bailiff to remove you" (Pg33Lns22-23)

    iii)    "COURT: Dr. Agha, you—Dr. Agha---Mr. Walsh would you please get the CSO" (Pg36Lns3-4)

2. Defendant Judge Clement refuses to let the Debtor speak on he own behalf even after she dismisses her attorney

    a.    "DEBTOR: Excuse me your honor.......I dismiss my attorney at this point............because I think he has not represented me adequately. COURT: ..I'm not going to hear from you" (Pg21Lns1-12)

    b.    "DEBTOR: So may I make a comment, please. I really----COURT: We're going to be bidding on this asset. We're not going to take argument.........I'll have the bailiff remove you" (Pg24Lns18-25)

   c.   "DEBTOR: Did you notify the other potential defendants.....,----COURT: Ms Agha---Ms. Agha---...I am not going to take these monologues" (Pg26Lns19-25)

**TRUTH:** Yet invites Chandler to give his opinion when Chandler is a bystander just wanting to buy the asset-lawsuit for his client at lowest price possible, not an expert witness or involved in this bankruptcy case. But Chandler gives a 3 page opinion!!!

   d.   "COURT: Your attorney gets to do the argument........I'm not going to entertain argument from you" (Pg29Ln11-13)

   e.   "COURT: I'm not going to take arguments from you. I am going to warn you one more time" (Pg30Lns8-9)

   f.   "COURT: I'm not taking--I'm not taking argument from you.......I'm just going to ask the bailiff to remove you" (Pg33Ln21-23)

   g.   "DEBTOR: Your Honor, it's a fake drama. It's a fake---COURT: Dr. Agha, you---Dr. Agha—Mr. Walsh, would please get the CSO) (Pg36Lns1-4)

3.  Defendant Judge Clement in contrast to his treatment of the Plaintiff-Debtor where did not want to hear a word from her when she was the person involved in the case being heard actually invites Mr. Chandler to give his THREE PAGE OPINION ON THE CASE. When Mr. Chandlers only involvement in this case was to buy the lawsuit and LLC that threatened his clients financial status, Breitman and BBG Ltd were defendants in that lawsuit, as soon as possible and at the lowest possible price possible. Chandler was not officially consulted in the case, or invited as an expert witness by any party so had no official knowledge of the case.

   a.  "COURT: I'm going to turn next to Mr. Chandler......Mr. Chandler......Did you wish to be heard on the motion to sell?

MR. CHANDLER: If the court will entertain argument yes" (Pg16Lns16-25).

**TRUTH:** Defendant Judge Clement forgot that he was not in his living room discussing the weather where everyone including the Janitor had a right to voice their opinion.

4. Defendant Chandler knowing he had no official knowledge of the case and his speech constitutes as conflict of interest went on and gave THREE PAGE COMMENTARY OF LIES, ACCUSATIONS AND MADE DISPARAGING COMMENTS about Plaintiff-Debtor doing his best to influence the judgment. His dissertation included

   a. "CHANDLER: Plaintiff-Debtor had not given trustee "enough information that the trustee can look at the schedules and figure it out" (Pg17Lns4-5)

   b. "CHANDLER:....schedules are a far cry from disclosing either one of these assets" (Pg17Lns9-10) - forgetting that the same Trustee and Judge now trying to steal these so called assets had originally agreed and signed off on these same properties now being claimed as assets.

   c. "CHANDLER:....LLC held the cause of action against the parties that weren't disclosed in the Schedule B....trustee was supposed to imaginatively determine that......debtor was not very forthcoming" (Pg17Lns12-16)

   d. "CHANDLER: Even the use of her name has—has—become a problem in the conflict search" (Pg17Lns17-18). **TRUTH:** Chandler had gone

through the schedule details but did not read the name on all 1-49 pages of the schedules written as SALMA HAIDER AGHA-KHAN?

e.  "CHANDLER:....uses different names at different times......some inference there that it was her intent not---not to schedule these" (Pg17Lns19-22)

f.  "CHANDLER: it's not a disclosure of any one of these assets" (Pg17Lns24-25)

g.  "CHANDLER: Mr. Cumming argues that it suddenly became known to the debtor" (Pg18Lns3-4). No after over one year of filing and discharge

h.  "CHANDLER: Basically what **she's trying to do is trying to run everybody sideways so nobody is looking at the real facts**" (Pg18Lns10-15) **TRUTH:** Defendant Chandler has NO ETICS and what a sorry excuse for a human being!

i.  "CHANDLER: there is no question that she---she did not disclose it......she put it in the statement of affairs, again, just like the use of her name...intent to conceal" (Pg18Lns16-19)

j.  "CHANDLER: revoke the discharge......very short window where he could have done that" (Pg18Lns20-23) So admits that stature of limitation was up......

k.  "What the Debtor did......was really contemplated by the code. Nor was it within the mainstream of the practice.......We put the Trustee on notice" (Pgs18Lns24-25; Pg19Lns1-6) He certainly notified the trustee of the existence of second case filed at the same time related to the same LLC and same business.

5. Defendant Judge Clement after granting the motion (allow BACK DATED EMPLOYMENT OF Defendant Holder from the day of filing of ExParte motion to reopen Bankruptcy September 13, 2012 prior to the employment of Trustee even on the case). on nineth day of its filing without even giving Plaintiff-Debtor a chance to oppose and also forbitting filing of written objection states on record "With respect to the motion to employ Klein DeNatale the tentative is to grant" (Pg5Lns15-16)

6. Defendant Judge Clement

   a. "COURT: I'm looking back again at….schedule B item twenty-one…. **a potential lawsuit** vs. SS Nitelife………that does not put fully and properly put the trustee on notice as to Mr. Breitman" (Pg9Lns19-25)

   b. "COURT: What's the trustee selling then if……there was nothing there on the date of filing the petition?…..I don't understand what the trustee is selling" (Pg12Lns1-4) also with NO CREDITORS ANYWHERE IN SIGHT!!!

   c. "CUMMING: the LLC had no assets…..COURT: Well right" and "CUMMING:…it didn't have any tangible assets…..identify it in the statement of financial affairs, identify when the business started when it stopped" (Pg12Lns11-12,17-25)

   d. "CUMMING:…putting unknown as the value is really not correct because there was **no asset at that time**………COURT: ,,now the LLC has has acquired assets and is moving forward…….CUMMING: **at the time of filing, there were no tangible assets that could be**

**sold"** (Pg13Lns1-14) Clement is asking Plaintiff-Debtor to have fraudulently list assets in Schedules that did not exist at the time of filing

e. "COURT: The law is quite clear that the knowledge of the trustee is irrelevant..........the question is whether or not these assets were properly scheduled" Pg21Lns14-24) Proper scheduling was possible if these assets existed at that time.

f. "COURT: I do not find the lawsuit to have been disclosed. It remains property of the estate. The LLC was not disclosed. Its not listed in the schedules. The listing in the statement of financial affairs is not sufficient" (Pg22Lns3-15) So the fact that this lawsuit did not exist till more than one year after discharge is irrelevant

g. "COURT:......either way this is the trustees asset to sell.....we have identified a buyer BBG Ltd" (Pg22Lns16-17) Not two buyers when he knew I was also wanting to buy it and not stating BBG is DEFENDANT IN THA LAWSUIT

h. "DEBTOR: I am the only legitimate bidder in this not BBG Ltd....this lawsuit was never advertised publicly. It was privately told to BBG Ltd.......COURT: Sure it was.......DEBTOR: BBG is not a creditor.......BBG Ltd is defendant in that lawsuit" (Pg25Lns4-25)

i. "DEBTOR: BBG is not a creditor......COURT: Doesn't have to be....DEBTOR: BBG is a defendant ..... COURT: Doesn't have to be....DEBTOR: So was SF Nitelife also notified? Did you notify SF Nitelife?......Tony Carrachi......COURT: Ms. Agha---Ms. Agha—Ms. Agha. It's a question......DEBTOR: Grossman brothers?.......COURT: I

am not going to entertain an argument from you.........I'm not going to take an argument from you. I am going to warn you one more time........why does this look deficient?    ........That does not look like insufficient notice to me.......the objection is overruled. We are proceeding to the sale......desire to purchase them as a group" (Pg26Lns13-23;    Pg27-30Lns1-25;    Pg31Lns1-20)    confirming selection of Defendants Breitman and BBG as the preferred buyers!!

