**49**

DAVID J. COOPER, CSB NO. 47615_
LISA HOLDER, CSB NO. 217752
CONNIE M. PARKER, CSB NO. 254484
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 395-1000
Fax: (661) 326-0418
E-mail: lholder@kleinlaw.com

Attorneys for Jeffrey Vetter, Chapter 7 Trustee

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 10-16183-A-7 |
| SALMA H. AGHA, | Chapter 7 |
|     Debtor. | DC No. [none identified in moving documents] |

**EXHIBITS TO DECLARATIONS OF LISA HOLDER AND CONNIE M. PARKER IN SUPPORT OF CHAPTER 7 TRUSTEE JEFFREY VETTER'S AND HIS ATTORNEYS' OPPOSITION TO DEBTOR'S REQUEST TO BRING LEGAL ACTION AGAINST TRUSTEE AND HIS COUNSEL**

Date: February 5, 2015
Time: 9:00 a.m.
Place: U.S. Bankruptcy Court
1300 18th Street, Ste. A
Bakersfield, California
Judge: Hon. W. Richard Lee

| EXHIBIT | DESCRIPTION | PAGE NOS. |
|---|---|---|
| A | 11/08/12 Declaration of Lisa Holder in Support of Application for Order Authorizing Trustee to Employ Attorneys Effective September 13, 2012 | 3-5 |
| B | 01/02/13 Supplemental Declaration of Lisa Holder Regarding Order Authorizing Trustee to Employ Attorneys Effective September 13, 2012 | 6-8 |

| EXHIBIT | DESCRIPTION | PAGE NOS. |
|---------|-------------|-----------|
| C | 02/18/13 Motion to Employ Lisa Holder as Attorney, Continued Motion to Sell | 9-47 |
| D | 01/23/13 Civil Minutes | 48 |
| E | 09/12/14 First Page to Second Amended Complaint | 49 |

Dated: January 22, 2015

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP


By _/s/ Connie M. Parker_____
    CONNIE M. PARKER, ESQ.
    Attorneys for Jeffrey Vetter, Chapter 7 Trustee

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

**3**

1  LISA HOLDER, CSB NO. 217752
   KLEIN, DENATALE, GOLDNER,
2    COOPER, ROSENLIEB & KIMBALL, LLP
   4550 California Avenue, Second Floor
3  Bakersfield, California 93309
   Telephone: (661) 395-1000
4  E-mail: lholder@kleinlaw.com

5  Proposed Attorneys for Jeffrey M. Vetter, Chapter 7 Trustee

6

7                    UNITED STATES BANKRUPTCY COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9  In re:                              Case No.  10-16183-A-7

10 SALMA H. AGHA,                      Chapter  7

11          Debtor.                    DC No. KDG-1

12                                     **DECLARATION OF LISA HOLDER IN
                                       SUPPORT OF APPLICATION FOR**
13                                     **ORDER AUTHORIZING TRUSTEE TO
                                       EMPLOY ATTORNEYS EFFECTIVE**
14                                     **SEPTEMBER 13, 2012**

15                                     Date:      N/A
                                       Time:      N/A
16                                     Place:     U.S. Bankruptcy Court
                                                  1300 18th Street, Ste. A
17                                                Bakersfield, California
                                       Judge:     Hon. Fredrick A. Clement
18

19

20     I, Lisa Holder, declare:

21     1.     I am an attorney duly admitted to practice law before the courts of the State of

22 California and the United States District Court for the Eastern District of California.

23     2.     I am a partner in the law firm of Klein, DeNatale, Goldner, Cooper, Rosenlieb &

24 Kimball, LLP ("Klein, DeNatale"). Jeffrey Vetter, Chapter 7 Trustee, seeks to employ Klein,

25 DeNatale in the case filed by Salma H. Agha ("Debtor") by the *Application of Trustee for Order*

26 *Authorizing Employment of Attorneys Effective September 13, 2012* ("Application").

27     3.     This declaration is the verified statement required by Bankruptcy Rule 2014(a).

28     4.     Klein, DeNatale has not served as an examiner in Debtor's case.

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

38Q6735.DOC                          1

Exhibit     A
Page        3

5.      Under Bankruptcy Rule 5002, neither I, nor any attorney at Klein, DeNatale to the best of my knowledge, is a relative of the bankruptcy judge considering approval of Klein, DeNatale's employment.

6.      I am one of the custodians of the books, records, and files of Klein, DeNatale that pertain to the identity of current and former clients of Klein, DeNatale. I know that Klein, DeNatale maintains a system to discover potential conflicts of interest between clients and others, and prepared a conflict of interest report regarding this case.

7.      I reviewed the conflict of interest report prepared by Klein, DeNatale, and determined that Klein, DeNatale does not hold or represent any interest adverse to the bankruptcy estate, and Klein, DeNatale is a disinterested person as defined in 11 U.S.C. Section 101(14). Any connections that Klein, DeNatale has with Debtor, her creditors, parties in interest, their attorneys and/or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee are disclosed in Exhibit "A," attached.

8.      Klein, DeNatale has extensive experience in bankruptcy, insolvency, corporate reorganization, and Debtor/Creditor law. Klein, DeNatale is qualified to represent the Trustee and is willing to accept employment on the basis set forth in the Application.

9.      I first consulted with Jeffrey Vetter regarding the case on September 13, 2012. I analyzed many documents, including deposition transcripts and bankruptcy court records, to assist Mr. Vetter to determine if there was an asset that should be liquidated for the benefit of creditors. Mr. Vetter has determined there is an asset to liquidate. Klein, DeNatale is seeking to be employed effective the date we began working on the case, so that Klein, DeNatale can be compensated for its work, if the court finds it is appropriate, upon further application.

10.      The above statements are within my personal knowledge and I can testify competently regarding these statements if called as a witness.

I declare under the penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this _8th_ day of November, 2012 at Bakersfield, California.

LISA HOLDER

Exhibit  A
Page  4

CRITICAL

**EXHIBIT A TO DECLARATION OF LISA HOLDER IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF ATTORNEYS FILED BY JEFFREY VETTER, CHAPTER 7 TRUSTEE**

<u>Connections</u>

a.    **Connections with Parties-in-Interest:** Other than working with the Trustee in connection with this proceeding and other matters unrelated to Debtor, there have been no connections with the Trustee or Debtor.

b.    **Connections with Creditors:** A review of the list of creditors does not show any connection with any of the creditors listed by Debtor, except that Klein, DeNatale previously represented the following entities in general business and/or litigation matters unrelated to Debtor.   However, Klein, DeNatale does not and has not represented the below entities in any matters associated with Debtor.

      i.    Citibank; and
      ii.    Commercial Trade Bureau.

c.    **Attorneys:** There are no known connections to attorneys presently involved in the case.

d.    **Accountants:** There are no known connections to accountants presently involved in the case.

e.    **United States Trustee:** Other than working with the United States Trustee and person employed by the Office of the United States Trustee in connection with this proceeding and other matters unrelated to Debtor, and socializing with the United States Trustee and person employed by the Office of the United States Trustee at court- and bankruptcy-association-sponsored functions, there are no known connections to the United States Trustee, or any person employed by the Office of the United States Trustee.

f.    **Bankruptcy Judge:** Other than appearing before the judge, and working with persons employed by the court, in connection with this proceeding and other matters unrelated to Debtor, and socializing with the judge and person employed by the court at court- and bankruptcy-association-sponsored functions, there are no known connections to the bankruptcy judge, or any person employed by the court.

g.    Except as set forth in this Exhibit "A", there are no other known connections with Debtor, her creditors or any other party in interest, their respective attorneys and accountants, the Judge appointed to Debtor's case, the United States Trustee, or any person employed by the Office of the United States Trustee or the court.