j.  "DEBTOR:......fifteen hundred plus ten percent of my winnings from.........what's collected from this lawsuit because this lawsuit is an asset. So what's collected at the end of the judgment I want to give ten percent of that to the trustee. And the previous judgment in a similar lawsuit that Mr. Breitman was aware of----COURT: Now this is a number. All we are doing is a number.........straight dollars unless Ms. Holder is willing to consent to that and I doubt she will MS. HOLDER: We do not consent to that....DEBTOR: The previous lawsuit----seven hundred thousand dollars was the judgment on that COURT: I am not taking argument from you....I'm just going to ask the bailiff to remove you" (Pg32Lns19-25; Pg33Lns1-23) Judge is answering and refusing offers himself on behalf of Trustee

k.  "MR. BREITMAN: Seventeen thousand........DEBTOR: I wish to be excused.......I am not playing this game. You can just give it to him for fifteen hundred dollars. I withdraw every single bid.......Mr. Jeffrey Vetter has unanimously made sure the only bidder in this case be Mr. Breitman and BBG Ltd who is the defendant.......I am do not want to play these games COURT: So we are back at the original fifteen thousand dollars........DEBTOR: fifteen hundred. I withdrew. Fifteen

hundred.........COURT: we're back at fifteen thousand" (Pg35Lns1-17) Clement reduces final sale price to $15,000.00 two thousand less from the final bid price and same fifteen thousand as when they had tried to directly assign it to Defendant Breitman

7. Defendant Holder **lies about notification of sale itself and also lies about to notification of sale potential interested parties** with no notification to SF Nitelife or its principals they had been harping all along! (Pg26Lns13-23; Pg27-30Lns1-25; Pg31Lns1-20)

8. Defendant Holder agreed that **"trustee had no complaint at the time** that he conducted the 341 meeting. **The complaint was filed well after the fact"** (Pg19Lns15-17). More than one year later

9. Defendant Holder "I've read the meeting of the creditors transcripts" Pg19Lns20-25) So then she knew that not just the LLC but its business, its business issues, its business location, its partners and their percentages, LLC Escrow, LLC Escrow company name, location and contact information, fifty thousand dollars in LLC Escrow account, and eighteen thousand exempted amount AND that physical documentation regarding all this was demanded by trustee and given to him (Exhibit : Creditors Meeting Transcripts and LLC Escrow Documents handed to Trustee Vetter)

10. "Ms. Holder: Mr. Breitman and BBG are a ---**he's a real estate broker** and that would an agent and certainly not a principal of any company" (Pg20Lns3-5) so what exactly is Breitman in BBG Ltd if **he's "not a principal of any company". NICE LIE HOLDER!!!**

11. "Ms. Holder: Trustee certainly is required to investigate assets that he has reason to know exist........and the trustee did an investigation. It wasn't ferreted out because it was intentionally hidden....it wasn't described anywhere......it wasn't disclosed so it was abandoned" (Pg20Lns16) With all the lies regarding how an asset not existing at the time was not disclosed **she does finally admit that it was abandoned and thus it was disclosed!!!**

12. Cummings arguments

   a. "CUMMING: Scheduling of the lawsuit with respect to Bruce Breitman and BBG Ltd. The basic issue is whether....this specific lawsuit was properly scheduled........Scheduling of an asset has to be accurate and complete and has to give the trustee notice of the existence of the asset.......and potential value of the asset so the trustee has the opportunity to further investigate. In this case Schedule B, and more specifically item twenty-one **we identified a potential lawsuit** against SF Nitelife......initial value was fifty thousand dollars because that was the amount at issue with respect to an  escrow account" (Pg7Lns2-7)

   b. "CUMMING: Courts tentative ruling.....states that the current lawsuit against Mr. Breitman and BBG were different parties, a **different potential lawsuit in comparison to SF lawsuit and different rights sued upon**" (Pg7Lns8-14) a lawsuit filed over one year after discharge pertaining to the same disclosed LLC and same reasons!

   c. "CUMMING: it was very clear in the meeting of the creditors that Dr. Agha was going to maintain a suit against SF Nitelife and its

principals......trustee asked about the principals but never got details about names......Mr. Breitman and BBG fell into the category of those principals because he was ultimately involved in this transaction..........included Breitman and BBG Ltd because these were individuals that were part of the transaction" (Pg8Lns1-25) on record in Creditors Meeting LLCs escrow documents were given to Trustee (Exhibit Escrow docs and Creditors meeting)

d. "CUMMING:....whether the trustee decided to find out the name and other relevant information about the principals, that was a decision he could have perused, but ultimately he didn't.......And the question is should my client lose the opportunity to vindicate her rights because the trustee during the 341 hearing didn't decide to go a little deeper and ask who these people were.......quote principals of SF Nitelife. And I think that by making that decision by not going...if he had gone deeper....the names....would have come up." And "unfortunately those questions were not asked and I don't believe its proper for my client to loose this—to not have the ability to pursue this lawsuit, plus forgo or forfeit the money already spent because the trustee decided not to investigate further" (Pg9Lns1-16) Because no assets existed at that time!!!

e. "CUMMING: ......issue about identifying debtors interest in Vodka from Around the World.........with respect to the statement of financial affairs and identifying Vodka in that location and not in Schedule B.......what needs to be perhaps emphasized is at the time of the bankruptcy filing Vodka from Around the World had no assets. It was a closed business and there were no assets to schedule......no physical

tangible assets......the LLC had no assets COURT: Well right....CUMMING: .....if the corporate entity has any tangible assets, then I think it'd be proper in Schedule B..........it didn't have any tangible assets. So the idea was to take hat and identify it in the statement of financial affairs, identify when the business started, when it stopped....so even putting 'unknown' as the value is really not correct because there were no assets at that time.........at the time of filing, there were no tangible assets that could be sold" (Pg11Lns4-19; Pg12Lns1-25; Pg13Lns1-15) **How could they have sold something that did not exist?**

f. "CUMMING: ..I referred in my papers Morlen v. Universal Guaranteed Life Insurance 298 F 3d 609, that case stands for the proposition that it's not a completely rigid analysis.......the court ruled that...... debtor could pursue that because.......lawsuit was discussed during the meeting of creditors. In this case the trustee specifically made the decision that it was not going to pursue it and the length of time between the closing of he bankruptcy case and the decision to--- COURT: It's a laches case" (Pg15Lns1-19) Judge intentionally cuts off Cumming so he cannot state on record the lawsuit was filed over one year after the Bankruptcy was closed and the stature of limitation had run out.

g. "CUMMING:.....just because an asset isn't on a schedule doesn't by default mean its not properly scheduled........and in this case here were lots of discussions about it and we think at the end of the day it was properly scheduled. COURT: Thanks You Mr. Cumming. I'm going to turn turn next to Mr. Chandler..." (Pg16Lns1-16) so Judge is argument-less and turns to Mr. Chandler for support who he knew

was going to lie to death. Clement knew that Chandler had no official knowledge of the case and represented conflict of interest but still used him as his crutch.

h. "CUMMING:...the clients concerns and our concerns about the notice is just making sure that the proper individuals receive notice about this opportunity to sell the asset. SF Nitelife, you know had a ---- COURT: I understand the argument....objection is overruled. We are proceeding with the sale" (Pg30Lns17-21; Pg31Lns8-9) Clement cutting off Cumming is proof that he knew that he was part of a MAJOR FRAUDULENT DEAL OF STEALING PROPERTY UNDER COLOR OF PROFESSIONAL RIGHT