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

**3**

LISA HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 395-1000
E-mail: lholder@kleinlaw.com

Attorneys for Jeffrey M. Vetter, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.  10-16183-A-7 |
| SALMA H. AGHA, | Chapter  7 |
| Debtor. | DC No. KDG-1 |
| | ***SUPPLEMENTAL* DECLARATION OF LISA HOLDER REGARDING ORDER AUTHORIZING TRUSTEE TO EMPLOY ATTORNEYS EFFECTIVE SEPTEMBER 13, 2012** |
| | Date:       N/A |
| | Time:       N/A |
| | Place:      U.S. Bankruptcy Court<br>1300 18th Street, Ste. A<br>Bakersfield, California |
| | Judge:     Hon. Fredrick A. Clement |

I, Lisa Holder, declare:

1.    This supplements my declaration filed on November 8, 2012, document number 73 on the docket.  The Court entered an order authorizing Klein, DeNatale's employment as attorneys for the trustee on November 21, 2012, document number 77 on the docket.

2.    On or about December 17, 2012, I received emails from Salma Agha's bankruptcy attorney, William Cummings, forwarded from Jeffrey Vetter, trustee, stating that Klein, DeNatale represented Salma Agha several years ago and that Klein, DeNatale has a conflict of interest in representing the trustee.  My conflict check had not picked up prior representation of Dr. Agha.

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

Exhibit   P5
Page   6

3.    I ran a search in my conflicts system under the name "Salma Khan," which returned a result indicating that Klein, DeNatale represented Salma Khan in 2003-2004 in construction defect litigation. Dr. Agha sued the builder of her personal residence, and Klein, DeNatale represented her. Based on the information in the firm's system, Klein, DeNatale completed its representation of Dr. Agha in or about January 2005, so Dr. Agha is a former client. The specific attorney who represented Dr. Agha left the firm in or about May 2010.

4.    Dr. Agha's petition did not disclose that she had used any other names during the eight years before the petition date. *See* page one of document number 1 on the Court's docket.

5.    Under the California Rules of Professional Conduct, Rule 3-310(E), "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, **by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.**" *See* Rule 3-310(E), emphasis added.

6.    Bankruptcy Rule 2014 requires an applicant to be employed by the trustee  to provide a verified statement showing "all of the person's connections with the debtor . . ."

7.    11 U.S.C. § 327 provides that the trustee may employ an attorney that does not hold or represent and interest adverse to the estate, and that is disinterested, to represent the trustee in carrying out his duties.

8.    Here, the firm represented Dr. Agha against the builder of her personal residence regarding construction defects at the residence. This representation began in 2003 and concluded eight or so years ago. I do not believe the firm obtained confidential information regarding Dr. Agha in her construction defects case material to the firm's employment by the trustee in her bankruptcy case almost eight years later.

9.    I personally knew nothing regarding Dr. Agha other than the information I have obtained as attorney for the trustee, until alerted to the prior representation by Attorney Cummings.  Then I briefly reviewed the firm's electronic record of its representation of  Dr. Agha to determine the nature of the former representation. I reviewed the final settlement

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

39C2022.DOC                    2

Exhibit    B
Page

1   agreement related to the prior representation, a transmittal letter to Dr. Agha requesting that

2   she sign the agreement, and the dates the representation commenced and concluded, and the

3   firm's record of billings and payments received. In this review, I saw no confidential

4   information relative to my representation of the trustee in this matter.

5          10.    For those reasons, I believe that the firm and I do not have confidential

6   information regarding Dr. Agha arising from the firm's prior representation of Dr. Agha

7   related to the firm's and my representation of the trustee in this case.

8          11.    Because the firm's representation of Dr. Agha concluded some eight years

9   ago, the firm does not "hold or represent an interest adverse to the estate." The firm is

10  disinterested because it is not a creditor of Debtor and has no other relationship with Debtor.

11         12.    My knowledge regarding Dr. Agha's file with the firm is based on my review

12  of her file as described above. The firm's file is its business record made at or near the time

13  of the events recorded by someone with personal knowledge of the events, was kept in the

14  course of the firm's regularly conducted business, and making the records is a regular

15  practice of the firm. For those reasons, this testimony is admissible under FRE 803(6).

16         13.    The above statements are within my personal knowledge and I can testify

17  competently regarding these statements if called as a witness.

18         I declare under the penalty of perjury under the laws of the State of California and of

19  the United States that the foregoing is true and correct.

20         Executed this 2nd day of January, 2013 at Bakersfield, California.

21

22                                         LISA HOLDER

23

24

25

26

27

28

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

Exhibit    B
Page       8

```
 1                 UNITED STATES BANKRUPTCY COURT

 2                 EASTERN DISTRICT OF CALIFORNIA

 3                 HON. FREDRICK E. CLEMENT, JUDGE

 4

 5
    In the Matter of          ) Case No. 10-16183-A-7
 6                            ) KDG-1; KDG-2
    SALMA AGHA,               ) Chapter 7
 7                            )
               Debtor.        ) Motion to Employ
 8  _____) Lisa Holder as Attorney,
                              Continued Motion to Sell
 9

10

11

12
    Wednesday, January 23, 2013          Bakersfield, California
13

14

15
                REPORTER'S TRANSCRIPT OF PROCEEDINGS
16

17

18

19

20

21

22  Linda A. Gorman, RMR
    C.S.R. License #12693
23

24

25
```