1                    UNITED STATES BANKRUPTCY COURT

2                    EASTERN DISTRICT OF CALIFORNIA

3                    HON. FREDRICK E. CLEMENT, JUDGE

4


5      In the Matter of            ) Case No. 10-16183-A-7
                                    ) KDG-1; KDG-2
6      SALMA AGHA,                  ) Chapter 7
                                    )
7                                   )
                      Debtor.       ) Motion to Employ
8      _____) Lisa Holder as Attorney;
                                      Continued Motion to Sell
9

10

11

12
       Wednesday, January 23, 2013              Bakersfield, California
13

14

15
                    REPORTER'S TRANSCRIPT OF PROCEEDINGS
16

17

18

19

20

21

22     Linda A. Gorman, RMR
       C.S.R. License #12693
23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2   For the Debtor:           CUMMING & ASSOCIATES
                               3080 Bristol St., Ste. 630
 3                             Costa Mesa, CA  92626
                               BY:  WILLIAM R. CUMMING
 4
     For BBG, Ltd.,            LAW OFFICE OF DAVID N. CHANDLER
 5   Interested Party:         1747 4th Street
                               Santa Rosa, CA  95404
 6                             BY:  DAVID N. CHANDLER

 7   For the Trustee,          KLEIN, DeNATALE, GOLDNER,
     the Moving Party:         COOPER, ROSENLIEB & KIMBALL, LLP
 8                             4550 California Avenue, 2nd Floor
                               Bakersfield, CA  93309
 9                             BY:  LISA HOLDER

10   Also Present:             Bruce Breitman
                               Jeffrey Vetter
11                             Salma Agha

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Wednesday, January 23, 2013            Bakersfield, California

2    1:00 p.m. Calendar

3        THE COURT:  Item No. 10.  There are two matters in

4    this case.  I'm going to call them in the order indicated on

5    the calendar.

6        As is my custom, when I have multiple matters, I'll

7    take all of the appearances on the front end.  And if you

8    intend your appearance to be something less than on all

9    matters, you should so indicate at the time of the initial

10   appearance.

11       This is the matter of Salma Agha, 10-16183.  The first

12   motion is a motion to employ Lisa Holder of Klein DeNatale as

13   attorney.

14       Are there appearances on this matter?

15       MS. HOLDER:  Lisa Holder on behalf of the moving

16   party.

17       THE COURT:  Ms. Holder, good afternoon.

18       Are there any --

19       MR. CUMMING:  Good afternoon, Your Honor.  Appearing

20   telephonically, William Cumming on behalf of the debtor, Salma

21   H. Agha.

22       THE COURT:  Good afternoon.

23       Are there any other appearances?

24       THE DEBTOR:  I'm Salma Agha.

25       THE COURT:  Hello.

4

1          Mr. Cumming is your attorney?

2          THE DEBTOR:  Yes, correct.

3          THE COURT:  Mr. Cumming, you understand your client is

4    in the room?

5          MR. CUMMING:  Yes, Your Honor.

6          THE COURT:  Ms. Agha -- am I saying it right, "Agha"?

7          THE DEBTOR:  "Agha."

8          THE COURT:  Hi.

9          Since Mr. Cumming is your attorney, he gets to do the

10    talking today; but we, of course, welcome you.  And you're

11    welcome to sit and to listen, to make notes of things you'd

12    like to speak to Mr. Cumming about after the hearing, so thank

13    you.

14          Any other appearances on this matter?

15          Is Mr. Chandler appearing?

16          MR. CHANDLER:  Yes, Your Honor, David Chandler

17    appearing.  I'm not appearing on the motion to employ

18    counsel.

19          THE COURT:  Very well.

20          Any other appearances in any of the Agha matters?

21          No response to the call --

22          MR. BREITMAN:  Yes, Your Honor, Bruce Breitman.  I'm

23    here in the courtroom.

24          THE COURT:  Okay.  Can you step up to the podium so I

25    can get your name.

1          MR. BREITMAN:  Yeah.  Bruce Breitman,

2  B-R-E-I-T-M-A-N.  I represent BBG, Limited.  I'm not counsel.

3  I'm a party that's made a bid.

4          THE COURT:  Mr. Chandler is your --

5          MR. BREITMAN:  Mr. Chandler represents me.

6          THE COURT:  And I will say the same thing to you as I

7  did to Ms. Agha.

8          Welcome, we're glad you're here, but Mr. Chandler gets

9  to do the talking.  Do feel free to sit, to listen, to make

10  notes of things you'd like to speak to him about.

11          MR. BREITMAN:  I'll do that.

12          THE COURT:  Very well.

13          Any other appearances in any of these matters?

14          There is none.

15          With respect to the motion to employ Klein DeNatale,

16  the tentative is to grant.

17          Did anyone wish to speak in opposition?

18          I am hearing nothing.

19          The tentative will be the ruling, and the motion will

20  be granted.

21          MS. HOLDER:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          We'll take up the other matter involving Salma Agha,

24  and this is a continued motion to sell.

25          I do recall our first visit in this issue raising some

1   fascinating questions.  We have had the opportunity to look in

2   that with a great deal more detail.  I do want to thank each of

3   the parties for their thoughtful and articulate briefs on these

4   issues, somewhat difficult and esoteric.

5           I don't actually think I came down any different than

6   where I started, but I do appreciate your efforts to clarify.

7           Does anyone wish to speak -- before we actually call

8   the sale, should we do so, did anyone wish to speak in

9   opposition to the sale?

10          MR. CUMMING:  Your Honor, this is Bill Cumming once

11  again, appearing telephonically.

12          I would like -- I did have an opportunity to review

13  the Court's tentative ruling and, with the Court's permission,

14  I would like to address a couple of issues.

15          THE COURT:  That would be fine.  Go ahead.

16          MR. CUMMING:  Fantastic.

17          The first issue I'd like to address is with respect to

18  the scheduling of the lawsuit with respect to Bruce Breitman

19  and BBG, Ltd.  The basic issue is whether the -- this specific

20  lawsuit was properly scheduled.

21          As set forth in the opposition papers, the general

22  standard that the court used -- or courts should use in looking

23  at this is that the scheduling of an asset has to be accurate

24  and complete and has to give the trustee notice of the

25  existence of the asset and the potential value of the asset so

1   the trustee has the opportunity to further investigate.

2          In this case, in Schedule B, and more specifically

3   item twenty-one, we identified a potential lawsuit against SF

4   Night Life.  We identified the address in which the business

5   operated in.  The initial value was fifty thousand dollars

6   because that was the amount at issue with respect to an escrow

7   account.

8          The Court's tentative ruling, my understanding of it,

9   states that the current lawsuit against Mr. Breitman and BBG

10  were different parties, a different potential lawsuit in

11  comparison to the SF lawsuit, and different rights sued upon.

12  I think taking perhaps a closer look at the facts, the Court

13  might reach a different conclusion, or perhaps give

14  consideration to our arguments.

15         And specifically, Your Honor, it's this.  In the

16  papers that we've filed, I think we took a lot of time and

17  effort trying to identify specific testimony in the two

18  meetings of creditors that occurred between Mr. Vetter and the

19  client.

20         And just to briefly summarize that, Your Honor, the

21  moving papers -- or the document that we filed identified the

22  fact that Vodka from Around the World decided to invest into

23  this business.  My client owned approximately seventy percent

24  of that.  An asset purchase agreement was entered into to

25  essentially use this facility.  There was a problem with the

1    lease.  And it's my client's contention that there were

2    misrepresentations regarding the lease, and she intended to sue

3    SF Night Life because that was the party.

4            But I think the important thing, Your Honor, that

5    perhaps wasn't focused on, at least in the tentative ruling, is

6    that it was very clear in the meeting of creditors that Ms. --

7    or Dr. Agha was going to maintain a suit against SF Night Life

8    and its principals, which opened the door to those individuals

9    who were associated with or affiliated with SF Night Life.

10            The trustee asked about the principals but never got

11    details about names and those types of things.  Mr. Breitman

12    and BBG fell into the category of those principals because --

13    he was ultimately involved in this transaction because the

14    whole purpose of this lawsuit related to one overriding thing,

15    and that was events and transactions that related to the

16    purchase of this building.