Exhibit ___C___
Page ___9___

```
 1  APPEARANCES OF COUNSEL:

 2  For the Debtor:        CUMMING & ASSOCIATES
                           3080 Bristol St., Ste. 630
 3                         Costa Mesa, CA  92626
                           BY:  WILLIAM R. CUMMING
 4
    For BBG, Ltd.,         LAW OFFICE OF DAVID N. CHANDLER
 5  Interested Party:      1747 4th Street
                           Santa Rosa, CA  95404
 6                         BY:  DAVID N. CHANDLER

 7  For the Trustee,       KLEIN, DeNATALE, GOLDNER,
    the Moving Party:      COOPER, ROSENLIEB & KIMBALL, LLP
 8                         4550 California Avenue, 2nd Floor
                           Bakersfield, CA  93309
 9                         BY:  LISA HOLDER

10  Also Present:          Bruce Breitman
                           Jeffrey Vetter
11                         Salma Agha

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit ___C___
Page ___10___

1  Wednesday, January 23, 2013          Bakersfield, California

2  1:00 p.m. Calendar

3          THE COURT:  Item No. 10.  There are two matters in

4  this case.  I'm going to call them in the order indicated on

5  the calendar.

6          As is my custom, when I have multiple matters, I'll

7  take all of the appearances on the front end.  And if you

8  intend your appearance to be something less than on all

9  matters, you should so indicate at the time of the initial

10  appearance.

11          This is the matter of Salma Agha, 10-16183.  The first

12  motion is a motion to employ Lisa Holder of Klein DeNatale as

13  attorney.

14          Are there appearances on this matter?

15          MS. HOLDER:  Lisa Holder on behalf of the moving

16  party.

17          THE COURT:  Ms. Holder, good afternoon.

18          Are there any --

19          MR. CUMMING:  Good afternoon, Your Honor.  Appearing

20  telephonically, William Cumming on behalf of the debtor, Salma

21  H. Agha.

22          THE COURT:  Good afternoon.

23          Are there any other appearances?

24          THE DEBTOR:  I'm Salma Agha.

25          THE COURT:  Hello.

Exhibit  C
Page  11

1              Mr. Cumming is your attorney?

2              THE DEBTOR:  Yes, correct.

3              THE COURT:  Mr. Cumming, you understand your client is

4    in the room?

5              MR. CUMMING:  Yes, Your Honor.

6              THE COURT:  Ms. Agha -- am I saying it right, "Agha"?

7              THE DEBTOR:  "Agha."

8              THE COURT:  Hi.

9              Since Mr. Cumming is your attorney, he gets to do the

10   talking today; but we, of course, welcome you.  And you're

11   welcome to sit and to listen, to make notes of things you'd

12   like to speak to Mr. Cumming about after the hearing, so thank

13   you.

14             Any other appearances on this matter?

15             Is Mr. Chandler appearing?

16             MR. CHANDLER:  Yes, Your Honor, David Chandler

17   appearing.  I'm not appearing on the motion to employ

18   counsel.

19             THE COURT:  Very well.

20             Any other appearances in any of the Agha matters?

21             No response to the call --

22             MR. BREITMAN:  Yes, Your Honor, Bruce Breitman.  I'm

23   here in the courtroom.

24             THE COURT:  Okay.  Can you step up to the podium so I

25   can get your name.

Exhibit _C_
Page _12_

1          MR. BREITMAN:  Yeah.  Bruce Breitman,

2   B-R-E-I-T-M-A-N.  I represent BBG, Limited.  I'm not counsel.

3   I'm a party that's made a bid.

4          THE COURT:  Mr. Chandler is your --

5          MR. BREITMAN:  Mr. Chandler represents me.

6          THE COURT:  And I will say the same thing to you as I

7   did to Ms. Agha.

8          Welcome, we're glad you're here, but Mr. Chandler gets

9   to do the talking.  Do feel free to sit, to listen, to make

10  notes of things you'd like to speak to him about.

11         MR. BREITMAN:  I'll do that.

12         THE COURT:  Very well.

13         Any other appearances in any of these matters?

14         There is none.

15         With respect to the motion to employ Klein DeNatale,

16  the tentative is to grant.

17         Did anyone wish to speak in opposition?

18         I am hearing nothing.

19         The tentative will be the ruling, and the motion will

20  be granted.

21         MS. HOLDER:  Thank you, Your Honor.

22         THE COURT:  Thank you.

23         We'll take up the other matter involving Salma Agha,

24  and this is a continued motion to sell.

25         I do recall our first visit in this issue raising some



Exhibit   C
Page   13

1  fascinating questions.  We have had the opportunity to look in

2  that with a great deal more detail.  I do want to thank each of

3  the parties for their thoughtful and articulate briefs on these

4  issues, somewhat difficult and esoteric.

5          I don't actually think I came down any different than

6  where I started, but I do appreciate your efforts to clarify.

7          Does anyone wish to speak -- before we actually call

8  the sale, should we do so, did anyone wish to speak in

9  opposition to the sale?

10          MR. CUMMING:  Your Honor, this is Bill Cumming once

11  again, appearing telephonically.

12          I would like -- I did have an opportunity to review

13  the Court's tentative ruling and, with the Court's permission,

14  I would like to address a couple of issues.

15          THE COURT:  That would be fine.  Go ahead.

16          MR. CUMMING:  Fantastic.

17          The first issue I'd like to address is with respect to

18  the scheduling of the lawsuit with respect to Bruce Breitman

19  and BBG, Ltd.  The basic issue is whether the -- this specific

20  lawsuit was properly scheduled.

21          As set forth in the opposition papers, the general

22  standard that the court used -- or courts should use in looking

23  at this is that the scheduling of an asset has to be accurate

24  and complete and has to give the trustee notice of the

25  existence of the asset and the potential value of the asset so



Exhibit    C
Page       14

1    the trustee has the opportunity to further investigate.

2            In this case, in Schedule B, and more specifically

3    item twenty-one, we identified a potential lawsuit against SF

4    Night Life.  We identified the address in which the business

5    operated in.  The initial value was fifty thousand dollars

6    because that was the amount at issue with respect to an escrow

7    account.

8            The Court's tentative ruling, my understanding of it,

9    states that the current lawsuit against Mr. Breitman and BBG

10   were different parties, a different potential lawsuit in

11   comparison to the SF lawsuit, and different rights sued upon.

12   I think taking perhaps a closer look at the facts, the Court

13   might reach a different conclusion, or perhaps give

14   consideration to our arguments.

15           And specifically, Your Honor, it's this.  In the

16   papers that we've filed, I think we took a lot of time and

17   effort trying to identify specific testimony in the two

18   meetings of creditors that occurred between Mr. Vetter and the

19   client.

20           And just to briefly summarize that, Your Honor, the

21   moving papers -- or the document that we filed identified the

22   fact that Vodka from Around the World decided to invest into

23   this business.  My client owned approximately seventy percent

24   of that.  An asset purchase agreement was entered into to

25   essentially use this facility.  There was a problem with the



Exhibit   C
Page      15

1    lease.  And it's my client's contention that there were

2    misrepresentations regarding the lease, and she intended to sue

3    SF Night Life because that was the party.

4         But I think the important thing, Your Honor, that

5    perhaps wasn't focused on, at least in the tentative ruling, is

6    that it was very clear in the meeting of creditors that Ms. --

7    or Dr. Agha was going to maintain a suit against SF Night Life

8    and its principals, which opened the door to those individuals

9    who were associated with or affiliated with SF Night Life.

10        The trustee asked about the principals but never got

11   details about names and those types of things.  Mr. Breitman

12   and BBG fell into the category of those principals because --

13   he was ultimately involved in this transaction because the

14   whole purpose of this lawsuit related to one overriding thing,

15   and that was events and transactions that related to the

16   purchase of this building.

17        And when Dr. Agha said she was going to bring a

18   lawsuit against SF and the principals relating to this

19   transaction, that had to have included BBG and Breitman because