17            And when Dr. Agha said she was going to bring a

18    lawsuit against SF and the principals relating to this

19    transaction, that had to have included BBG and Breitman because

20    those were individuals that were part of the transaction.

21            So I think we take a different look about whether BBG

22    and Breitman were different parties or different potential

23    lawsuits or different rights being sued upon.  Knowing that the

24    debtor identified additional principals that be a part of this

25    lawsuit, I think that would encompass that.

1    And whether the trustee decided to find out the names

2    and other relevant information about the principals, that was a

3    decision that he could have pursued, but ultimately he didn't.

4    And the question is, should my client lose the

5    opportunity to vindicate her rights because the trustee, during

6    the 341 hearing, didn't decide to go a little deeper and ask

7    who these people were that were the, quote, principals of SS --

8    of SF Night Life.  And I think by making that decision by not

9    going -- if he would have gone deeper and decided to ask who

10   those people were, the names -- another admission would have

11   come up.

12   But, unfortunately, those questions weren't asked, and

13   I don't believe it's proper for my client to lose this -- to

14   not have the ability to pursue this lawsuit, plus forgo or

15   forfeit the money already spent because the trustee decided not

16   to investigate further.

17   THE COURT:  Mr. Cumming, let me pose a couple of

18   questions to you.

19   And I'm looking back again at the schedules, Schedule

20   B, item twenty-one.  There's a reference to a "Potential

21   Lawsuit vs. SS Nite Life" located at 13 Norfolk, San Francisco,

22   94103.  You agree that that does not fully and properly put the

23   trustee on notice as to Mr. Breitman and these other entities.

24   Your contention is that this occurred at the testimony of the

25   meeting of creditors.

1        Do I have the argument right?

2        MR. CUMMING:  Partially, Your Honor.

3        I think when -- when we decided to put the reference

4   SS Nite Life, the -- the lawsuit was against the entity, but

5   there's also the principals, shareholders, representatives of

6   that company, as well.

7        And so it came out during the 341, that in addition to

8   SS Nite Life, there are -- other individuals that made up the

9   company were part of that, as well.  So we didn't put SS Nite

10  Life and principals or -- and shareholders.  We just put the

11  name of the corporation.

12       THE COURT:  Right.

13       But all you've really identified as an adverse party

14  is SS Nite Life, right, in the schedules?

15       MR. CUMMING:  Yeah.  For purposes of Schedule B, we

16  just identified the corporate entity.

17       THE COURT:  And your contention is, these are so

18  inextricably intertwined, that's sufficient disclosure.

19       MR. CUMMING:  Well, my -- our position is -- we

20  identified the lawsuit.  We discussed in great detail with the

21  trustee the nature of the lawsuit, how it arose, and that SS

22  Nite Life was not only the corporate entity but also the

23  individuals that made up the corporate entity, or the

24  principals.

25       THE COURT:  Okay.

1          Anything else?

2          MR. CUMMING:  Well, with respect to the scheduling of

3     the lawsuit, no, Your Honor.

4          But there would be, of course, the other issue about

5     identifying debtor's interest in Vodka from Around the World,

6     which I would like to briefly address and --

7          THE COURT:  Yes, go ahead.  And let's take them all at

8     one time.

9          So, please proceed, Mr. Cumming.

10          MR. CUMMING:  Thank you, Your Honor.

11          Well, I did, again, have an opportunity to review the

12     Court's tentative ruling, and I am familiar with the relevant

13     case law.

14          With respect to the statement of financial affairs and

15     identifying Vodka in that location and not on Schedule B, I

16     think what -- what needs to be perhaps emphasized is at the

17     time of the bankruptcy filing, Vodka from Around the World had

18     no assets.  It was a closed business, and there were no assets

19     to schedule.

20          The Court's tentative made a reference to the fact

21     that even if that's the case, the business might need to be

22     wound up and there could be some assets that might need to be

23     sold.

24          And, therefore, a different approach could have been

25     scheduling the assets as unknown.  I suppose that --

1    THE COURT:  What's the trustee selling then if
2  there -- you're telling me there's nothing there -- there was
3  nothing there on the date of the petition?  I guess I don't
4  understand what the trustee is selling, if that's true.

5    MR. CUMMING:  Yeah.  The date of the petition there
6  were no physical tangible assets and --

7    THE COURT:  But there was an interest in an LLC.

8    MR. CUMMING:  Yeah, there was an interest in an
9  LLC --

10    THE COURT:  Isn't that the asset?

11    MR. CUMMING:  Well, the LLC had no assets.

12    THE COURT:  Well, right.

13    But if you have a -- you have an interest in an LLC,
14  isn't the asset the interest in the LLC?  And you may say it
15  has no value or you may say it has unknown value or you may say
16  marginal value, but that still is an asset, isn't it?

17    MR. CUMMING:  Well, if -- if the -- if the corporate
18  entity has any tangible assets, then I think it'd be proper in
19  Schedule B to say, you know, what it might be or, perhaps,
20  "unknown."

21    But I think what's unique about this specific asset or
22  this specific corporation or LLC, is that it didn't have any
23  tangible assets.  So the idea was to take that and identify it
24  in the statement of financial affairs, identify when the
25  business started, when it stopped.

1        And so even putting "unknown" as the value is really

2   not correct because there was no asset at that time.   And that

3   was the rationale for putting the statement -- that was the

4   rationale for putting -- or identifying Vodka from Around the

5   World in the statement of financial affairs.

6        THE COURT:  And so now -- now the LLC has acquired

7   assets and is moving forward.

8        MR. CUMMING:  Well, the LLC more recently -- 'cause

9   remember that the debtor only had -- she had a seventy percent

10  interest in this LLC.   There were other individuals that had an

11  interest in the company and wasn't till later that the LLC

12  desired to pursue this lawsuit.

13        But at the time of filing, there was no tangible

14  assets that could be sold, and that was the rationale to why it

15  was put in the statement of financial affairs.

16        THE COURT:  Well, but aren't you contradicting

17  yourself?

18        You say it has a cause of action, but it has no

19  value.   And the answer is, it has the cause of action.   Isn't

20  that the value?  Now, you can argue it's unknown, but isn't --

21  first of all, shouldn't we be focusing on the ownership in the

22  LLC?

23        And second of all, it does have something of value.

24  It has a cause of action.   It may not be liquidated, but it

25  still owns it.   We can argue about whether it's worth anything

1   or how much, but that's an asset, isn't it, of the LLC?

2        MR. CUMMING:  Well, I -- I understand the Court's

3   position on that, and I did give that some thought.

4        And I think in response to that, Your Honor, is at

5   that time it was -- at the time in which the bankruptcy

6   documents were filed, the LLC, as the corporate entity, more

7   specifically, the members, whether -- whether they were aware

8   of it, whether they decided to pursue it, you know, it just

9   wasn't -- wasn't something that was necessarily on the radar

10  screen, per se.

11       THE COURT:  But they did have the cause of action,

12  right?

13       MR. CUMMING:  In -- well, from a statute of

14  limitations perspective, a breach of contract, whether it

15  existed at that time, hard to say.  I don't know if it was a

16  valid, enforceable cause of action at that point in time, and

17  that's -- that's the issue.

18       THE COURT:  Okay.  Very well.

19       Anything else, Mr. Cumming?

20       MR. CUMMING:  Yes, Your Honor.  A couple other points,

21  and I'll -- I'll be brief.

22       With respect to scheduling assets, my moving papers

23  discuss -- discuss two different types of cases.  There are

24  cases in which if an asset isn't scheduled, then it's not part

25  of the -- it remains a part of the bankruptcy estate if a

1  bankruptcy case is ultimately closed.

2       .          However, the case which I referenced in my papers,

3  Morlen, M-O-R-L-E-N, v. Universal Guaranteed Life Insurance,

4  298 F.3d 609, that case stands for the proposition that

5  it's not a completely rigid analysis.  What I mean by that is,

6  if an asset isn't scheduled, it doesn't by default not become

7  part of the bankruptcy estate.