20   those were individuals that were part of the transaction.

21        So I think we take a different look about whether BBG

22   and Breitman were different parties or different potential

23   lawsuits or different rights being sued upon.  Knowing that the

24   debtor identified additional principals that be a part of this

25   lawsuit, I think that would encompass that.

**Exhibit** C
**Page** 16

1        And whether the trustee decided to find out the names
2  and other relevant information about the principals, that was a
3  decision that he could have pursued, but ultimately he didn't.
4        And the question is, should my client lose the
5  opportunity to vindicate her rights because the trustee, during
6  the 341 hearing, didn't decide to go a little deeper and ask
7  who these people were that were the, quote, principals of SS --
8  of SF Night Life.  And I think by making that decision by not
9  going -- if he would have gone deeper and decided to ask who
10  those people were, the names -- another admission would have
11  come up.
12        But, unfortunately, those questions weren't asked, and
13  I don't believe it's proper for my client to lose this -- to
14  not have the ability to pursue this lawsuit, plus forgo or
15  forfeit the money already spent because the trustee decided not
16  to investigate further.
17        THE COURT:  Mr. Cumming, let me pose a couple of
18  questions to you.
19        And I'm looking back again at the schedules, Schedule
20  B, item twenty-one.  There's a reference to a "Potential
21  Lawsuit vs. SS Nite Life" located at 13 Norfolk, San Francisco,
22  94103.  You agree that that does not fully and properly put the
23  trustee on notice as to Mr. Breitman and these other entities.
24  Your contention is that this occurred at the testimony of the
25  meeting of creditors.

Exhibit C
Page 17


1         Do I have the argument right?

2         MR. CUMMING:  Partially, Your Honor.

3         I think when -- when we decided to put the reference

4    SS Nite Life, the -- the lawsuit was against the entity, but

5    there's also the principals, shareholders, representatives of

6    that company, as well.

7         And so it came out during the 341, that in addition to

8    SS Nite Life, there are -- other individuals that made up the

9    company were part of that, as well.  So we didn't put SS Nite

10   Life and principals or -- and shareholders.  We just put the

11   name of the corporation.

12        THE COURT:  Right.

13        But all you've really identified as an adverse party

14   is SS Nite Life, right, in the schedules?

15        MR. CUMMING:  Yeah.  For purposes of Schedule B, we

16   just identified the corporate entity.

17        THE COURT:  And your contention is, these are so

18   inextricably intertwined, that's sufficient disclosure.

19        MR. CUMMING:  Well, my -- our position is -- we

20   identified the lawsuit.  We discussed in great detail with the

21   trustee the nature of the lawsuit, how it arose, and that SS

22   Nite Life was not only the corporate entity but also the

23   individuals that made up the corporate entity, or the

24   principals.

25        THE COURT:  Okay.

Exhibit ___C___
Page ___18___

1        Anything else?

2        MR. CUMMING:  Well, with respect to the scheduling of

3    the lawsuit, no, Your Honor.

4        But there would be, of course, the other issue about

5    identifying debtor's interest in Vodka from Around the World,

6    which I would like to briefly address and --

7        THE COURT:  Yes, go ahead.  And let's take them all at

8    one time.

9        So, please proceed, Mr. Cumming.

10        MR. CUMMING:  Thank you, Your Honor.

11        Well, I did, again, have an opportunity to review the

12    Court's tentative ruling, and I am familiar with the relevant

13    case law.

14        With respect to the statement of financial affairs and

15    identifying Vodka in that location and not on Schedule B, I

16    think what -- what needs to be perhaps emphasized is at the

17    time of the bankruptcy filing, Vodka from Around the World had

18    no assets.  It was a closed business, and there were no assets

19    to schedule.

20        The Court's tentative made a reference to the fact

21    that even if that's the case, the business might need to be

22    wound up and there could be some assets that might need to be

23    sold.

24        And, therefore, a different approach could have been

25    scheduling the assets as unknown.  I suppose that --

Exhibit  C
Page  19

1          THE COURT:  What's the trustee selling then if

2   there -- you're telling me there's nothing there -- there was

3   nothing there on the date of the petition?  I guess I don't

4   understand what the trustee is selling, if that's true.

5          MR. CUMMING:  Yeah.  The date of the petition there

6   were no physical tangible assets and --

7          THE COURT:  But there was an interest in an LLC.

8          MR. CUMMING:  Yeah, there was an interest in an

9   LLC --

10         THE COURT:  Isn't that the asset?

11         MR. CUMMING:  Well, the LLC had no assets.

12         THE COURT:  Well, right.

13         But if you have a -- you have an interest in an LLC,

14  isn't the asset the interest in the LLC?  And you may say it

15  has no value or you may say it has unknown value or you may say

16  marginal value, but that still is an asset, isn't it?

17         MR. CUMMING:  Well, if -- if the -- if the corporate

18  entity has any tangible assets, then I think it'd be proper in

19  Schedule B to say, you know, what it might be or, perhaps,

20  "unknown."

21         But I think what's unique about this specific asset or

22  this specific corporation or LLC, is that it didn't have any

23  tangible assets.  So the idea was to take that and identify it

24  in the statement of financial affairs, identify when the

25  business started, when it stopped.

Exhibit   C
Page   20

1          And so even putting "unknown" as the value is really

2   not correct because there was no asset at that time.  And that

3   was the rationale for putting the statement -- that was the

4   rationale for putting -- or identifying Vodka from Around the

5   World in the statement of financial affairs.

6          THE COURT:  And so now -- now the LLC has acquired

7   assets and is moving forward.

8          MR. CUMMING:  Well, the LLC more recently -- 'cause

9   remember that the debtor only had -- she had a seventy percent

10  interest in this LLC.  There were other individuals that had an

11  interest in the company and wasn't till later that the LLC

12  desired to pursue this lawsuit.

13         But at the time of filing, there was no tangible

14  assets that could be sold, and that was the rationale to why it

15  was put in the statement of financial affairs.

16         THE COURT:  Well, but aren't you contradicting

17  yourself?

18         You say it has a cause of action, but it has no

19  value.  And the answer is, it has the cause of action.  Isn't

20  that the value?  Now, you can argue it's unknown, but isn't --

21  first of all, shouldn't we be focusing on the ownership in the

22  LLC?

23         And second of all, it does have something of value.

24  It has a cause of action.  It may not be liquidated, but it

25  still owns it.  We can argue about whether it's worth anything



Exhibit  C
Page  21

1   or how much, but that's an asset, isn't it, of the LLC?

2          MR. CUMMING:  Well, I -- I understand the Court's

3   position on that, and I did give that some thought.

4          And I think in response to that, Your Honor, is at

5   that time it was -- at the time in which the bankruptcy

6   documents were filed, the LLC, as the corporate entity, more

7   specifically, the members, whether -- whether they were aware

8   of it, whether they decided to pursue it, you know, it just

9   wasn't -- wasn't something that was necessarily on the radar

10  screen, per se.

11         THE COURT:  But they did have the cause of action,

12  right?

13         MR. CUMMING:  In -- well, from a statute of

14  limitations perspective, a breach of contract, whether it

15  existed at that time, hard to say.  I don't know if it was a

16  valid, enforceable cause of action at that point in time, and

17  that's -- that's the issue.

18         THE COURT:  Okay.  Very well.

19         Anything else, Mr. Cumming?

20         MR. CUMMING:  Yes, Your Honor.  A couple other points,

21  and I'll -- I'll be brief.

22         With respect to scheduling assets, my moving papers

23  discuss -- discuss two different types of cases.  There are

24  cases in which if an asset isn't scheduled, then it's not part

25  of the -- it remains a part of the bankruptcy estate if a