8               In that case, in the Morlen case, the court ruled that

9  a -- the plaintiff in this case, or in this case the debtor,

10  filed a class action lawsuit, and the class action wasn't

11  properly identified on the schedules.  However, the court

12  ultimately determined that the debtor could pursue that

13  because -- a couple reasons.  One, the existence of the lawsuit

14  was discussed during the meeting of creditors.

15               In this case, the trustee specifically made the

16  decision that it was not going to pursue it, and the length of

17  time between the closing of the bankruptcy case and the

18  decision to --

19               THE COURT:  It's a laches case, though, isn't it?

20               MR. CUMMING:  Laches is one factor that the court

21  determined or relied upon in making the decision that the cause

22  of action was part of the bankruptcy estate and, therefore, the

23  debtor could pursue it.  Laches is one of the factors.

24               But the other factors, Your Honor, is that also that

25  it was discussed during the 341, and also the trustee made the

1   decision that it was not going to pursue it.  And in this case,

2   Your Honor, there was much discussion about this -- potential

3   assets and her decision to attempt to move forward.

4          I just think the Morlen case -- the Morlen case

5   ultimately stands for the proposition that just because an

6   asset isn't on a schedule doesn't, by default, mean it's not

7   properly scheduled.  I think you have to look more at all the

8   relevant facts to determine if the court, or in this case the

9   trustee, had notice and had an opportunity to further

10  investigate.

11         And in this case, there was lots of discussion about

12  it.  And then we tried to do our best in the moving papers to

13  show that there was a lot of discussion about it; and we think

14  at the end of the day, it was properly scheduled.

15         THE COURT:  Thank you, Mr. Cumming.

16         I'm going to turn next to Mr. Chandler and then to Ms.

17  Holder for thoughts on this.

18         Mr. Chandler?  Mr. Chandler?

19         MR. CHANDLER:  Yes, Your Honor.

20         THE COURT:  Did you wish to be heard on the motion to

21  sell?

22         MR. CHANDLER:  If the Court will entertain argument,

23  yes.

24         THE COURT:  Well, I've heard from Mr. Cumming.  I'd

25  certainly be happy to hear your response.

1      MR. CHANDLER: Well, Your Honor, I appreciate his

2  argument. Mr. Cumming's argument was very interesting, but I

3  don't think that's how we fill out schedules in these cases.

4          We're -- we're required to give the trustee enough

5  information that the trustee can look at the schedules and

6  figure it out from the schedules. He doesn't have to make an

7  independent evaluation.

8          In this case, all I know about is what is in the

9  schedules. And the schedules are a far cry from disclosing

10  either one of these assets, as the Court pointed out, with the

11  LLC.

12          The LLC held the cause of action against parties that

13  weren't disclosed in the Schedule B, and I'm not quite sure how

14  the trustee was supposed to imaginatively determine that

15  without further investigation, which the debtor was not very

16  forthcoming on any of her information.

17          Even the use of her name has -- has -- has become a

18  problem in the conflict search that Ms. Holder did because she

19  uses different names at different times. And in this case, she

20  used a name that she hadn't used before and doesn't typically

21  use, and so I think there -- there is some inference there that

22  it was her intent not -- not to schedule these changes.

23          But in any event, the -- I think the Court's analysis

24  in the tentative is exactly correct. It's not -- it's not a

25  disclosure of any one of these assets. The trustee wouldn't

1  have known where to go, where to look, what to do to evaluate

2  the merits of this.

3         And Mr. Cumming argues that it suddenly became known

4  to the debtor.  I'm not quite sure how that happened that it

5  suddenly became known and came into focus and she couldn't have

6  told the trustee about it.  You can always call up the trustee

7  later and say, "Gees, I found this -- this nuance in the

8  contract, and I think there might be a claim here.  Are you

9  interested?" That didn't happen.

10        Basically, what she's trying to do is trying to run

11  everybody sideways so nobody is looking at the real facts in

12  the case.  The real facts in the case is she didn't disclose

13  it.  She's trying to pursue this cause of action, and we'll

14  get -- in the next phase, we'll get to what the value of that

15  might be.

16        But I -- I think there's just no question that she --

17  she did not disclose it.  And what she put in the statement of

18  affairs, again, just like the use of her name, is evidence of

19  her intent to conceal.

20        For the life of me, I don't understand why the trustee

21  didn't go after a 727 claim in this -- to revoke the discharge

22  of this case.  It was a very short window where he could have

23  done that, and I can't understand why he didn't do that.

24        But certainly what the debtor did in this case was not

25  something that was really contemplated by the code.

1          Nor was it within the mainstream of the practice in

2    the -- in the Eastern District or in the -- in the Northern

3    District.  It's just not within the mainstream of practice.  We

4    don't do that, and there's good reason.  We put the trustee on

5    notice of these things so when -- when that discharge is

6    entered and that case is closed, we all know where we stand.

7          That's all I have.  Thank you.

8          THE COURT:  Thank you.

9          Ms. Holder, do you wish to be heard?

10          MS. HOLDER:  Yes, Your Honor, a few things.

11          First, I would submit on the tentative ruling and ask

12    the Court to enter the tentative as the order of the Court.

13          Second, I was not served with the opposition, and I

14    don't waive that lack of service.

15          Regarding the trustee's knowledge, the trustee had no

16    complaint at the time that he conducted the 341 meeting.  The

17    complaint was filed well after the fact, so the trustee

18    couldn't have had any knowledge of the information contained in

19    the complaint.

20          I've read the meeting of creditors transcript, some

21    forty odd pages.  Vodka from Around the World is never

22    mentioned.  The only thing mentioned, when talking about

23    business enterprises, is Ms. Agha saying, "Me, I, mine."  So

24    there's never any disclosure of an active LLC trying to recover

25    assets.

1     As a side note, the discussion of SF Night Life and

2 its principals being contemplated as potential defendants, it's

3 my understanding that Mr. Breitman and BBG are a -- he's a real

4 estate broker, and that would be an agent and certainly not a

5 principal of any company.

6     On the issue of who's responsible for disclosing

7 assets versus ferreting out assets, I think the responsibility

8 is firmly on the debtor.  And the trustee certainly is required

9 to investigate assets that he has reason to know exist, which

10 he clearly did through forty some pages of a meeting of

11 creditors transcript, but the asset simply wasn't scheduled.

12     And the trustee did an investigation.  It wasn't

13 ferreted out because maybe it was intentionally hidden.  Maybe

14 it wasn't, but it wasn't described anywhere.  And so it wasn't

15 disclosed, so it was not abandoned upon the closing of the

16 case.

17     And regarding the debtor's interest in Vodka from

18 Around the World and whether it had any value on the petition

19 date, clearly the debtor believes that this claim has value now

20 and the claim should have been scheduled, as well as the

21 interest in the LLC.

22     That's all I have, Your Honor.

23     THE COURT:  Thank you.

24     I am ready to rule, and I'm going to make the

25 tentative the ruling.  The sale will be approved.

1          THE DEBTOR:  Excuse me, Your Honor.

2          THE COURT:  I'm sorry, Ms. Agha, no.  The answer is, I

3  told you at the beginning you do not get to speak.  Your

4  attorney speaks for you.

5          THE DEBTOR:  Can I dismiss my attorney at this

6  point --

7          THE COURT:  No, you cannot, Ms. --

8          THE DEBTOR:  -- because I think he has not represented

9  me adequately.

10          THE COURT:  Ms. Agha, we are going to rule on this at

11  this time, and you can dismiss him later, but I'm not going to

12  hear from you.

13          The motion is granted.

14          The law is quite clear that the knowledge of the

15  trustee is irrelevant, and I note the Navistar International

16  Transportation Corporation case cited at 950 F.2d 524,

17  pertinent page being 526.  It's an Eighth Circuit case from

18  1991.