Exhibit   C
Page      22

1   bankruptcy case is ultimately closed.

2          However, the case which I referenced in my papers,

3   Morlen, M-O-R-L-E-N, v. Universal Guaranteed Life Insurance,

4   298 F.3d 609, that case stands for the proposition that

5   it's not a completely rigid analysis.  What I mean by that is,

6   if an asset isn't scheduled, it doesn't by default not become

7   part of the bankruptcy estate.

8          In that case, in the Morlen case, the court ruled that

9   a -- the plaintiff in this case, or in this case the debtor,

10  filed a class action lawsuit, and the class action wasn't

11  properly identified on the schedules.  However, the court

12  ultimately determined that the debtor could pursue that

13  because -- a couple reasons.  One, the existence of the lawsuit

14  was discussed during the meeting of creditors.

15         In this case, the trustee specifically made the

16  decision that it was not going to pursue it, and the length of

17  time between the closing of the bankruptcy case and the

18  decision to --

19         THE COURT:  It's a laches case, though, isn't it?

20         MR. CUMMING:  Laches is one factor that the court

21  determined or relied upon in making the decision that the cause

22  of action was part of the bankruptcy estate and, therefore, the

23  debtor could pursue it.  Laches is one of the factors.

24         But the other factors, Your Honor, is that also that

25  it was discussed during the 341, and also the trustee made the

**Exhibit** C

**Page** 23

1   decision that it was not going to pursue it.  And in this case,

2   Your Honor, there was much discussion about this -- potential

3   assets and her decision to attempt to move forward.

4           I just think the Morlen case -- the Morlen case

5   ultimately stands for the proposition that just because an

6   asset isn't on a schedule doesn't, by default, mean it's not

7   properly scheduled.  I think you have to look more at all the

8   relevant facts to determine if the court, or in this case the

9   trustee, had notice and had an opportunity to further

10  investigate.

11          And in this case, there was lots of discussion about

12  it.  And then we tried to do our best in the moving papers to

13  show that there was a lot of discussion about it; and we think

14  at the end of the day, it was properly scheduled.

15          THE COURT:  Thank you, Mr. Cumming.

16          I'm going to turn next to Mr. Chandler and then to Ms.

17  Holder for thoughts on this.

18          Mr. Chandler?  Mr. Chandler?

19          MR. CHANDLER:  Yes, Your Honor.

20          THE COURT:  Did you wish to be heard on the motion to

21  sell?

22          MR. CHANDLER:  If the Court will entertain argument,

23  yes.

24          THE COURT:  Well, I've heard from Mr. Cumming.  I'd

25  certainly be happy to hear your response.



Exhibit C
Page 24

1        MR. CHANDLER:  Well, Your Honor, I appreciate his

2    argument.  Mr. Cumming's argument was very interesting, but I

3    don't think that's how we fill out schedules in these cases.

4            We're -- we're required to give the trustee enough

5    information that the trustee can look at the schedules and

6    figure it out from the schedules.  He doesn't have to make an

7    independent evaluation.

8            In this case, all I know about is what is in the

9    schedules.  And the schedules are a far cry from disclosing

10   either one of these assets, as the Court pointed out, with the

11   LLC.

12           The LLC held the cause of action against parties that

13   weren't disclosed in the Schedule B, and I'm not quite sure how

14   the trustee was supposed to imaginatively determine that

15   without further investigation, which the debtor was not very

16   forthcoming on any of her information.

17           Even the use of her name has -- has -- has become a

18   problem in the conflict search that Ms. Holder did because she

19   uses different names at different times.  And in this case, she

20   used a name that she hadn't used before and doesn't typically

21   use, and so I think there -- there is some inference there that

22   it was her intent not -- not to schedule these changes.

23           But in any event, the -- I think the Court's analysis

24   in the tentative is exactly correct.  It's not -- it's not a

25   disclosure of any one of these assets.  The trustee wouldn't

Exhibit    C

Page    25

1   have known where to go, where to look, what to do to evaluate

2   the merits of this.

3          And Mr. Cumming argues that it suddenly became known

4   to the debtor.  I'm not quite sure how that happened that it

5   suddenly became known and came into focus and she couldn't have

6   told the trustee about it.  You can always call up the trustee

7   later and say, "Gees, I found this -- this nuance in the

8   contract, and I think there might be a claim here.  Are you

9   interested?"  That didn't happen.

10          Basically, what she's trying to do is trying to run

11  everybody sideways so nobody is looking at the real facts in

12  the case.  The real facts in the case is she didn't disclose

13  it.  She's trying to pursue this cause of action, and we'll

14  get -- in the next phase, we'll get to what the value of that

15  might be.

16          But I -- I think there's just no question that she --

17  she did not disclose it.  And what she put in the statement of

18  affairs, again, just like the use of her name, is evidence of

19  her intent to conceal.

20          For the life of me, I don't understand why the trustee

21  didn't go after a 727 claim in this -- to revoke the discharge

22  of this case.  It was a very short window where he could have

23  done that, and I can't understand why he didn't do that.

24          But certainly what the debtor did in this case was not

25  something that was really contemplated by the code.



Exhibit   C
Page   26

1          Nor was it within the mainstream of the practice in

2    the -- in the Eastern District or in the -- in the Northern

3    District.  It's just not within the mainstream of practice.  We

4    don't do that, and there's good reason.  We put the trustee on

5    notice of these things so when -- when that discharge is

6    entered and that case is closed, we all know where we stand.

7          That's all I have.  Thank you.

8          THE COURT:  Thank you.

9          Ms. Holder, do you wish to be heard?

10         MS. HOLDER:  Yes, Your Honor, a few things.

11         First, I would submit on the tentative ruling and ask

12   the Court to enter the tentative as the order of the Court.

13         Second, I was not served with the opposition, and I

14   don't waive that lack of service.

15         Regarding the trustee's knowledge, the trustee had no

16   complaint at the time that he conducted the 341 meeting.  The

17   complaint was filed well after the fact, so the trustee

18   couldn't have had any knowledge of the information contained in

19   the complaint.

20         I've read the meeting of creditors transcript, some

21   forty odd pages.  Vodka from Around the World is never

22   mentioned.  The only thing mentioned, when talking about

23   business enterprises, is Ms. Agha saying, "Me, I, mine."  So

24   there's never any disclosure of an active LLC trying to recover

25   assets.



Exhibit ___C___
Page ___27___

1        As a side note, the discussion of SF Night Life and

2   its principals being contemplated as potential defendants, it's

3   my understanding that Mr. Breitman and BBG are a -- he's a real

4   estate broker, and that would be an agent and certainly not a

5   principal of any company.

6        On the issue of who's responsible for disclosing

7   assets versus ferreting out assets, I think the responsibility

8   is firmly on the debtor.  And the trustee certainly is required

9   to investigate assets that he has reason to know exist, which

10  he clearly did through forty some pages of a meeting of

11  creditors transcript, but the asset simply wasn't scheduled.

12       And the trustee did an investigation.  It wasn't

13  ferreted out because maybe it was intentionally hidden.  Maybe

14  it wasn't, but it wasn't described anywhere.  And so it wasn't

15  disclosed, so it was not abandoned upon the closing of the

16  case.

17       And regarding the debtor's interest in Vodka from

18  Around the World and whether it had any value on the petition

19  date, clearly the debtor believes that this claim has value now

20  and the claim should have been scheduled, as well as the

21  interest in the LLC.

22       That's all I have, Your Honor.

23       THE COURT:  Thank you.