19          The question is whether or not these assets were

20  scheduled properly.  "Properly scheduled" under 554, in my

21  view, means full and fair disclosure.  To put it in another

22  fashion, it means all of the cards on the table face up at the

23  outset.  That is not the case here.  The scheduling of the

24  lawsuit only indicates it was against SS Nite Life.

25          The Pace case, which is Ninth Circuit Bankruptcy

1   Appellate Panel case of 146 B.R. 562 at 566, makes clear that

2   rights that are intertwined are not disclosed by partial

3   disclosure so I do not find the lawsuit to have been

4   disclosed.   It remained property of the estate.

5          The LLC was also not disclosed.  It's not listed in

6   the schedules.  The listing in the statement of financial

7   affairs is not sufficient.  There was an interest in the LLC,

8   and that is sufficient.  The debtor could argue about the value

9   of that, but it should have been listed and it was not.

10          Moreover, the law in this circuit is quite clear that

11   postpetition appreciation of an asset belongs to the Chapter 7

12   trustee, and that is what apparently has occurred here.  Or

13   maybe it hasn't appreciated, but it has just become more

14   liquidated.  Either way, this is the trustee's asset to sell so

15   we are going to proceed with the sale.

16          That said, we have identified a buyer as BBG,

17   Limited.  Sale price is fifteen thousand dollars, a private

18   sale with an overbid opportunity.

19          Other than BBG, is there anyone in the courtroom or is

20   there anyone on the telephone that wishes to serve as a bidder

21   in this matter?

22          You wish to be a bidder, Ms. Agha?

23          THE DEBTOR:  Correct.

24          THE COURT:  Very well.

25          You will step up to the podium, please.

1          Mr. Cumming, are you hearing this?

2          MR. CUMMING:  Yes, Your Honor.

3          THE COURT:  Your client wishes to serve as a bidder in

4   this auction.  Are you aware of that?

5          MR. CUMMING:  Yes, I am, Your Honor.

6          THE COURT:  Very well.

7          Is there anyone else who wishes to serve as a bidder,

8   other than --

9          And, Mr. Breitman, please step forward, as well.

10          Is there anybody besides the debtor -- and I think the

11   actual bidder is BBG, Limited, not yourself personally.

12          Is that right, Mr. Breitman?

13          MR. BREITMAN:  That's correct.

14          THE COURT:  You're welcome to sit there next to Ms.

15   Agha or next to Ms. Holder, if that's to your preference.

16          MR. BREITMAN:  I'll go sit next to Ms. Holder.

17          THE COURT:  Is there anybody else who wishes to serve

18   as a bidder in this matter?

19          I hear no response.

20          Ms. Holder, please assist me, if you would.

21          Was there any prequalification or minimum bid terms

22   that your notice set forth?

23          MS. HOLDER:  Yes, Your Honor.

24          Anyone intending to bid must bring a fifteen hundred

25   dollar refundable deposit in certified funds to court, and I

24

1  understand that Ms. Agha has brought fifteen hundred dollars --

2            THE COURT:  Would you like to inspect that to ensure

3  that you -- that it meets your criteria?

4            MS. HOLDER:  I would ask the trustee to do that.

5            THE COURT:  Okay.  Mr. Vetter?

6            And Ms. Agha will turn the cashier's check -- is that

7  what it is, Mr. Vetter?

8            MR. VETTER:  Yes, sir.  A cashier's check in the

9  amount of fifteen hundred dollars, correct.

10           THE COURT:  And you're satisfied as that meeting the

11 qualification?

12           MR. VETTER:  Yes, I am.

13           THE COURT:  Mr. Vetter will hold that until the end of

14 the auction.  If you are the unsuccessful bidder, he will

15 return it to you.

16           Is there any desire or intention to separate these --

17           Yes, ma'am?

18           THE DEBTOR:  So may I make a comment, please.  I

19 really --

20           THE COURT:  We're going to be bidding on this asset.

21 We're not going to take argument.

22           THE DEBTOR:  But, sir, just one comment.

23           THE COURT:  No.  We're going to sell this asset.  And

24 if you're not going to participate by the rules I've set, I'll

25 have the bailiffs remove you.

1          So, the question is, do you wish to be a bidder or

2  not?

3          THE DEBTOR:  I wish to be a bidder.

4          But I think I'm the only legitimate bidder in this,

5  not BBG, Ltd.

6          THE COURT:  Why?

7          But I'm not going to re-entertain argument of

8  something we've already done.

9          THE DEBTOR:  There is no re-entertainment of

10  argument.

11          I'm just stating the fact that this lawsuit was never

12  advertised publicly.  It was privately told to BBG, Ltd. that,

13  hey, this lawsuit is happening so you need to bid on it.

14          THE COURT:  Sure, it was.  There was a notice that was

15  given to all creditors in the case.

16          Did this not go out to everyone, Ms. Holder?

17          MS. HOLDER:  Yes, Your Honor.

18          Actually, BBG approached the --

19          THE COURT:  So it was advertised.

20          THE DEBTOR:  BBG, Ltd. is not a creditor.

21          THE COURT:  Well, it went out to BBG and all --

22  anybody else like BBG.

23          So the answer is, it at least went to all creditors so

24  yes, there was -- there was notice.

25          THE DEBTOR:  But BBG, Ltd., is a defendant in the

1  lawsuit, not a creditor.

2        THE COURT:  I understand that, and --

3        MS. HOLDER:  Your Honor, if I may be heard.

4        THE COURT:  Sure.

5        MS. HOLDER:  I also gave notice to all the other

6  members of the Vodka Around the World, LLC, because I thought

7  they may be potential buyers of the LLC interest, and they are

8  not here.

9        THE COURT:  So we have it noticed to creditors, we

10  have BBG, and we have the other Vodka owners noticed.

11        MS. HOLDER:  Yes, Your Honor.

12        THE COURT:  Tell me why that is not --

13        THE DEBTOR:  BBG is not a -- a creditor --

14        THE COURT:  Doesn't have to be.

15        THE DEBTOR:  BBG is a defendant.

16        THE COURT:  Doesn't have to be.

17        THE DEBTOR:  So was SF Night Life also notified?  Did

18  you notify SF Night Life?

19        Did you notify the other potential defendants, Tony

20  Carachi, because BBG knew that Tony Carachi had had a case

21  against SF Night Life, which he did not disclose to me at the

22  time of --

23        THE COURT:  Ms. Agha -- Ms. Agha -- Ms. Agha, it's a

24  question.  I don't mind you asking the question, but I'm not

25  going to take these monologues.

1          So the question to Ms. Holder is, did you notify --

2          THE DEBTOR:  SF Night Life and Tony Carachi, who

3   is --

4          THE COURT:  Just those two?  Is that all you want to

5   know, if they were notified?

6          THE DEBTOR:  Correct.

7          And the Grossman brothers.

8          THE COURT:  Okay.

9          Ms. Holder, are you able to answer this question?

10         MS. HOLDER:  I could refer to the proof of service,

11  Your Honor.  I notified everyone that was required to be

12  notified under the Rules of Civil Procedure --

13         THE COURT:  Let's take a look at the --

14         MS. HOLDER:  -- and additional people that I thought

15  might be interested in purchasing the asset.

16         THE COURT:  Would the -- would you have included on

17  the proof of service persons who might be bidders but were not

18  necessarily entitled to notice by law?  In other words, would

19  you have necessarily listed them on the certificate of

20  service?

21         MS. HOLDER:  Yes, if I was aware of their existence

22  and their interest in the asset --

23         THE COURT:  In other words, you didn't just send them

24  a letter.  You included them on the proof of service --

25         MS. HOLDER:  Yes, Your Honor.

1          THE COURT:  Okay.

2          Let's take a look at the certificate of service.

3          Okay.  I see a proof of service with what appears to

4  be the Court's matrix.