24       I am ready to rule, and I'm going to make the

25  tentative the ruling.  The sale will be approved.

**Exhibit** _C_
**Page** _28_

1          THE DEBTOR:  Excuse me, Your Honor.

2          THE COURT:  I'm sorry, Ms. Agha, no.  The answer is, I

3    told you at the beginning you do not get to speak.  Your

4    attorney speaks for you.

5          THE DEBTOR:  Can I dismiss my attorney at this

6    point --

7          THE COURT:  No, you cannot, Ms. --

8          THE DEBTOR:  -- because I think he has not represented

9    me adequately.

10         THE COURT:  Ms. Agha, we are going to rule on this at

11   this time, and you can dismiss him later, but I'm not going to

12   hear from you.

13         The motion is granted.

14         The law is quite clear that the knowledge of the

15   trustee is irrelevant, and I note the Navistar International

16   Transportation Corporation case cited at 950 F.2d 524,

17   pertinent page being 526.  It's an Eighth Circuit case from

18   1991.

19         The question is whether or not these assets were

20   scheduled properly.  "Properly scheduled" under 554, in my

21   view, means full and fair disclosure.  To put it in another

22   fashion, it means all of the cards on the table face up at the

23   outset.  That is not the case here.  The scheduling of the

24   lawsuit only indicates it was against SS Nite Life.

25         The Pace case, which is Ninth Circuit Bankruptcy



Exhibit  C
Page  29

 1  Appellate Panel case of 146 B.R. 562 at 566, makes clear that

 2  rights that are intertwined are not disclosed by partial

 3  disclosure so I do not find the lawsuit to have been

 4  disclosed.  It remained property of the estate.

 5          The LLC was also not disclosed.  It's not listed in

 6  the schedules.  The listing in the statement of financial

 7  affairs is not sufficient.  There was an interest in the LLC,

 8  and that is sufficient.  The debtor could argue about the value

 9  of that, but it should have been listed and it was not.

10          Moreover, the law in this circuit is quite clear that

11  postpetition appreciation of an asset belongs to the Chapter 7

12  trustee, and that is what apparently has occurred here.  Or

13  maybe it hasn't appreciated, but it has just become more

14  liquidated.  Either way, this is the trustee's asset to sell so

15  we are going to proceed with the sale.

16          That said, we have identified a buyer as BBG,

17  Limited.  Sale price is fifteen thousand dollars, a private

18  sale with an overbid opportunity.

19          Other than BBG, is there anyone in the courtroom or is

20  there anyone on the telephone that wishes to serve as a bidder

21  in this matter?

22          You wish to be a bidder, Ms. Agha?

23          THE DEBTOR:  Correct.

24          THE COURT:  Very well.

25          You will step up to the podium, please.

Exhibit   C
Page      30

1        Mr. Cumming, are you hearing this?

2        MR. CUMMING:  Yes, Your Honor.

3        THE COURT:  Your client wishes to serve as a bidder in

4   this auction.  Are you aware of that?

5        MR. CUMMING:  Yes, I am, Your Honor.

6        THE COURT:  Very well.

7        Is there anyone else who wishes to serve as a bidder,

8   other than --

9        And, Mr. Breitman, please step forward, as well.

10       Is there anybody besides the debtor -- and I think the

11  actual bidder is BBG, Limited, not yourself personally.

12       Is that right, Mr. Breitman?

13       MR. BREITMAN:  That's correct.

14       THE COURT:  You're welcome to sit there next to Ms.

15  Agha or next to Ms. Holder, if that's to your preference.

16       MR. BREITMAN:  I'll go sit next to Ms. Holder.

17       THE COURT:  Is there anybody else who wishes to serve

18  as a bidder in this matter?

19       I hear no response.

20       Ms. Holder, please assist me, if you would.

21       Was there any prequalification or minimum bid terms

22  that your notice set forth?

23       MS. HOLDER:  Yes, Your Honor.

24       Anyone intending to bid must bring a fifteen hundred

25  dollar refundable deposit in certified funds to court, and I



Exhibit  C
Page  31

1  understand that Ms. Agha has brought fifteen hundred dollars --

2          THE COURT:  Would you like to inspect that to ensure

3  that you -- that it meets your criteria?

4          MS. HOLDER:  I would ask the trustee to do that.

5          THE COURT:  Okay.  Mr. Vetter?

6          And Ms. Agha will turn the cashier's check -- is that

7  what it is, Mr. Vetter?

8          MR. VETTER:  Yes, sir.  A cashier's check in the

9  amount of fifteen hundred dollars, correct.

10          THE COURT:  And you're satisfied as that meeting the

11  qualification?

12          MR. VETTER:  Yes, I am.

13          THE COURT:  Mr. Vetter will hold that until the end of

14  the auction.  If you are the unsuccessful bidder, he will

15  return it to you.

16          Is there any desire or intention to separate these --

17          Yes, ma'am?

18          THE DEBTOR:  So may I make a comment, please.  I

19  really --

20          THE COURT:  We're going to be bidding on this asset.

21  We're not going to take argument.

22          THE DEBTOR:  But, sir, just one comment.

23          THE COURT:  No.  We're going to sell this asset.  And

24  if you're not going to participate by the rules I've set, I'll

25  have the bailiffs remove you.

**Exhibit** ___C___
**Page** ___32___

1          So, the question is, do you wish to be a bidder or

2     not?

3          THE DEBTOR:  I wish to be a bidder.

4          But I think I'm the only legitimate bidder in this,

5     not BBG, Ltd.

6          THE COURT:  Why?

7          But I'm not going to re-entertain argument of

8     something we've already done.

9          THE DEBTOR:  There is no re-entertainment of

10    argument.

11         I'm just stating the fact that this lawsuit was never

12    advertised publicly.  It was privately told to BBG, Ltd. that,

13    hey, this lawsuit is happening so you need to bid on it.

14         THE COURT:  Sure, it was.  There was a notice that was

15    given to all creditors in the case.

16         Did this not go out to everyone, Ms. Holder?

17         MS. HOLDER:  Yes, Your Honor.

18         Actually, BBG approached the --

19         THE COURT:  So it was advertised.

20         THE DEBTOR:  BBG, Ltd. is not a creditor.

21         THE COURT:  Well, it went out to BBG and all --

22    anybody else like BBG.

23         So the answer is, it at least went to all creditors so

24    yes, there was -- there was notice.

25         THE DEBTOR:  But BBG, Ltd., is a defendant in the

Exhibit     C
Page        33

1    lawsuit, not a creditor.

2            THE COURT:  I understand that, and --

3            MS. HOLDER:  Your Honor, if I may be heard.

4            THE COURT:  Sure.

5            MS. HOLDER:  I also gave notice to all the other

6    members of the Vodka Around the World, LLC, because I thought

7    they may be potential buyers of the LLC interest, and they are

8    not here.

9            THE COURT:  So we have it noticed to creditors, we

10   have BBG, and we have the other Vodka owners noticed.

11           MS. HOLDER:  Yes, Your Honor.

12           THE COURT:  Tell me why that is not --

13           THE DEBTOR:  BBG is not a -- a creditor --

14           THE COURT:  Doesn't have to be.

15           THE DEBTOR:  BBG is a defendant.

16           THE COURT:  Doesn't have to be.

17           THE DEBTOR:  So was SF Night Life also notified?  Did

18   you notify SF Night Life?

19           Did you notify the other potential defendants, Tony

20   Carachi, because BBG knew that Tony Carachi had had a case

21   against SF Night Life, which he did not disclose to me at the

22   time of --

23           THE COURT:  Ms. Agha -- Ms. Agha -- Ms. Agha, it's a

24   question.  I don't mind you asking the question, but I'm not

25   going to take these monologues.



Exhibit   C
Page      34

1           So the question to Ms. Holder is, did you notify --

2           THE DEBTOR:  SF Night Life and Tony Carachi, who

3  is --

4           THE COURT:  Just those two?  Is that all you want to

5  know, if they were notified?

6           THE DEBTOR:  Correct.

7           And the Grossman brothers.

8           THE COURT:  Okay.

9           Ms. Holder, are you able to answer this question?

10          MS. HOLDER:  I could refer to the proof of service,

11 Your Honor.  I notified everyone that was required to be

12 notified under the Rules of Civil Procedure --

13          THE COURT:  Let's take a look at the --

14          MS. HOLDER:  -- and additional people that I thought

15 might be interested in purchasing the asset.

16          THE COURT:  Would the -- would you have included on