5          There is a second proof of service, which includes the

6  following persons:  The buyer's attorney, who is a Peter

7  Zouras, Z-O-U-R-A-S; yourself, ma'am, Ms. Agha; Jamon,

8  J-A-M-O-N, Hicks of the Cochran firm in Los Angeles; Mr.

9  Chandler; Mr. Vetter; LLC member Muhammad Ashraf -- I think

10  He's a physician apparently in Bakersfield.

11          THE DEBTOR:  He's a colleague of mine.  I'm also a

12  physician here.

13          THE COURT:  Okay.  But he's an LLC member?

14          THE DEBTOR:  Correct.

15          THE COURT:  Okay.

16          I'm seeing Mr. Breitman with BBG.

17          I'm seeing -- and I'm going to get this name wrong,

18  and I'm sorry.  It's S-A-T-Y-A, last name, A-R-Y-A, also a

19  physician here in Bakersfield.

20          THE DEBTOR:  Correct.

21          THE COURT:  And then I see a Rosen Agelov,

22  A-G-E-L-O-V.  I see Mr. Cumming.  I see LLC member S-Y-E-D,

23  last name, S-A-G-H-I-R.  I see --

24          I think this is another name for you, ma'am.  It's

25  Agha Kahn, K-A-H-N.

1          THE DEBTOR:  That's me, Your Honor.

2          THE COURT:  Right.  I see you in a couple of places.

3          MS. HOLDER:  Your Honor, that's the agent for service

4   of process for the LLC under the --

5          THE COURT:  Right.  So you're saying who was missed

6   that should have been noticed?

7          THE DEBTOR:  SF Night Life that was so -- that was

8   mentioned everywhere in the bankruptcy papers that -- SF Night

9   Life was not mentioned.

10         In addition to other people --

11         THE COURT:  Your attorney gets to do the argument.

12  I'm going to let you ask questions because you're a bidder, but

13  I'm not going to entertain argument from you.

14         So who else -- just so that your attorney knows, who

15  else do you contend should have been noticed?  And then I'll

16  hear from your attorney.

17         THE DEBTOR:  SF Night Life.

18         THE COURT:  Who else?

19         THE DEBTOR:  Tony Carachi.

20         THE COURT:  Tony Carachi.

21         THE DEBTOR:  Grossman brothers.

22         THE COURT:  How do you spell "Carachi"?

23         THE DEBTOR:  C-A-R-A-C-H-I.

24         THE COURT:  Thank you.

25         The Grossman brothers.

1          And who else?

2          THE DEBTOR:  Bob and Gary Grossman.

3          THE COURT:  Bob and Gary Grossman.  Okay.

4          Who else?

5          THE DEBTOR:  I think, potentially, this should have

6   been a public notice.  It's an attempt for the trustee to

7   collect --

8          THE COURT:  I'm not going to take argument from you.

9   I'm going to warn you one more time.  I've asked you to

10  identify the people that you think should have been.

11          I'm going to hear from your attorney; and if he wishes

12  to make the argument -- where you have an attorney, the

13  attorney gets to speak for you.

14          Mr. Cumming, did you wish to be heard on the notice

15  issue?

16          MR. CUMMING:  Yes, Your Honor.

17          I think that the -- the client's concerns and our

18  concerns about the notice is just making sure that the proper

19  individuals receive notice about this opportunity to sell the

20  asset.  SF Night Life, you know, had a --

21          THE COURT:  I understand the argument.

22          The question is, why does this make it deficient?

23  We've given notice to all creditors and given notice to Mr.

24  Breitman and to several other parties involved in this.  That

25  does not look like insufficient notice to me.

1          Tell me why these four or five missing names renders

2    this sale inappropriate.

3          MR. CUMMING:  I'm not in a position now to state why

4    the absence of these names would render it insufficient.  I'm

5    just -- I wasn't -- I wasn't prepared to simply address these

6    issues.

7          THE COURT:  Very well.

8          The objection is overruled.  We are proceeding with

9    the sale.

10         Ms. Agha, you intend to be a bidder, and Mr. Vetter

11   has your check.

12         Is there an overbid price, Ms. Holder?

13         MS. HOLDER:  Your Honor, the proposed bidding

14   procedures were to bid in five hundred dollar increments.  And

15   I would note that the trustee does have the deposit from BBG,

16   Limited, for fifteen hundred dollars also.

17         THE COURT:  Very well.

18         So it will be five hundred increments.

19         And does anybody wish to segregate these assets or is

20   the desire to purchase them in a group, en masse?  As I

21   understood it, the trustee noticed this up for the sale of both

22   assets together.

23         This is the way we're proceeding, Ms. Holder?

24         MS. HOLDER:  Yes, Your Honor.

25         THE COURT:  Mr. Breitman?

1          MR. BREITMAN:  I guess.  I'm not sure of the

2  consequences.  Maybe my attorney can --

3          THE COURT:  Mr. Chandler?

4          MR. CHANDLER:  Your Honor, that's my understanding.

5          THE COURT:  Ms. Agha, is there any reason that's not

6  right?  We're talking about both assets here, right?

7          MR. CUMMING:  Both assets, Your Honor.

8          THE COURT:  Very well.  We're going to proceed.

9          We have the fifteen -- we are going to start at

10  fifteen thousand dollars, and the offer's from BBG.

11          And, Mr. Breitman, you are speaking not personally but

12  on behalf of BBG, Limited, true?

13          MR. BREITMAN:  True.

14          THE COURT:  Okay.

15          So is fifteen thousand.  We're going to go in five

16  hundred dollar increments.

17          Ms. Agha, did you wish to better the offer of fifteen

18  thousand?

19          THE DEBTOR:  I certainly would, Your Honor.  I would

20  like to better the offer to fifteen hundred, plus ten percent

21  of my winnings from --

22          THE COURT:  Fifteen thousand five hundred.

23          THE DEBTOR:  No.  From what's collected from this

24  lawsuit because this lawsuit is an asset.

25          So, what's collected at the end of the judgment, I

1   want to give ten percent of that to the trustee.  And the

2   previous judgment in a similar lawsuit that Mr. Breitman was

3   aware of --

4          THE COURT:  Now this is a number.  All we're doing is

5   a number.

6          So you're going to say fifteen thousand five hundred,

7   plus you want to give a share of the net proceeds of the

8   lawsuit.

9          And I'm not going to allow that.  We're going to do

10  this in straight dollars, unless Ms. Holder is willing to

11  consent to that, and I doubt she will.

12         MS. HOLDER:  We do not consent to that, Your Honor.

13         THE COURT:  Very well.  We're going to proceed in

14  dollars alone.

15         So you are bidding fifteen thousand five hundred,

16  Ms. -- Dr. Agha?

17         THE DEBTOR:  Sir, the previous lawsuit was -- seven

18  hundred thousand dollars was the judgment on that, if Ms.

19  Holder does not realize it, so she would never make a lot of

20  money --

21         THE COURT:  I'm not taking -- I'm not taking argument

22  from you.  And I told you this, and I'm not going to tell you

23  again.  I'm just going to ask the bailiff to remove you.

24         So the answer is, we're going to do this in dollars.

25         You are bidding fifteen thousand five hundred dollars,

1   true?

2           THE DEBTOR:  Correct.

3           THE COURT:  Mr. Breitman --

4           MR. BREITMAN:  Yes.

5           THE COURT:  -- do you wish to better that?

6           MR. BREITMAN:  I'm sorry?  What -- I didn't hear

7   what --

8           THE COURT:  Fifteen -- the bid is fifteen thousand

9   five hundred from Dr. Agha.

10          Did you wish to better that?

11          MR. BREITMAN:  Yes -- yes, Your Honor.  I'll raise it

12  by five hundred.

13          THE COURT:  Sixteen thousand, then?

14          MR. BREITMAN:  Yes, that's correct.

15          THE COURT:  Dr. Agha?

16          THE DEBTOR:  Sixteen thousand five hundred.

17          THE COURT:  Mr. Breitman?

18          MR. BREITMAN:  Seventeen thousand.

19          THE DEBTOR:  You know what, Your Honor?  I'm sorry.  I

20  wish to be excused from this bidding.  I just -- I'm sorry.  I

21  do not want to play this game.  You can just give it to him for

22  fifteen hundred dollars.  I withdraw every single bid.