17 the proof of service persons who might be bidders but were not

18 necessarily entitled to notice by law?  In other words, would

19 you have necessarily listed them on the certificate of

20 service?

21          MS. HOLDER:  Yes, if I was aware of their existence

22 and their interest in the asset --

23          THE COURT:  In other words, you didn't just send them

24 a letter.  You included them on the proof of service --

25          MS. HOLDER:  Yes, Your Honor.



**Exhibit** _C_
**Page** _35_

1          THE COURT:  Okay.

2          Let's take a look at the certificate of service.

3          Okay.  I see a proof of service with what appears to

4   be the Court's matrix.

5          There is a second proof of service, which includes the

6   following persons:  The buyer's attorney, who is a Peter

7   Zouras, Z-O-U-R-A-S; yourself, ma'am, Ms. Agha; Jamon,

8   J-A-M-O-N, Hicks of the Cochran firm in Los Angeles; Mr.

9   Chandler; Mr. Vetter; LLC member Muhammad Ashraf -- I think.

10  He's a physician apparently in Bakersfield.

11         THE DEBTOR:  He's a colleague of mine.  I'm also a

12  physician here.

13         THE COURT:  Okay.  But he's an LLC member?

14         THE DEBTOR:  Correct.

15         THE COURT:  Okay.

16         I'm seeing Mr. Breitman with BBG.

17         I'm seeing -- and I'm going to get this name wrong,

18  and I'm sorry.  It's S-A-T-Y-A, last name, A-R-Y-A, also a

19  physician here in Bakersfield.

20         THE DEBTOR:  Correct.

21         THE COURT:  And then I see a Rosen Agelov,

22  A-G-E-L-O-V.  I see Mr. Cumming.  I see LLC member S-Y-E-D,

23  last name, S-A-G-H-I-R.  I see --

24         I think this is another name for you, ma'am.  It's

25  Agha Kahn, K-A-H-N.

**Exhibit** _____ C

**Page** _____ 36

1        THE DEBTOR:  That's me, Your Honor.

2        THE COURT:  Right.  I see you in a couple of places.

3        MS. HOLDER:  Your Honor, that's the agent for service

4   of process for the LLC under the --

5        THE COURT:  Right.  So you're saying who was missed

6   that should have been noticed?

7        THE DEBTOR:  SF Night Life that was so -- that was

8   mentioned everywhere in the bankruptcy papers that -- SF Night

9   Life was not mentioned.

10       In addition to other people --

11       THE COURT:  Your attorney gets to do the argument.

12  I'm going to let you ask questions because you're a bidder, but

13  I'm not going to entertain argument from you.

14       So who else -- just so that your attorney knows, who

15  else do you contend should have been noticed?  And then I'll

16  hear from your attorney.

17       THE DEBTOR:  SF Night Life.

18       THE COURT:  Who else?

19       THE DEBTOR:  Tony Carachi.

20       THE COURT:  Tony Carachi.

21       THE DEBTOR:  Grossman brothers.

22       THE COURT:  How do you spell "Carachi"?

23       THE DEBTOR:  C-A-R-A-C-H-I.

24       THE COURT:  Thank you.

25       The Grossman brothers.



Exhibit    C
Page      37

1        And who else?

2        THE DEBTOR:  Bob and Gary Grossman.

3        THE COURT:  Bob and Gary Grossman.  Okay.

4        Who else?

5        THE DEBTOR:  I think, potentially, this should have

6    been a public notice.  It's an attempt for the trustee to

7    collect --

8        THE COURT:  I'm not going to take argument from you.

9    I'm going to warn you one more time.  I've asked you to

10   identify the people that you think should have been.

11       I'm going to hear from your attorney; and if he wishes

12   to make the argument -- where you have an attorney, the

13   attorney gets to speak for you.

14       Mr. Cumming, did you wish to be heard on the notice

15   issue?

16       MR. CUMMING:  Yes, Your Honor.

17       I think that the -- the client's concerns and our

18   concerns about the notice is just making sure that the proper

19   individuals receive notice about this opportunity to sell the

20   asset.  SF Night Life, you know, had a --

21       THE COURT:  I understand the argument.

22       The question is, why does this make it deficient?

23   We've given notice to all creditors and given notice to Mr.

24   Breitman and to several other parties involved in this.  That

25   does not look like insufficient notice to me.



Exhibit __C__
Page __38__

1        Tell me why these four or five missing names renders

2   this sale inappropriate.

3        MR. CUMMING:  I'm not in a position now to state why

4   the absence of these names would render it insufficient.  I'm

5   just -- I wasn't -- I wasn't prepared to simply address these

6   issues.

7        THE COURT:  Very well.

8        The objection is overruled.  We are proceeding with

9   the sale.

10        Ms. Agha, you intend to be a bidder, and Mr. Vetter

11   has your check.

12        Is there an overbid price, Ms. Holder?

13        MS. HOLDER:  Your Honor, the proposed bidding

14   procedures were to bid in five hundred dollar increments.  And

15   I would note that the trustee does have the deposit from BBG,

16   Limited, for fifteen hundred dollars also.

17        THE COURT:  Very well.

18        So it will be five hundred increments.

19        And does anybody wish to segregate these assets or is

20   the desire to purchase them in a group, en masse?  As I

21   understood it, the trustee noticed this up for the sale of both

22   assets together.

23        This is the way we're proceeding, Ms. Holder?

24        MS. HOLDER:  Yes, Your Honor.

25        THE COURT:  Mr. Breitman?



**Exhibit** C
**Page** 39

1          MR. BREITMAN:  I guess.  I'm not sure of the

2    consequences.  Maybe my attorney can --

3          THE COURT:  Mr. Chandler?

4          MR. CHANDLER:  Your Honor, that's my understanding.

5          THE COURT:  Ms. Agha, is there any reason that's not

6    right?  We're talking about both assets here, right?

7          MR. CUMMING:  Both assets, Your Honor.

8          THE COURT:  Very well.  We're going to proceed.

9          We have the fifteen -- we are going to start at

10   fifteen thousand dollars, and the offer's from BBG.

11         And, Mr. Breitman, you are speaking not personally but

12   on behalf of BBG, Limited, true?

13         MR. BREITMAN:  True.

14         THE COURT:  Okay.

15         So is fifteen thousand.  We're going to go in five

16   hundred dollar increments.

17         Ms. Agha, did you wish to better the offer of fifteen

18   thousand?

19         THE DEBTOR:  I certainly would, Your Honor.  I would

20   like to better the offer to fifteen hundred, plus ten percent

21   of my winnings from --

22         THE COURT:  Fifteen thousand five hundred.

23         THE DEBTOR:  No.  From what's collected from this

24   lawsuit because this lawsuit is an asset.

25         So, what's collected at the end of the judgment, I



Exhibit _C_
Page _40_

1  want to give ten percent of that to the trustee.  And the

2  previous judgment in a similar lawsuit that Mr. Breitman was

3  aware of --

4          THE COURT:  Now this is a number.  All we're doing is

5  a number.

6          So you're going to say fifteen thousand five hundred,

7  plus you want to give a share of the net proceeds of the

8  lawsuit.

9          And I'm not going to allow that.  We're going to do

10  this in straight dollars, unless Ms. Holder is willing to

11  consent to that, and I doubt she will.

12          MS. HOLDER:  We do not consent to that, Your Honor.

13          THE COURT:  Very well.  We're going to proceed in

14  dollars alone.

15          So you are bidding fifteen thousand five hundred,

16  Ms. -- Dr. Agha?

17          THE DEBTOR:  Sir, the previous lawsuit was -- seven

18  hundred thousand dollars was the judgment on that, if Ms.

19  Holder does not realize it, so she would never make a lot of

20  money --

21          THE COURT:  I'm not taking -- I'm not taking argument

22  from you.  And I told you this, and I'm not going to tell you

23  again.  I'm just going to ask the bailiff to remove you.

24          So the answer is, we're going to do this in dollars.

25          You are bidding fifteen thousand five hundred dollars,


Exhibit __C__
Page __41__

1  true?

2          THE DEBTOR:  Correct.

3          THE COURT:  Mr. Breitman --

4          MR. BREITMAN:  Yes.

5          THE COURT:  -- do you wish to better that?

6          MR. BREITMAN:  I'm sorry?  What -- I didn't hear

7  what --

8          THE COURT:  Fifteen -- the bid is fifteen thousand

9  five hundred from Dr. Agha.

10          Did you wish to better that?

11          MR. BREITMAN:  Yes -- yes, Your Honor.  I'll raise it

12  by five hundred.

13          THE COURT:  Sixteen thousand, then?

14          MR. BREITMAN:  Yes, that's correct.

15          THE COURT:  Dr. Agha?