23          THE COURT:  Okay.

24          THE DEBTOR:  I'm sorry.  I am not because -- I will be

25  appealing this thing because Mr. Jeffrey Vetter has unanimously

1  made sure that the only bidder in this case be Mr. Breitman and

2  BBG, Ltd. who is the defendant --

3        THE COURT:  Dr. Agha?

4        THE DEBTOR:  I'm sorry.  I wish to be excused.  I do

5  not want to play these games.

6        THE COURT:  You are excused.

7        So then we are back to the original fifteen thousand

8  dollar offer; is that right?

9        THE DEBTOR:  I'm sorry.  Fifteen hundred.  I

10  withdrew.  Fifteen hundred.

11        THE COURT:  I understand.

12        I'm speaking to Mr. Breitman.

13        MR. BREITMAN:  Yes.

14        THE COURT:  We're back --

15        Or is it your view that it's now higher, Ms. Holder?

16        I think we're back at fifteen thousand, unless you can

17  convince me otherwise.

18        MS. HOLDER:  May I have a moment to consult with my

19  client.

20        THE COURT:  You may.

21        MR. VETTER:  Your Honor, I'm going to return --

22        THE COURT:  The record is --

23        Dr. Agha, would you like your check?

24        Mr. Vetter?  Thank you.

25        Record will reflect that Mr. Vetter --

36

1           THE DEBTOR:  Your Honor, it's a fake drama.  It's a
2  fake --
3           THE COURT:  Dr. Agha, you -- Dr. Agha --
4           Mr. Welsh, would you please get the CSO.
5           MS. HOLDER:  Your Honor, the trustee --
6           THE COURT:  Just a moment, please.
7           COURT SECURITY OFFICER:  Yes, Your Honor?
8           THE COURT:  Dr. Agha, who just left, did you see her?
9           COURT SECURITY OFFICER:  Yes, I do, Your Honor.
10           THE COURT:  She has voluntarily left the room, and
11  that is fine.
12           If she wishes to return, that is acceptable; but I
13  would like you in the room with her.
14           COURT SECURITY OFFICER:  Thank you, Your Honor.
15           THE COURT:  Thank you.
16           Ms. Holder, we're to you.
17           And I think the question is, Mr. Breitman, you still
18  wish to serve as a bidder?
19           And I think the question is, is it fifteen or is it
20  seventeen?
21           MS. HOLDER:  The trustee would accept the fifteen
22  thousand dollar initial offer --
23           THE COURT:  Fine.
24           And that is your offer, Mr. Breitman?
25           MR. BREITMAN:  Yes, Your Honor.

1        THE COURT:  BBG's, anyway.

2        MR. BREITMAN:  BBG's, correct.

3        THE COURT:  Very well.

4        Is there anybody else who wishes to be heard on this

5 matter?

6        There is no one.

7        The tentative is the ruling.  BBG, Limited is --

8 excuse me.

9        MS. HOLDER:  Thank you, Your Honor.

10       THE COURT:  BBG is the approved buyer at fifteen

11 thousand.

12       There being no other buyers, we won't take a back-up

13 buyer since Dr. Agha has indicated her willingness to -- her

14 unwillingness to proceed.

15       You will prepare the order, Ms. Holder.

16       Is there anything else that we need to do this

17 afternoon?

18       MS. HOLDER:  I sure hope not, Your Honor.

19       THE COURT:  Thank you very much, and that will be the

20 order.

21       Mr. Welsh, thank you for your assistance a moment ago.

22       MR. WELSH:  Anytime, Your Honor.

23       MR. CHANDLER:  David Chandler for BBG.

24       Thank you, Your Honor, for Your Honor's patience.

25       MR. BREITMAN:  Thank you, Your Honor.

38

1       THE COURT:  Mr. Cumming, nothing further from you?

2       MR. CUMMING:  Nothing further, Your Honor, and thank

3   you.

4       THE COURT:  Thank you.

5       (The proceedings were concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

39

1          I, LINDA A. GORMAN, Registered Merit Reporter and

2   C.S.R. License #12693, do hereby certify the foregoing

3   transcript as true and correct.

4

5

    DATED: February 18, 2013

6                              By:/s/Linda A. Gorman, RMR
                               Certified Shorthand Reporter #12693
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT: 14 (15)

**DEFENDANT ATTORNEY'S EMAIL:**
asking if my Ex Partes met "the criterion of 'extraordinary relief' as outlined in paragraph five of his Procedures and Practices found on the Central District website". My reply stating that they were not gate keepers to Judge Olguins Court Room....

**Dated: October 2, 2014**

**From:** Salma Agha <salmahagha@aol.com>
   **To:** Jon.Klinck <Jon.Klinck@usdoj.gov>; cparker <cparker@kleinlaw.com>; dchandler1747
         <dchandler1747@yahoo.com>; cbahlert <cbahlert@mpbf.com>
**Subject:** Re: Meet and Confer
   **Date:** Thu, Oct 2, 2014 4:36 pm

Thanks for your replies Mr. Klinck and Ms. Parke. I don't think any of you are "Gate Keepers" for Judge Olguin to decide who to let through and who not to let through. But I will describe the EXTRAORDINARY CIRCUMSTANCES that demand my Ex Parte filings

1. Docket Fraud: it is not every day one learns that a Judge, Trustee and Attorneys have been to found to have been committing Docket fraud with creation of a new case number to file/hide Plaintiff-Debtors Bankruptcy matters under, accept filings where the Title of submission is distinct from the content within, conduct hearings pertaining to those fraudulent filings which have been fraudulently accepted and also have the titles on the transcripts fraudulently altered. I almost forgot - willfully forcing staff to not transcribe these hearings.

2. Disqualification of Defendant KDG from representing Defendant Trustee Vetter: They are both defendants in the same case, testifying together for each other in the same case when their previous employment in itself was a fraud committed by all Defendants colluding together to favor their "Special friends". That employment to this day is "illegal" and I am sure illegal acts etc have no place in Judge Olguins Court Room unlike Defendant Clements Court room where they were the norm.

Kindly let me know if any of you is planning on opposing these Ex Parte Motions.

Thanking You

Salma Agha-Khan, MD.

-----Original Message-----
From: Klinck, Jon (USACAC) (USACAC) <Jon.Klinck@usdoj.gov>
To: Salma Agha <salmahagha@aol.com>; cparker <cparker@kleinlaw.com>; dchandler1747
<dchandler1747@yahoo.com>; cbahlert <cbahlert@mpbf.com>
Sent: Thu, Oct 2, 2014 3:54 pm
Subject: RE: Meet and Confer

Dear Dr. Agha-Khan,

       Judge Olguin points out at paragraph five of his Procedures and Practices, found on the Central District website, that *ex parte* motions to only be used for extraordinary relief and are rarely granted. Could you please advise me of the extraordinary relief you seek in your two proposed motions? Or better still, could you send me copies? Thank you for your attention.

Jonathan B. Klinck
Assistant United States Attorney
Central District of California
Civil Division
300 North Los Angeles Street, Suite 7516

Los Angeles, California  90012
Phone:  (213) 894-8561
Fax:  (213)  894-7819

**From:** Salma Agha [mailto:salmahagha@aol.com]
**Sent:** Wednesday, October 01, 2014 9:49 PM
**To:** Klinck, Jon (USACAC); cparker@kleinlaw.com; dchandler1747@yahoo.com; cbahlert@mpbf.com
**Subject:** Meet and Confer

Hello,

I want to meet and confer regarding the two ExPartes I will soon be filing

1. Regarding Docket Fraud perpetrated by Defendants
2. Disqualify Defendant KDG from representing Defendant Trustee Vetter

Kindly let me know if you would like to meet tomorrow or early friday. If not please let me know your disposition regarding objecting to any of these motions or not.

Thanking You

Salma Agha-Khan, MD.