16          THE DEBTOR:  Sixteen thousand five hundred.

17          THE COURT:  Mr. Breitman?

18          MR. BREITMAN:  Seventeen thousand.

19          THE DEBTOR:  You know what, Your Honor?  I'm sorry.  I

20  wish to be excused from this bidding.  I just -- I'm sorry.  I

21  do not want to play this game.  You can just give it to him for

22  fifteen hundred dollars.  I withdraw every single bid.

23          THE COURT:  Okay.

24          THE DEBTOR:  I'm sorry.  I am not because -- I will be

25  appealing this thing because Mr. Jeffrey Vetter has unanimously

Exhibit ___C___
Page ___42___

1    made sure that the only bidder in this case be Mr. Breitman and

2    BBG, Ltd. who is the defendant --

3            THE COURT:  Dr. Agha?

4            THE DEBTOR:  I'm sorry.  I wish to be excused.  I do

5    not want to play these games.

6            THE COURT:  You are excused.

7            So then we are back to the original fifteen thousand

8    dollar offer; is that right?

9            THE DEBTOR:  I'm sorry.  Fifteen hundred.  I

10   withdrew.  Fifteen hundred.

11           THE COURT:  I understand.

12           I'm speaking to Mr. Breitman.

13           MR. BREITMAN:  Yes.

14           THE COURT:  We're back --

15           Or is it your view that it's now higher, Ms. Holder?

16           I think we're back at fifteen thousand, unless you can

17   convince me otherwise.

18           MS. HOLDER:  May I have a moment to consult with my

19   client.

20           THE COURT:  You may.

21           MR. VETTER:  Your Honor, I'm going to return --

22           THE COURT:  The record is --

23           Dr. Agha, would you like your check?

24           Mr. Vetter?  Thank you.

25           Record will reflect that Mr. Vetter --



Exhibit    C
Page       43

1            THE DEBTOR:  Your Honor, it's a fake drama.  It's a

2    fake --

3            THE COURT:  Dr. Agha, you -- Dr. Agha --

4            Mr. Welsh, would you please get the CSO.

5            MS. HOLDER:  Your Honor, the trustee --

6            THE COURT:  Just a moment, please.

7            COURT SECURITY OFFICER:  Yes, Your Honor?

8            THE COURT:  Dr. Agha, who just left, did you see her?

9            COURT SECURITY OFFICER:  Yes, I do, Your Honor.

10            THE COURT:  She has voluntarily left the room, and

11    that is fine.

12            If she wishes to return, that is acceptable; but I

13    would like you in the room with her.

14            COURT SECURITY OFFICER:  Thank you, Your Honor.

15            THE COURT:  Thank you.

16            Ms. Holder, we're to you.

17            And I think the question is, Mr. Breitman, you still

18    wish to serve as a bidder?

19            And I think the question is, is it fifteen or is it

20    seventeen?

21            MS. HOLDER:  The trustee would accept the fifteen

22    thousand dollar initial offer --

23            THE COURT:  Fine.

24            And that is your offer, Mr. Breitman?

25            MR. BREITMAN:  Yes, Your Honor.



**Exhibit** C
**Page** 44

1          THE COURT:  BBG's, anyway.

2          MR. BREITMAN:  BBG's, correct.

3          THE COURT:  Very well.

4          Is there anybody else who wishes to be heard on this

5   matter?

6          There is no one.

7          The tentative is the ruling.  BBG, Limited is --

8   excuse me.

9          MS. HOLDER:  Thank you, Your Honor.

10          THE COURT:  BBG is the approved buyer at fifteen

11   thousand.

12          There being no other buyers, we won't take a back-up

13   buyer since Dr. Agha has indicated her willingness to -- her

14   unwillingness to proceed.

15          You will prepare the order, Ms. Holder.

16          Is there anything else that we need to do this

17   afternoon?

18          MS. HOLDER:  I sure hope not, Your Honor.

19          THE COURT:  Thank you very much, and that will be the

20   order.

21          Mr. Welsh, thank you for your assistance a moment ago.

22          MR. WELSH:  Anytime, Your Honor.

23          MR. CHANDLER:  David Chandler for BBG.

24          Thank you, Your Honor, for Your Honor's patience.

25          MR. BREITMAN:  Thank you, Your Honor.



Exhibit ___ C
Page ___ 45

1          THE COURT:  Mr. Cumming, nothing further from you?

2          MR. CUMMING:  Nothing further, Your Honor, and thank

3  you.

4          THE COURT:  Thank you.

5          (The proceedings were concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit** C
**Page** 46

1          I, LINDA A. GORMAN, Registered Merit Reporter and

2    C.S.R. License #12693, do hereby certify the foregoing

3    transcript as true and correct.

4

5
     DATED: February 18, 2013
6                              By:/s/Linda A. Gorman, RMR
                               Certified Shorthand Reporter #12693
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Case Title :** | Salma H. Agha | **Case No :** | 10−16183 − A − 7 |
| | | **Date :** | 1/23/13 |
| | | **Time :** | 1:00 |

| | | |
|---|---|---|
| **Matter :** | [72] − Motion/Application to Employ Lisa Holder as Attorney(s) [KDG−1] Filed by Trustee Jeffrey M. Vetter (morf) | UNOPPOSED |

| | |
|---|---|
| **Judge :** | Fredrick E. Clement |
| **Courtroom Deputy :** | Gay Parker |
| **Reporter :** | Linda Gorman |
| **Department :** | A |

**APPEARANCES for :**
**Movant(s) :**

  Trustee's Attorney − Lisa Holder
**Respondent(s) :**
(by phone)    Debtor(s) Attorney − William R. Cumming
  Debtor − Salma H. Agha

MOTION was :
Granted

Final Ruling

Motion: Employ Klein DeNatale
Notice: LBR 9014−1(f)(2); no written opposition required
Disposition: Granted
Order: Prepared by moving party

No responding party is required to file written opposition to the motion; opposition may be presented at the hearing. LBR 9014−1(f)(2)(C). If opposition is presented at the hearing, the court may rule on the merits or set a briefing schedule. Absent such opposition, the court adopts this tentative ruling.

The court treats this as a motion under Rule 60(b) and grants the motion to reconsider the issue of Klein DeNatale's employment. But having considered the Supplement Declaration of Lisa Holder, January 2, 2013, ECF No. 97, the court approves the employment of Klein DeNatale. The firms prior representation of debtor Salma Agha, concluding in 2005, does not present grounds for disqualification. 11 U.S.C. § 327(a), 101(14).

Exhibit D
Page 48

1   SALMA AGHA-KHAN, M.D.
    10001 Venice Boulevard
2   # 402
    Los Angeles, California  90034
3
    Telephone:  (949) 332-0330
4   email:   salmahagha@aol.com

5   Plaintiff in Pro Se

6                  **UNITED STATES DISTRICT COURT**

7                       **CENTRAL DISTRICT**

8                       **WESTERN DIVISION**

9   SALMA AGHA-KHAN, MD
10   an individual,                         Case No. CV 14-03490 FMO (CWx)
                              Plaintiff,
11   **vs.**

12   The United States of America;          **SECOND AMENDED COMPLAINT:**
     FREDRICK CLEMENT, an individual,
13   and Judge of the United States         **1. FRAUD (COMMON LAW AND**
     Bankruptcy Court;  JEFFREY VETTER,        **STATUTORY);**
14   an individual, and Trustee of the      **2. USE OF FORCE TO STEAL**
     United States Bankruptcy Court;           **PLAINTIFFS PROPERTY**
15   BRUCE BREITMAN an individual; BBG         **UNDER COLOR OF**
     Ltd, a corporation;  LISA HOLDER, an      **PROFESSIONAL RIGHT**
16   individual and attorney in KDG;        **3. VIOLATION OF 42 U.S.C.**
     KLEIN DENATALE GOLDNER, a                 **1983; 1985;**
17   professional law corporation; The      **4. VIOLATIONS OF CALIFORNIA**
18   Estate of PETER J. ZOURAS for Peter       **CIVIL CODE SECTIONS 43,**
     Zouras an individual now deceased;        **51, AND 52;**
19   Barry Goldner an individual and        **5. NEGLIGENCE (VIOLATION OF**
     attorney in Klein DeNatale Goldner;       **STATUTE)**
20   Daivd N. Chandler an individual and    **6. INTENTIONAL INFLICTION**
     an attorney at David N. Chandler PC;      **OF EMOTIONAL DISTRESS;**
21   David N. Chandler PC, a corporation;   **7. NEGLIGENT INFLICTION OF**
22   CitiMortgage Inc, CR Title Services       **EMOTIONAL DISTRESS;**
     Inc; ReMax Real Estate Corporation;    **8. CONVERSION;**
23   Debbie Banducci an individual and a    **9. INTENTIONALINTERFERENCE**
     Realtor Broker at ReMax Magic;            **WITH PROSPECTIVE**
24   ReMax Magic and Does 1 through 50         **BUSINESS ADVANTAGE;**
     inclusive                             **10. PUNITIVE DAMAGES**
25
                              Defendants.
26                                          HON:  FERNANDO M. OLGUIN
27

28

---

**SECOND AMENDED COMPLAINT Salma Agha-Khan vs. The United States**
**Case No. CV 14-03490 FMO (CWx)**



Exhibit  _E_

Page  _49_